UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| SERVICIOS LATINOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:24-cv-182 |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS G. AMADO GOMEZ, | ) | |
| | ) | |
| ENITH PERTUZ FONTALVO, | ) | |
| | ) | |
| CARLOS SANCHEZ, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LATINOS MULTISERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S
CORRECTED REPLY IN SUPPORT OF THEIR RULE 12(b)(2)
MOTION TO DISMISS**

In its Opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") Rule 12(b)(2) Motion to Dismiss, Plaintiff Servicios Latinos, Inc. ("SLI") does not dispute that all of the relevant alleged conduct took place in Delaware, not Virginia. Nor does it provide any counter-evidence disputing the claim from the Declarations of Sanchez and Enith Pertuz Fontalvo that neither Sanchez nor LMI even knew SLI was a Virginia corporation before this lawsuit began, which precludes the possibility that Sanchez or LMI purposefully directed any tortious conduct toward Virginia. Instead, SLI's principal contention is grounded in a seldom-used doctrine known as the "closely related" doctrine, which holds that a party who is not a signatory to a forum selection clause may nonetheless be bound by the forum selection clause if it

1

is "closely related" to the contractual relationship in dispute.[1]  Because, in SLI's view, LMI and Sanchez are "closely related" to Fontalvo and Luis G. Amado Gomez (LMI because it is operated by Fontalvo and Gomez, and Sanchez because he's in a romantic relationship with Fontalvo), SLI avers they should be bound by the forum selection clauses found in the non-compete and non-solicitation agreements signed by Fontalvo and Gomez (the "NCAs").

That argument is without merit.  For one thing, neither LMI nor Sanchez are "closely related" in the narrow sense this Court has construed the concept in the past, as neither one of them was closely related to the *contractual relationship* at issue here—namely, the NCAs.  LMI did not even exist at the time the NCAs were negotiated or executed.  And Sanchez did not have any proximity or role to the negotiation or execution of the NCAs, nor was he a beneficiary of the NCAs.

For another thing, as other courts have correctly pointed out, the "closely related" doctrine suffers from two significant problems:  (1) it is constitutionally suspect, and (2) it is fundamentally incompatible with the Supreme Court's precedents on personal jurisdiction.  Accordingly, this Court should not only decline to expand the doctrine's application in the manner sought by SLI here but should also be suspect of any future expansions going forward.

In short, none of SLI's arguments change the conclusion that its Complaint was improperly brought against LMI and Sanchez.  This Court should reject SLI's arguments and grant the relief LMI and Sanchez respectfully seek in their Motion to Dismiss.

---

[1] In the last portion of its Opposition, SLI also argued the facts alleged in its Complaint establish personal jurisdiction independently from the closely related doctrine.  *See* ECF No. 21, pp. 6-8.  Sanchez and LMI rely on their initial memorandum in support of their motion to dismiss to address that argument, *see generally* ECF No. 18, and also reserve the right to address any questions or concerns this Court has related to that argument at a future hearing, should this Court hold one.

# ARGUMENT

### A. Neither LMI nor Sanchez are Closely Related to the Contractual Relationship at Issue in this Action.

*Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.* represents the sole published case where this Court applied the "closely related" doctrine.[2] There, the Court stated the doctrine applies "when the non-parties' alleged conduct is so closely related to the *contractual relationship*" such that "both parties and non-parties should benefit from and be subject to a forum selection clause contained in the contract." 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (emphasis added).

In *Allianz*, cargo that was owned by AGM Glass Machinery, Inc. "was delivered to defendant D.S.R. America at the port of La Spezia, Italy, pursuant to a bill of lading with defendant Cho Yang Shipping Co., Ltd. for its shipment to Norfolk, Virginia." *Id.* at 789. "The cargo was in good order and condition when it was received and accepted by [the] defendants. However, on or about March 2, 1999, the cargo was delivered to the port of destination in a damaged condition." *Id.* The plaintiff, Allianz Insurance Company of Canada, as subrogee for AGM, sued the defendants for breach of contract, among other claims. *Id.* The breach of contract claim was based upon a bill of lading entered into between Cho Yang Shipping, D.S.R. America, the shipper of the cargo, and the consignee of the cargo. *Id.* at 792. Defendant Cho Yang Shipping moved to dismiss, arguing this Court lacked subject matter jurisdiction due to a forum selection clause found in the bill of lading. *Id.* at 789. Allianz countered it should not be bound by the forum selection clause because it was not a party to the bill of lading. *Id.* This Court disagreed, noting Allianz should be bound by the bill of lading's forum selection clause Allianz was "closely related" to because (1)

---

[2] *Allianz* also applied the "closely related" doctrine in the subject matter jurisdiction context, not the personal jurisdiction context. Thus, this Court may conclude *Allianz* is not binding on its resolution of LMI and Sanchez's Motion to Dismiss. Nonetheless, for purposes of this Reply, LMI and Sanchez will assume, without conceding, that *Allianz* is controlling authority.

3

the bill of lading "explicitly concern[ed] AGM's cargo," (2) Allianz "inherited its contractual connection to the dispute from AGM as its subrogee," and (3) Allianz "accepted" the terms of the bill of lading, "including the forum selection clause contained therein," when it "filed suit" on the bill. *Id.* at 791-92.

Here, unlike in *Allianz*, LMI and Sanchez are not "closely related" to the contractual relationship at issue and thus cannot be bound by the NCAs' forum selection clauses. LMI did not even exist at the time the NCAs were negotiated and executed. Indeed, as alleged in SLI's Complaint, LMI was founded nearly *five years* after the NCAs were executed. *See* ECF No. 1, ¶¶ 10, 22.

