IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
NOV - 6 2024
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**SERVICIOS LATINOS, INC.,**

    **Plaintiff,**

    v.                                        CIVIL ACTION NO. 2:24-cv-182

**LUIS G. AMADO GOMEZ,** *et al.,*

    **Defendants.**

*AMENDED MEMORANDUM OPINION AND ORDER*

Before the Court is Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") (collectively, "Defendants") Motion to Dismiss. ECF No. 17 ("Mot."). Defendants move to dismiss Servicios Latinos, Inc.'s ("Servicios") Complaint against Defendants Sanchez and LMI pursuant to Federal Rule of Civil Procedure 12(b)(2). *Id.* The Court has considered the memoranda of the parties, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on this Motion is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

    **I.    FACTUAL AND PROCEDURAL HISTORY**

On March 20, 2024, Servicios filed a Complaint against Defendants Luis G. Amado Gomez, Enith Pertuz Fontalvo, Carlos Sanchez, and LMI. ECF No. 1 ("Compl."). Servicios seeks to enjoin Defendants Gomez and Fontalvo for breach of contract and breach of the duty of loyalty. Compl. at ¶¶ 31–43, 49–56. Servicios alleges tortious interference with contract against Defendants Sanchez and LMI. *Id.* at ¶¶ 44–48. Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Complaint and the attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Servicios is a Virginia corporation with its principal place of business in Norfolk, Virginia.

1

Compl. at ¶ 3. The business operates in Virginia and Delaware and provides services to Spanish-speaking individuals. *Id.* at ¶ 1. Defendants Gomez and Fontalvo were employees of Servicios from December 27, 2018, to October 20, 2023, and December 27, 2018, to November 17, 2023, respectively. *Id.* at ¶ 2. Gomez and Fontalvo signed non-compete and non-solicitation agreements. *Id.* These contracts contained jurisdiction and venue provisions that provided that Gomez and Fontalvo "agree to submit to the jurisdiction and venue of any court of competent jurisdiction in the City of Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this agreement." *Id.* at ¶ 7; Exs. A and B at ¶ 13.

While employed at Servicios, Gomez and Fontalvo planned to open a business that would compete with Servicios. *Id.* at ¶ 19. Around September 14, 2023, Fontalvo and Gomez registered LMI with the State of Delaware. *Id.* at ¶ 22. Around October 16, 2023, Fontalvo and Gomez submitted a New Business Application for LMI to the Town of Georgetown Delaware and listed Sanchez as the contact for the application. *Id.* at ¶ 23.

Defendant Sanchez is a resident of Georgetown, Delaware. *Id.* at ¶ 6. According to Servicios, Defendant Sanchez has been, and continues to be, aware of the non-compete and non-solicitation agreements that Gomez and Fontalvo signed. *Id.* at ¶¶ 2, 46. Upon information and belief, Sanchez and Fontalvo are in a romantic relationship. *Id.* at ¶ 24. In November 2023, Gomez, Fontalvo, and Sanchez opened an LMI office 0.1 miles away from Servicios's Delaware office. *Id.* at ¶ 27. LMI advertises the same services Servicios provides. *Id.* at ¶ 28. Defendants Gomez, Fontalvo, Sanchez, and LMI used confidential information to compete with Servicios. *Id.* ¶ 29. Servicios has suffered and continues to suffer damages from Defendants' actions including loss of profits, loss of customers, loss of reputation, and other monetary loss. *Id.* at ¶¶ 37, 43, 48.

Servicios prays for compensatory damages, specific performance of the obligations in the

non-compete agreements, a temporary restraining order enjoining all Defendants from competing with Servicios, and permanent injunctive relief ordering all Defendants cease competition with Servicios. *Id.* at ¶¶ 58, 62– 64.

## II.   LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action against a party where the court lacks personal jurisdiction. Fed. R. Civ. Proc. 12(b)(2). Personal jurisdiction must be authorized both by the forum state's long-arm statute and by the Due Process Clause of the Fourteenth Amendment, which requires that a defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Since Virginia's long-arm statute extends to the full scope of the Due Process Clause, the inquiries in this case are one and the same. *CFA Inst.*, 551 F.3d at 292; *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

To determine whether "minimum contacts" exist, a plaintiff must show that the defendant "purposefully directed his activities at the residents of the forum" and that plaintiff's cause of action "arises out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). In other words, this inquiry protects a defendant from being forced to defend himself in a forum where he did not anticipate facing suit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, the analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 671 U.S. 277, 283 (2014); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California,*

*San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits to assure itself. *Grayson*, 816 F.3d at 269. Yet, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make prima facie showing." *Id.* at 268. Further, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

A defendant may be subject to general or specific jurisdiction. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the place of incorporation and principal place of business are bases for personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal citations omitted).

With regard to the due process requirements for asserting specific personal jurisdiction, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") requires consideration of

4

three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003).

### III.  DISCUSSION

As a preliminary matter, only specific personal jurisdiction is relevant here. Plaintiff does not contend, nor do the pleadings show, that Defendants have continuous and systematic contacts with Virginia to trigger general jurisdiction. Defendant Sanchez resides in Georgetown, Delaware. Compl. at ¶ 6. General personal jurisdiction is only proper over Defendant Sanchez in Delaware. Additionally, Defendants Fontalvo and Gomez allegedly registered LMI in Delaware. *Id.* at ¶ 22. Defendants Gomez, Fontalvo, and Sanchez opened LMI 0.1 miles down the street from Plaintiff's Delaware location. *Id.* at ¶ 27. Because LMI's place of incorporation and principal place of business are both in Delaware, general personal jurisdiction over LMI is proper in Delaware. Thus, the Court need only determine whether specific jurisdiction exists over Defendants Sanchez and LMI.

Defendants argue two reasons that they are not subject to the Court's personal jurisdiction. First, Defendants argue that because Sanchez and LMI are non-signatories to Defendants Gomez and Fontalvo's non-compete and non-solicitation agreements, the forum selection clauses contained therein are irrelevant. Second, Defendants argue that there is no basis for specific personal jurisdiction. Because Defendant's first argument is without merit, the Court need not address the second argument.

Defendants argue that the forum selection clauses in Defendants Gomez and Fontalvo's

non-compete and non-solicitation agreements are irrelevant in determining personal jurisdiction over Defendants Sanchez and LMI. Mot. at 4. Plaintiff then argues in their Motion in Opposition that the forum selection clause can be enforced against Defendants, even though they are non-signatories, because Sanchez and LMI are "closely related" to the dispute such that it is "foreseeable that [they] will be bound." Mot. Opp'n at 4.

Valid forum selection clauses permit "personal jurisdiction in the chosen forum under the principles of 'contractual consent or waiver.'" *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011) (quoting *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002)). Generally, when "parties contract to litigate any dispute arising under their contract in a specified forum, [the presumption is] they are speaking only of disputes with each other in the absence of language about disputes with third parties." *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (quoting *Union Steel America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 693 (D.N.J.1998)).

But non-signatories may be bound by a forum selection clause if they are so "closely related" to the dispute such that it is "foreseeable" that they will be bound. *Id.* (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) ("Under traditional principles of contract law, non-signatories may be bound by a forum selection clause . . . if they are closely related parties."); *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"). This Court has found that a non-signatory may be bound if enforcement of the forum selection clause is "foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *directPacket Research, Inc. v. Polycom,*

6

*Inc.*, 2019 WL 8065832 at *2 (E.D. Va. July 3, 2019) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011).

It is reasonably foreseeable that LMI would be bound by the forum selection clause. The plain language of the non-compete agreement explicitly contemplates the instant scenario. The non-compete agreement states that Gomez and Fontalvo shall not "own[,] manage, operate, control or be employed by, participate in, or be associated in any manner with... any business substantially similar to or competitive with [Servicios]" at a location within 60 miles of Norfolk, Virginia or Georgetown, Delaware. Compl., Exs. A and B at 1. Gomez and Fontalvo own, manage, operate, control, or otherwise participate in LMI. It also appears that LMI offers similar services as Servicios. Gomez and Fontalvo were signatories to the non-compete and non-solicitation agreements, and but-for their decision to open LMI, the company would not exist. In other words, it is foreseeable that claims brought under a non-compete agreement would be governed by its forum selection clause. *See Allianz Ins. Co. of Canada*, 131 F. Supp. 2d at 792 (citing *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997)).

Defendants argue that LMI did not exist when the agreements were negotiated and executed, and that it does not make sense for non-signatories to be bound where the non-signatory did not exist when the contract was formed. Compl. at 2, 5. But this argument is flawed. Under Defendants' argument, if a signatory leaves entity A to join entity B, an entity that existed when the agreement was executed, the closely related doctrine would apply. By contrast, if that same signatory left entity A to create entity C, an entity that did not exist when the agreement was executed, the closely related doctrine would not apply. But entities B and C are competing with entity A in the same manner, whether they existed when the agreement was executed or not. This logic is at odds with a non-compete agreement that prohibits owning a competing business. Thus,

7

LMI is so closely related to the dispute that it is foreseeable that LMI will be bound by the forum selection clause.

It is likewise reasonably foreseeable that Defendant Sanchez would be bound by the forum selection clause. Servicios alleges that Sanchez and Fontalvo are in a romantic relationship. Compl. at ¶ 24. Neither Fontalvo nor Sanchez denies this. *See* Fontalvo and Sanchez Declarations, ECF No. 18. Defendants Gomez, Fontalvo, and Sanchez came up with the idea to start a competing business, received the requisite permits and approvals, registered the business, submitted a New Business Application and, in November 2023, opened LMI. Compl. at ¶¶ 20–23, 27. Servicios alleges that Sanchez has been and continues to be fully aware of the non-compete and non-solicitation agreements. Compl. at ¶¶ 2, 46. Sanchez does not dispute this. *See* Sanchez Declaration. The Court "must take all disputed facts and reasonable inferences in favor of the plaintiff." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Sanchez was involved in the formation of LMI every step of the way. It is reasonable to infer that Sanchez was aware of the forum selection clause contained in the non-compete and non-solicitation agreements because he does not dispute being aware of the agreements themselves. Thus, Sanchez is so closely related to the dispute such that it is foreseeable that he will be bound by the forum selection clause.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. ECF No. 17.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 6, 2024

Raymond A. Jackson
United States District Judge