Although this Court has, in previous unpublished (and non-binding) cases,[3] stated that officers, directors, and entities that share corporate officers may be "closely related" to a given contractual dispute depending on their level of involvement in the contract at issue, *see*, *e.g.*, *Kraze Burger Inc. v. Kraze Int'l, Inc.*, 2023 U.S. Dist. LEXIS 116521, at *15 (E.D. Va. May 19, 2023); *Directpacket Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225, at *9 (E.D. Va. July 3, 2019), it was always the case that the related officers, directors, and entities *existed* when the contracts at issue were executed and, importantly, were intimately involved in the creation of those contracts. *See generally Kraze Burger*, 2023 U.S. Dist. LEXIS 116521; *Directpacket Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225. In those circumstances, then, it made sense to conclude it was "foreseeable" for the non-signatories to be bound by forum selection clauses in the contracts at issue. *See Kraze Burger*, 2023 U.S. Dist. LEXIS 116521, at *14-17; *Directpacket*

---

[3] *United States v. King*, 673 F.3d 274, 280 n.5 (4th Cir. 2012) ("[U]npublished opinions are not binding in this Circuit[.]"); *McPike v. Zero-Gravity Holdings, Inc.*, 2019 U.S. Dist. LEXIS 227485, at *4 (E.D. Va. Mar. 26, 2019) (noting an "unpublished" decision was "not binding precedent").

*Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225, at *9-11. But the same cannot be said, when, as here, a non-signatory was not in existence at the time a bargained-for contractual term was formed.[4]

The matter is no different for Sanchez. Sanchez was not involved in the negotiation or execution of the NCAs. Nor was he a beneficiary to the contract—whether viewed as a formal intended "third-party" beneficiary or an incidental beneficiary. To circumvent these realities, SLI alleges Sanchez was in a "romantic relationship" with Fontalvo at some unspecified time. *See* ECF No. 1, ¶ 24. But even if that's true, a romantic relationship is not, standing alone, sufficient to find Sanchez was "closely related" to Fontalvo's NCA such that he should be bound by the NCA's forum selection clause. *See Wescott v. Reisner*, 2018 U.S. Dist. LEXIS 92320, at *7-11 (N.D. Cal. June 1, 2018) (declining to assert personal jurisdiction over non-signatory spouse).

Consistent with LMI and Sanchez's interpretation of the scope of the "closely related" doctrine, other courts have stated the criteria for determining whether a non-signatory is closely related to a contract are "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018) (citation and internal quotation marks omitted). As has been shown, none of those criteria apply to LMI or Sanchez. Accordingly, the "closely related" doctrine is inapposite here and should be squarely rejected by this Court.

---

[4] It's also worth noting that SLI only cites to instances where a corporate signatory's forum selection clause was imputed to the corporation's officers, directors, or parent/sister companies. It has not cited any authority for the proposition that a later-formed corporation may be bound by a forum selection clause agreed to by its officers in their personal capacity.

### B. This Court Should Decline to Expand Application of the "Closely Related" Doctrine Because it is Unconstitutional and Conflicts with Precedents from the United States Supreme Court.

There's an additional reason this Court should not expand the "closely related" doctrine's application to these facts. Specifically, the doctrine was constitutionally suspect from its inception, and it is not compatible with precedents from the Supreme Court on personal jurisdiction.

As mentioned above, courts have said that "foreseeability" plays a crucial role in determining whether a non-signatory should be bound by a forum selection clause. But contrary to that understanding of personal jurisdiction, the Supreme Court has been clear that "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."[5] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality) (noting that a "rule based on general notions of fairness and foreseeability" is, by all measures, "inconsistent with the premises of lawful judicial power"). Instead, foreseeability is relevant only when "the defendant's conduct *and connection with the forum State* are such that he should reasonably anticipate being haled into court there." *Id.* at 297.

It is for this reason that other courts have observed that "if foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver or implied consent" in the "closely related" context either. *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017). Similarly, when discussing the "serious questions about the constitutionality of

---

[5] Likewise, the Supreme Court has made clear that in the intentional torts context, "the proper focus of the 'minimum contacts' inquiry . . . is the relationship among the defendant, the forum, and the litigation" and that "it is the defendant, *not the plaintiff or third parties*, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (citation and internal quotation marks omitted) (emphasis added).

6

using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause," another federal court made the following observation:

> [T]he exercise of jurisdiction over a party bound by a forum selection clause is based on consent. If the party has consented to a particular forum in a 'freely negotiated' agreement, the party is deemed to have waived their right to challenge personal jurisdiction and no further due process 'minimum contacts' analysis is required. But the rationale underlying the rule is absent in cases in which the defendant is not even a party to the agreement. Under those circumstances, a court should not exercise jurisdiction unless the record otherwise demonstrates 'minimum contacts' between the defendant and the forum.

*Truinject Corp. v. Nestlé Skin Health, S.A.*, 2019 U.S. Dist. LEXIS 215313, at *28-29 (D. Del. Dec. 13, 2019); *see also id.* ("I have serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause.").

"[C]onstitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants." *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395 (S.D.N.Y. 2019). In accordance with that caution, this Court should not expand the "closely related" doctrine to the facts of this case (or arguably any case going forward).

## CONCLUSION

For the foregoing reasons, Sanchez and LMI respectfully request that this Court grant their Rule 12(b)(2) motion to dismiss and dismiss Plaintiff's Complaint as to them *with* prejudice.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.**

By: /s/ Nathan M. Hernandez
      Of Counsel

Nathan M. Hernandez (VSB No. 95817)
Davis, Burch & Abrams
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendant*