# NO. _____

In The

# United States Court Of Appeals

## For The Fourth Circuit

## IN RE: CARLOS SANCHEZ AND
## LATINOS MULTISERVICES, INC.,

*Petitioners.*

**ON PETITION FOR WRIT OF MANDAMUS TO
THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Case 2:24-cv-00182-RAJ-LRL**

——————

**PETITION FOR WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA AND MOTION FOR
STAY OF DISTRICT COURT PROCEEDINGS PENDING MANDAMUS
WITH ADDENDUM**

——————

**Nathan M. Hernandez**
**DAVIS, BURCH & ABRAMS**
**555 Belaire Avenue**
**Suite 340**
**Chesapeake, Virginia 23320**
**(757) 410-2293**

*Counsel for Petitioners*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................ 1

PROCEDURAL HISTORY ..................................................................... 4

    SLI's Complaint and Petitioners' Motion to Dismiss .................................... 4

    Petitioners' Motion for Interlocutory Appeal Certification ........................... 7

LEGAL STANDARD ............................................................................ 10

ARGUMENT ..................................................................................... 12

    I.    PETITIONERS ARE ENTITLED TO A WRIT OF MANDAMUS ................... 12

        A.    Petitioners Have No Other Adequate Means to Obtain an Interlocutory Appeal ................................................................ 12

        B.    Petitioners' Right to an Interlocutory Appeal Under 28 U.S.C. § 1292(b) is Clear and Indisputable ............................... 13

            1.    The district court's order denying Petitioners' motion to dismiss involved a controlling question of law ................................................................................ 14

            2.    There is substantial ground for difference of opinion on the basis of the district court's denial of Petitioners' motion to dismiss ........................................ 15

            3.    An interlocutory appeal may materially advance the termination of this litigation ........................................... 23

        C.    A Writ of Mandamus is Otherwise Appropriate Under the Circumstances ........................................................................ 25

II.     THIS COURT SHOULD STAY ALL PROCEEDINGS IN THE DISTRICT COURT PENDING THIS COURT'S CONSIDERATION OF THIS PETITION .................................................................................28

CONCLUSION.............................................................................................. 30

CERTIFICATE OF COMPLIANCE.............................................................31

CERTIFICATE OF SERVICE .....................................................................32

## TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*,
   No. 2015-124, 2015 U.S. App. LEXIS 23279 (Fed. Cir. Mar. 17, 2015).....24

*Ahrenholz v. Board of Trustees*,
   219 F.3d 674 (7th Cir. 2000) ........................................................................13

*Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*,
   131 F. Supp. 2d 787 (E.D. Va. 2000) .......................................................1, 17

*Allied Chemical Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980)........................................................................................25

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ................................................................. 16-17

*ASI, Inc. v. Aquawood, LLC*,
   No. 19-763 (JRT/HB),
   2021 U.S. Dist. LEXIS 21420 (D. Minn. Feb. 4, 2021)......................... 14-15

*Astrazeneca AB v. Mylan Pharms. Inc.*,
   No. 2015-117, 2015 U.S. App. LEXIS 15267 (Fed. Cir. Mar. 17, 2015).....24

*Brown v. Eli Lilly & Co.*,
   654 F.3d 347 (2d Cir. 2011) ........................................................................12

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).........................................................................18, 19, 20

*Cheney v. United States Dist. Court for D.C.*,
   542 U.S. 367 (2004).........................................................................10, 11, 12

*Chisolm v. United States*,
   41 F. App'x 394 (Fed. Cir. 2002)................................................................26

*Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*,
   259 F.3d 209 (4th Cir. 2001) .......................................................................17

*City of Pomona v. SQM N. Am. Corp.*,
    866 F.3d 1060 (9th Cir. 2017) ......................................................................26

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)......................................................................................19

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ........................................................................23

*Crawl Space Door Sys. v. White & Williams, LLP*,
    No. 2:22-cv-00199,
    2022 U.S. Dist. LEXIS 212019 (E.D. Va. Nov. 22, 2022) ...........................16

*Ex parte Secombe*,
    60 U.S. (19 How.) 9 (1856) ..........................................................................27

*Facebook Inc. v. Namecheap Inc.*,
    No. CV-20-00470-PHX-GMS,
    2021 U.S. Dist. LEXIS 48333 (D. Ariz. Mar. 15, 2021)...............................13

*Falco v. Nissan N. Am., Inc.*,
    108 F. Supp. 3d 889 (C.D. Cal. 2015)..........................................................15

*Fannin v. CSX Transp., Inc.*,
    873 F.2d 1438 (4th Cir. 1989) ......................................................................14

*Firexo, Inc. v. Firexo Grp. Ltd.*,
    99 F.4th 304 (6th Cir. 2024) ...................................................................19, 20

*Franlink Inc. v. BACE Servs., Inc.*,
    50 F.4th 432 (5th Cir. 2022) .........................................................................22

*FTC – Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*,
    No. 5:19-cv-06590-EJD,
    2020 U.S. Dist. LEXIS 170694 (N.D. Cal. Sept. 16, 2020).........................21

*Gilmore v. Jones*,
    No. 3:18-cv-00017,
    2019 U.S. Dist. LEXIS 157329 (W.D. Va. Sep. 16, 2019)...........................24

*Giovani Carandola, Ltd. v. Bason*,
      303 F.3d 507 (4th Cir. 2002) .........................................................................30

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
      564 U.S. 915 (2011)......................................................................................16

*Guaranteed Rate, Inc. v. Conn*,
      264 F. Supp. 3d 909 (N.D. Ill. 2017)............................................................21

*Hall v. Trivest Partners, L.P.*,
      No. 22-12743,
      2024 U.S. Dist. LEXIS 27859 (E.D. Mich. Feb. 16, 2024) ..........................24

*Hanson v. Denckla*,
      357 U.S. 235 (1958)......................................................................................20

*Hilton v. Braunskill*,
      481 U.S. 770 (1987).......................................................................................28

*Houston v. United States*,
      No. 24-1642, 2024 U.S. App. LEXIS 29479 (4th Cir. Nov. 20, 2024).........12

*Hutchens v. Capital One Servs., LLC*,
      No. 3:19-cv-546,
      2020 U.S. Dist. LEXIS 192480 (E.D. Va. Oct. 16, 2020) ............................14

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
      22 F.4th 1125 (9th Cir. 2022) .......................................................................24

*In re Cement Antitrust Litigation*,
      673 F.2d 1020 (9th Cir. 1982) ......................................................................24

*In re Grand Jury 2021 Subpoenas*,
      87 F.4th 229 (4th Cir. 2023) .........................................................................12

*In re Ingram Barge Co. LLC*,
      No. 20-0502, 2021 U.S. App. LEXIS 948 (6th Cir. Jan. 13, 2021) ..............24

*In re Mills*,
      287 F. App'x 273 (4th Cir. 2008)..................................................................28

*In re Ralston Purina Co.*,
  726 F.2d 1002 (4th Cir. 1984) ....................................................................25

*In re Trump*,
  928 F.3d 360 (4th Cir. 2019) ..............................................................*passim*

*In re Trump*,
  958 F.3d 274 (4th Cir. 2020) ..............................................................*passim*

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).................................................................................16

*J. McIntyre Mach. Ltd. v. Nicastro*,
  564 U.S. 873 (2011)....................................................................... 17, 19-20

*Johnson v. Burken*,
  930 F.2d 1202 (7th Cir. 1991) ................................................................14

*Kerr v. United States Dist. Court for Northern Dist.*,
  426 U.S. 394 (1976).................................................................................11

*Koehler v. Dodwell*,
  152 F.3d 304 (4th Cir. 1998) ..................................................................14

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) ...............................................................29, 30

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005)...................................................................................3

*Milliken v. Meyer*,
  311 U.S. 457 (1940).................................................................................16

*Mohawk Indus. v. Carpenter*,
  558 U.S. 100 (2009).................................................................................13

*New York v. Ferber*,
  458 U.S. 747 (1982).................................................................................18

*Nken v. Holder*,
  556 U.S. 418 (2009).................................................................................28

*NRG Power Mktg., LLC v. Maine Pub. Utils. Comm'n,*
    558 U.S. 165 (2010)...................................................................................18

*Pyramid Technologies, Inc. v. Hartford Casualty Insurance Co.,*
    752 F.3d 807 (9th Cir. 2014) .....................................................................26

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) .....................................................................15

*Sterk v. Redbox Automated Retail, LLC,*
    672 F.3d 535 (7th Cir. 2012) .....................................................................23

*Swint v. Chambers Cnty. Comm'n,*
    514 U.S. 35 (1992).......................................................................................9

*Tieszen v. EBay, Inc.,*
    No. 4:21-CV-04002-KES,
    2022 U.S. Dist. LEXIS 3499 (D.S.D. Jan. 6, 2022)....................................24

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n,*
    996 F.2d 774 (5th Cir. 1993) .....................................................................26

*Truinject Corp. v. Nestlé Skin Health, S.A.,*
    No. 19-592-LPS-JLJ,
    2019 U.S. Dist. LEXIS 215313 (D. Del. Dec. 13, 2019) .............................21

*Trump v. District of Columbia,*
    No. 20-331, 2021 U.S. LEXIS 696 (U.S. Jan. 25, 2021) ........................2, 11

*United States v. (Under Seal),*
    757 F.2d 600 (4th Cir. 1985) .....................................................................28

*United States v. Burr,*
    25 F. Cas. 30, F. Cas. No. 14692d (No. 14,692d) (CC Va. 1807) .................3

*Walden v. Fiore,*
    571 U.S. 277 (2014)...................................................................................18

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................17, 19

*Xena Invs., Ltd. v. Magnum Fund Mgmt.*,
    726 F.3d 1278 (11th Cir. 2013) ...................................................22

**Statutes:**

28 U.S.C. § 1292(b) .............................................................*passim*

28 U.S.C. § 1651(a) .......................................................................10

**Rules:**

Fed. R. App. Proc. 8 .....................................................................28

Fed. R. App. Proc. 8(a)(1).............................................................28

Fed. R. Civ. P. 12(b)(2).............................................................13, 22

**Other Authorities:**

John F. Coyle & Robin J. Effron, *Forum Selection Clauses,*
*Non-Signatories, and Personal Jurisdiction*,
    97 Notre Dame L. Rev. 187 (2021) .......................................21, 22

Title VII of the Civil Rights Act of 1964,
    Charge No. 437-2024-01870 ...........................................................5

# INTRODUCTION

This petition involves a district court's unexplained refusal to certify an interlocutory appeal of an order that involved widely disputed constitutional issues in the personal jurisdiction context that this Court has yet to weigh in on. Petitioners Carlos Sanchez and Latinos Multiservices, Inc. ("LMI") moved the United States District Court for the Eastern District of Virginia (the "district court") to dismiss Respondent Servicios Latinos, Inc.'s ("SLI") Complaint against them for lack of personal jurisdiction. In denying that motion, the district court effectively bound Petitioners to forum selection clauses found in contracts that Petitioners were not parties to, and based on those forum selection clauses, determined Petitioners should be subject to the court's personal jurisdiction. To get there, the district court relied on the so-called "closely related doctrine,"[1] a doctrine that other appellate courts, district courts, and legal scholars have concluded is fundamentally incompatible with the United States Supreme Court's personal jurisdiction precedents.

Petitioners then moved the district court to certify its denial order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In doing so, Petitioners carefully and thoroughly briefed why the court's order denying their motion to

---

[1] As will be discussed more later, the closely related doctrine holds that a non-signatory defendant may be bound to a forum selection clause agreed to by a signatory defendant if the non-signatory is "so closely related" to the signatory such that it would be "foreseeable" for him to be sued in the forum State. *Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000).

1

dismiss involved a controlling question of law, why the denial order involved an important constitutional issue as to which there is substantial ground for difference of opinion, and why an interlocutory appeal may materially advance the termination of the litigation.

The district court denied Petitioners' request for certification as well. Why? Well, that's the problem. We simply don't know, as the district court offered no explanation or reasoning for its decision whatsoever. Instead, in a conclusory one-page order, the district court merely quoted the statutory criteria of 28 U.S.C. § 1292(b) and said it was "not of the opinion" that its order denying Petitioners' motion to dismiss met those criteria. Because there is no direct mechanism to appeal the district court's order denying Petitioners' request for certification, Petitioners' only remaining remedy is to seek a writ of mandamus from this Court.

Petitioners appreciate that a writ of mandamus is a significant remedy that should rarely be issued. But rare does not mean never. As this Court's precedent makes clear, "a writ of mandamus may issue to order the district court to certify an interlocutory appeal under § 1292(b)" when, among other things, "the district court . . . denied such a request based on nothing more than caprice." *In re Trump*, 958 F.3d 274, 285 (4th Cir. 2020) (en banc), *vacated on other grounds by Trump v. District of Columbia*, No. 20-331, 2021 U.S. LEXIS 696, at *1 (U.S. Jan. 25, 2021). And for good reason. Even when, as here, a party makes a motion to a court's

2

discretion, the party makes the motion "not to [the court's] inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F. Cas. 30, 35, F. Cas. No. 14692d (No. 14,692d) (CC Va. 1807) (Marshall, C.J.)). Put simply, "[d]iscretion is not whim." *Id.*

In contravention to these mandates, the district court's decision was, unfortunately, made on a whim. Despite the significant time and effort Petitioners put in to respectfully explain why the district court's denial order should be certified for interlocutory appeal, the district court did not treat Petitioners' arguments with any analysis and simply denied their request out of hand. In essence, the district court's only justification for its decision was "because I said so." If that is not a ruling based on "nothing more than caprice," *see In re Trump*, 958 F.3d at 285, it is difficult to imagine what would be.

A writ of mandamus is also warranted because Petitioners demonstrated a clear and indisputable right to an interlocutory appeal. The district court's order denying Petitioners' motion to dismiss involved a controlling question of law, as it was on a motion to dismiss that would be dispositive as to Petitioners and would significantly impact the conduct surrounding the remaining parties and claims in the litigation. There is substantial disagreement among federal appellate and district courts on whether the closely related doctrine can be squared with the Supreme

Court's personal jurisdiction precedents, a dispute that this Court has yet to weigh in on. And allowing an interlocutory appeal may materially advance the ultimate termination of this litigation; if Petitioners succeed in a subsequent appeal, half of the defendants in this litigation will be gone, an entire cause of action will be dismissed, and, consequently, the scope of discoverable and triable issues in this case will be substantially diminished.

Petitioners have exhausted all available options to ensure they are not forced to litigate in a court that they have no constitutional business to be in. A writ of mandamus is the only remedy Petitioners have left to protect them from that injustice. Accordingly, Petitioners respectfully request that this Court issue a writ of mandamus directing the district court to certify its order denying Petitioners' motion to dismiss for interlocutory appeal. Likewise, Petitioners respectfully request that this Court promptly stay further district court proceedings pending consideration of this petition.

## PROCEDURAL HISTORY

*SLI's Complaint and Petitioners' Motion to Dismiss*

SLI filed its Complaint against Petitioners and co-defendants Enith Pertuz Fontalvo and Luis G. Amado Gomez on March 20, 2024.[2] Addendum 1-30. SLI's

---

[2] Gomez filed a counterclaim for violation of the Fair Labor Standards Act due to SLI's failure to pay overtime compensation. He also filed a charge of discrimination against SLI in the Equal Employment Opportunity Commission for

Complaint alleges Fontalvo and Gomez breached their fiduciary duties of loyalty as well as restrictive covenants in non-compete agreements that they were parties to (the "NCAs") by forming and operating LMI. Add. 8-10. Additionally, SLI's Complaint alleges Petitioners tortiously interfered with Fontalvo and Gomez's NCAs. Add. 9-10.

Petitioners are Delaware citizens and engaged in no conduct in Virginia with respect to the subject matter of this litigation. *See* Add. 1-10; Add. 42-45. So, for their responsive pleading, Petitioners filed a motion to dismiss for lack of personal jurisdiction. Add. 31-45. Generally speaking, Petitioners argued that SLI's Complaint did not specifically allege any facts demonstrating they were subject to the district court's personal jurisdiction and that the sole basis for SLI's claim that personal jurisdiction existed—*i.e.*, the forum selection clauses found in Fontalvo and Gomez's NCAs—did not apply to them because they were not parties to the NCAs. Add. 37-40.

In its opposition to the motion to dismiss, SLI's principal argument that personal jurisdiction over Petitioners exists was that they were "so closely related" to Fontalvo and Gomez and the subject matter of the dispute surrounding the NCAs that it was "foreseeable" Petitioners would be sued in Virginia pursuant to the

---

subjecting him to a hostile work environment because of his sexual orientation—and, consequently, his sex—in violation of Title VII of the Civil Rights Act of 1964, Charge No. 437-2024-01870.

NCAs' forum selection clauses.  Add. 49-51.  Alternatively, SLI argued it made a *prima facie* showing of personal jurisdiction because Petitioners allegedly engaged in unlawful conduct against a corporation that is incorporated in Virginia.  Add. 51-53.

In their reply to SLI's opposition, Petitioners argued the "closely related" doctrine SLI relied on is unconstitutional, conflicts with the Supreme Court's minimum contacts jurisprudence, and, consequently, should not be applied in determining whether the district court has personal jurisdiction over them.  Add. 59-60.  They also argued that, even assuming the district court applied the closely related doctrine, they were not closely related to the contractual relationship at issue in this action such that it would be foreseeable for them to be sued in Virginia.  Add. 56-58.

In its sur-reply, SLI generally stated the closely related doctrine was "constitutional" and grounded in public policy considerations, but it provided no authorities to support the doctrine's constitutionality or to otherwise argue the doctrine is compatible with the Supreme Court's due process jurisprudence.  Add. 77.  SLI also fleshed out its arguments for why it believed Petitioners were sufficiently close to Fontalvo and Gomez such that they could foresee being sued in Virginia.  Add. 73-76.

The district court issued an amended memorandum opinion and order on November 6, 2024, which denied Petitioners' motion to dismiss.  Add. 88-96.  In its ruling, the district court did not determine Petitioners established minimum contacts with Virginia such that litigation in Virginia would accord with fair play and substantial justice.  *See* Add. 92.  Instead, the district court relied exclusively on the closely related doctrine and agreed with SLI that Petitioners were so closely related to Fontalvo, Gomez, and this litigation's dispute that they could foresee being sued in Virginia.  Add. 92-95.

### *Petitioners' Motion for Interlocutory Appeal Certification*

Petitioners promptly moved the district court to amend and certify its order denying their motion to dismiss for interlocutory appeal.  Add. 97-99.  Per 28 U.S.C. § 1292(b) ("section 1292(b)"), Petitioners provided argumentation and authorities as to (1) why the district court's order denying Petitioners' motion to dismiss involved a controlling question of law, (2) why that question of law was one as to which there is substantial ground for difference of opinion, and (3) why an interlocutory appeal would materially advance the termination of the litigation.  Add. 104-09.

To the first criterion, Petitioners' principal argument was that the motion to dismiss order involved a controlling question of law because if Petitioners' motion to dismiss was granted following a successful appeal, the litigation would terminate

as to them, SLI's tortious interference claim would be dismissed, and, because of those two realities, the conduct surrounding the remaining litigation would be seriously impacted. Add. 104-05. To the second criterion, Petitioners pointed to several appellate courts, district courts, and legal scholars that acknowledge the closely related doctrine is facially at odds with the Supreme Court's minimum contacts jurisprudence, and Petitioners also pointed out that this Court has yet to weigh in on the question. Add. 105-08. On the other end, Petitioners pointed to other appellate and district courts who, like the district court, applied the closely related doctrine in the personal jurisdiction context and presumably believe the doctrine to be compatible with due process. Add. 107-08. To the third criterion, Petitioners principally argued that their dismissal and the elimination of SLI's tortious interference claim would avoid the expenditure of significant resources of the parties and the district court and could very well prompt SLI to voluntarily dismiss its entire lawsuit altogether. Add. 109.

In its opposition, SLI did not dispute that the district court's denial of Petitioners' motion to dismiss involved a controlling question of law. Add. 125-27. However, SLI did dispute that the question of law was one to which there was substantial ground for difference of opinion. Specifically, SLI contended there is no substantial ground for difference of opinion on the closely related doctrine because, in its view, the doctrine is compatible with the Supreme Court's personal jurisdiction

8

precedents and district courts in this Circuit have consistently applied the doctrine. Add. 126-27.  Additionally, SLI asserted that an interlocutory appeal may materially advance the termination of this litigation only if, among other things, it would eliminate complex issues so as to simplify the trial or eliminate issues to make discovery easier and less costly.  Add. 127-28.  An interlocutory appeal would not accomplish either of those ends, SLI argued, because according to it, the dismissal of Petitioners and the tortious interference claim would have no impact on the litigation's subject matter and Petitioners would still be subject to certain discovery and could potentially be witnesses at trial.  Add. 128-29.

Petitioners filed a reply addressing each of the arguments in SLI's opposition. Add. 130-39.  Since the parties' arguments mostly centered on whether section 1292(b)'s criteria were met, most of the responsive contentions in Petitioners' reply brief more thoroughly fleshed out the contentions in their initial brief.  *See* Add. 133-38.

On December 13, 2024, the district court entered an order denying Petitioners' request for an interlocutory appeal.  Add. 140.  Other than the ministerial aspects of the order, the totality of the district court's ruling was as follows:

> The Court has reviewed the memoranda of the parties. District courts have "first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45 (1992).  The Court is not "of the opinion" that the Court's denial of Defendants' Motion to Dismiss "involves a controlling question of law as to which there

9

is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Therefore, Defendants' Motion to Amend and Certify the Court's Order for Interlocutory appeal is **DENIED**.

Add. 140.

This Petition followed.

## LEGAL STANDARD

Under 28 U.S.C. § 1651(a), appellate courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This includes writs of mandamus. *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) ("The common-law writ of mandamus against a lower court is codified at 28 U.S.C. § 1651(a)[.]").

"[A] petitioner seeking mandamus relief bears the burden of demonstrating that he has satisfied three requirements." *In re Trump*, 958 F.3d at 281 (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004)).[3] "First, the

---

[3] There are a lot of references in this petition to the various opinions from this Court in the *In re Trump* case since, procedurally speaking, that case is the most analogous to this one. A brief synopsis of the procedural history of *In re Trump* is warranted to understand the relevance each opinion has to this petition. In that case, then-President Trump was sued by Maryland and the District of Columbia for violation of the Foreign and Domestic Emoluments Clauses of the United States Constitution. *In re Trump*, 928 F.3d 360, 362-63 (4th Cir. 2019). President Trump filed a motion to dismiss, which the district court denied. *Id.* at 363-64. President Trump then moved the district court to certify its denial order for interlocutory

petitioner must establish that there are no other adequate means of obtaining the

relief sought." *Id.* In other words, mandamus is warranted only if no "alternative,

less extreme, path to [relief]" is available. *Id.* (quoting *Kerr v. United States Dist.*

*Court for Northern Dist.*, 426 U.S. 394, 396 (1976)). "Second, the petitioner must

prove that his 'right to issuance of the writ is clear and indisputable.'" *Id.* (quoting

*Cheney*, 542 U.S. at 381). "Third, even if the petitioner satisfies the first two criteria,

'the issuing court, in the exercise of its discretion, must be satisfied that the writ is

appropriate under the circumstances.'" *Id.* (quoting *Cheney*, 542 U.S. at 381).

---

appeal pursuant to section 1292(b), and the district court denied that motion as well.
*Id.* at 364.

Following a petition from President Trump, a three-judge panel of this Court
issued a writ of mandamus, took jurisdiction under section 1292(b), reversed the
district court's denial of President Trump's motion to dismiss, and remanded with
instructions to dismiss the claims against President Trump. *Id.* at 379-80. This Court
then granted rehearing en banc and reversed the panel decision. *See generally In re*
*Trump*, 958 F.3d 274. In doing so, the en banc Court faced two separate but related
issues: (1) whether the panel properly concluded that President Trump was entitled
to a writ of mandamus and (2) whether the panel properly concluded that the district
court's denial of President Trump's motion to dismiss warranted an interlocutory
appeal under section 1292(b). *See generally id.* The en banc Court disagreed with
the panel on the first issue and therefore was not required to address the second. *See*
*id.* at 281-87.

Upon a petition for a writ of certiorari from President Trump, the Supreme
Court vacated this Court's en banc opinion. *Trump v. District of Columbia*, No. 20-
331, 2021 U.S. LEXIS 696, at *1. In its order, the Supreme Court did not address
the merits of the en banc opinion but instead vacated the opinion on mootness
grounds. *Id.* Based on this procedural history, Petitioners view this Court's *In re*
*Trump* opinions as follows: the en banc opinion is instructive on whether Petitioners
are entitled to a writ of mandamus, and the panel opinion is instructive in
determining whether the district court should have certified its order denying
Petitioners' motion to dismiss for interlocutory appeal.

To be sure, the requirements for mandamus are "demanding," which is why "appellate courts rarely grant mandamus relief . . . ." *Id.*  But "[t]hese hurdles, however demanding, are not insuperable."  *Cheney*, 542 U.S. at 381.  When "exceptional circumstances amounting to a . . . clear abuse of discretion" are present, issuance of a writ of mandamus is warranted.  *Cheney*, 542 U.S. at 380 (citations and internal quotation marks omitted).

## ARGUMENT

I.  PETITIONERS ARE ENTITLED TO A WRIT OF MANDAMUS.

### A.  Petitioners Have No Other Adequate Means to Obtain an Interlocutory Appeal.

Petitioners have exhausted all other adequate means of obtaining what they seek here—an interlocutory appeal of the order denying their motion to dismiss. Petitioners requested that the district court certify the order for interlocutory appeal, which the district court denied.  Once that happened, there was no mechanism for Petitioners to directly appeal the district court's decision, as an order "denying § 1292(b) certification is not appealable."  *Houston v. United States*, No. 24-1642, 2024 U.S. App. LEXIS 29479, at *1 (4th Cir. Nov. 20, 2024) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 353 (2d Cir. 2011)).  Thus, the only remaining remedy petitioners have is to seek mandamus from this Court.  *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 248 (4th Cir. 2023) (noting parties may "[f]irst" seek interlocutory appeals under section 1292(b) and then "[s]econd" may pursue "a writ

of mandamus") (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009)).

**B.    Petitioners' Right to an Interlocutory Appeal Under 28 U.S.C. § 1292(b) is Clear and Indisputable.**

It is clear and indisputable that Petitioners should be permitted an interlocutory appeal.    Under section 1292(b), granting a party leave to seek an interlocutory appeal of an order is required when (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the termination of the litigation.    28 U.S.C. § 1292(b).    Generally speaking, district courts have "broad" discretion in reviewing motions to certify orders for interlocutory appeal.    *In re Trump*, 928 F.3d at 369.    However, a district court's discretion is not "unfettered and unreviewable," *id.* at 372, and if a district court "determines that the statutory criteria are present," it has a "'*duty* . . . to allow an immediate appeal to be taken.'"    *Id.* at 369 (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)).

Applying these standards, other district courts have recently certified orders for interlocutory appeal based on the ***exact same*** legal issues involved in Petitioners' motion to dismiss.    *See*, *e.g.*, *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2021 U.S. Dist. LEXIS 48333, at *2-8 (D. Ariz. Mar. 15, 2021) (granting motion to certify order denying FRCP 12(b)(2) motion to dismiss for interlocutory appeal where order was based on the closely related doctrine).    There

13

was no reason for the district court to refuse to do the same here.  To explain why,

each of the section 1292(b) factors will be addressed in turn.

        1.    <u>The district court's order denying Petitioners' motion to dismiss involved a controlling question of law</u>.

"While controlling questions may include those whose resolution will be

completely dispositive of the litigation, either as a legal or practical matter,

whichever way it goes, a question need not prove completely dispositive of litigation

to present a controlling question of law."  *Hutchens v. Capital One Servs., LLC*, No.

3:19-cv-546, 2020 U.S. Dist. LEXIS 192480, at *8-9 (E.D. Va. Oct. 16, 2020)

(internal quotation marks omitted) (citing *Fannin v. CSX Transp., Inc.*, 873 F.2d

1438 (4th Cir. 1989)).  When the resolution of a question would not completely end

the litigation altogether, courts look to whether an immediate appeal would be

"serious to the conduct of the litigation, either practically or legally."  *In re Trump*,

928 F.3d at 371 (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).

Petitioners moved to dismiss for lack of personal jurisdiction, which presented

a question of law.  *Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) ("Whether

the district court correctly determined that it lacked personal jurisdiction is a

question of law subject to de novo review.").  And for two reasons, that question of

law was controlling.  First, and most obviously, if Petitioners' motion to dismiss is

granted following a successful appeal, this litigation would terminate as to them.

*See ASI, Inc. v. Aquawood, LLC*, No. 19-763 (JRT/HB), 2021 U.S. Dist. LEXIS

21420, at *4 (D. Minn. Feb. 4, 2021) ("[P]ersonal jurisdiction issues are non-discretionary and thus present controlling questions of law."). Second, if Petitioners are dismissed from this action, that would seriously impact the conduct of this litigation from both a practical and legal perspective. *See Falco v. Nissan N. Am., Inc.*, 108 F. Supp. 3d 889, 892 (C.D. Cal. 2015) ("An order determining who the parties to the action are can materially affect the outcome of the litigation."). On the legal front, it would eliminate SLI's tortious interference claim, as that claim is maintainable against Petitioners only. On the practical front, it would impact SLI's decision whether to maintain any lawsuit in the district court at all, as SLI would be forced to either drop this action and sue all Defendants in Delaware or forego suing Petitioners altogether.

2.    There is substantial ground for difference of opinion on the basis of the district court's denial of Petitioners' motion to dismiss.

"A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution." *In re Trump*, 928 F.3d at 371 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)); *see also Reese*, 643 F.3d at 688 (noting the substantial grounds prong is satisfied when "novel issues are presented, on which fair-minded jurists might reach contradictory conclusions"). That standard is plainly met here.

Petitioners' position is that the closely related doctrine is unconstitutional and incompatible with the Supreme Court's minimum contacts jurisprudence. As a

15

general overview, due process requires that in order to find personal jurisdiction over a defendant in the forum State, the defendant must have sufficient "minimum contacts" with the forum State "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "There are two types of personal jurisdiction: general and specific." *Crawl Space Door Sys. v. White & Williams, LLP*, No. 2:22-cv-00199, 2022 U.S. Dist. LEXIS 212019, at *5 (E.D. Va. Nov. 22, 2022).

To establish general jurisdiction over a defendant, a plaintiff must show that the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). By contrast, "[e]stablishing specific jurisdiction is less burdensome but extends over conduct which connects the defendant to the [forum] state." *Crawl Space*, No. 2:22-cv-00199, 2022 U.S. Dist. LEXIS 212019, at *5. "The Fourth Circuit has synthesized the specific jurisdiction inquiry to a three-part test[.]" *Id.* Under that three-part test, courts consider "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digit. Serv.*

16

*Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quoting *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)).

Thus, whether a defendant is subject to a forum State's personal jurisdiction depends on his contacts with the forum State. In violation of these principles, however, the closely related doctrine sidesteps the minimum contacts inquiry altogether and simply asks whether a defendant's relationship with a signatory to a forum selection clause is such that he could "foresee" being sued in the forum State. *See Allianz*, 131 F. Supp. 2d at 791 ("[N]on-parties may be bound to a forum selection clause, if the non-party is so closely related to the dispute such that it becomes foreseeable that it will be bound.") (citations and internal quotation marks omitted).

Worse still, the closely related doctrine is precisely the kind of freewheeling, standalone "foreseeability" inquiry that the Supreme Court has repeatedly made clear is ***not*** an appropriate measure for whether a defendant is subject to a forum State's personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("'Foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."); *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality op.) (emphasizing that a "rule based on general notions of fairness and foreseeability" is "inconsistent with the premises of lawful judicial power"). In a similar vein, the Supreme Court has, in the

17

intentional torts context, said that "the proper focus of the 'minimum contacts' inquiry . . . is the relationship among the defendant, the forum, and the litigation" and that "it is the defendant, ***not the plaintiff or third parties***, who must create contacts with the forum state." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (emphasis added) (citation and internal quotation marks omitted).  For that reason, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284 (collecting cases).

At bottom, the closely related doctrine cannot be squared with the Supreme Court's minimum contacts jurisprudence.  And vague allusions to concepts of "contractual waiver" or "consent" cannot be used to save the closely related doctrine from its patent unconstitutionality either.  Of course, a party who agrees to a forum selection clause waives the right to assert a personal jurisdiction defense, so there are no minimum contacts or other constitutional problems in those instances.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).  But the same cannot be said for a party who does not contractually agree to a forum selection clause.  For one thing, it's a basic principle of contract law that "[c]ontracts bind parties, not nonparties." *NRG Power Mktg., LLC v. Maine Pub. Utils. Comm'n*, 558 U.S. 165, 175 n.4 (2010).  For another, constitutional rights are "personal." *New York v. Ferber*, 458 U.S. 747, 767 (1982).  The only way a party can waive a

18

"personal" constitutional right is if he intentionally "relinquish[es] or abandon[s]" the right—in this context, by actually agreeing to a forum selection clause. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). Because Petitioners did not do that here, they cannot be said to have "consented to" being sued in Virginia or "waived" their right to assert a personal jurisdiction defense. *See Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 318 (6th Cir. 2024) (lead op. by Batchedler, J.) ("When a signatory . . . invokes the clause against a non-signatory . . . . , enforcement of the clause presents a consent problem—the [non-signatory] *did not expressly consent* to that forum inasmuch as it never signed the contract.").

In short, Petitioners' position is nothing more than what the Supreme Court has long made clear: "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state," *Burger King*, 471 U.S. at 474 (citation omitted), and "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."[4] *J. McIntyre*, 564 U.S.

---

[4] SLI attempted to dispute this point by wrenching a quote from *Burger King* to support the notion that the Supreme Court "considers foreseeability in its jurisdictional analysis," Add. 127, specifically where the Court said that "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). That quote from *Burger King*, however, does not lend support to the constitutionality of the closely related doctrine. The point of the quote is that "foreseeability" is "critical" to a personal jurisdiction analysis only in

at 883. Another party's "unilateral activity"—like agreeing to a forum selection clause as SLI, Gomez, and Fontalvo did here—"cannot satisfy the requirement of contact with the forum" by nonresidents like Petitioners. *See Denckla*, 357 U.S. at 253.

Several courts agree with Petitioners' position, including the Sixth Circuit. *See*, *e.g.*, *Firexo*, 99 F.4th at 318 (lead op. by Batchedler, J.) ("When a signatory plaintiff invokes the [forum selection] clause against a non-signatory defendant and

---

the sense that foreseeability is a ***by-product*** of a defendant's contacts with the forum State, not that it is the sole ***driving force*** behind whether a defendant is subject to the forum State's personal jurisdiction in the first place. *Id.* (stating that whether a defendant should "reasonably anticipate being haled into" the forum State's courts depends on the defendant's "***conduct and connection with the forum State***") (emphasis added). The foreseeability-centric closely related doctrine is not only in conflict with the very quote from *Burger King* that SLI relied on but also is squarely condemned by an observation the Supreme Court made just a few lines down in the same opinion:

> The unilateral activity of those who claim some relationship with a nonresident defendant ***cannot satisfy the requirement of contact with the forum State***. The application of that rule will vary with the quality and nature of the defendant's activity, but it is ***essential*** in each case that there be ***some act*** by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King*, 471 U.S. at 474-75 (emphasis added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Rather than supporting the closely related doctrine's constitutionality, *Burger King* forecloses application of the doctrine in a minimum contacts analysis altogether.

uses it to establish personal jurisdiction in the contractually chosen forum, enforcement of the clause creates a constitutional due-process problem by circumventing the basic minimum-contacts requirement."); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017) (noting that "if foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver or implied consent" in the "closely related" context either); *FTC – Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, No. 5:19-cv-06590-EJD, 2020 U.S. Dist. LEXIS 170694, at *18-20 (N.D. Cal. Sept. 16, 2020) (holding that forum selection clauses cannot confer personal jurisdiction over a non-signatory defendant); *Truinject Corp. v. Nestlé Skin Health, S.A.*, No. 19-592-LPS-JLJ, 2019 U.S. Dist. LEXIS 215313, at *28-29 (D. Del. Dec. 13, 2019) (highlighting "serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause" and noting that courts "should not exercise jurisdiction" over a non-signatory "unless the record otherwise demonstrates 'minimum contacts' between" the non-signatory and the forum).

So too do legal scholars. *See*, *e.g.*, John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 201 (2021) ("To conclude that a court has personal jurisdiction over a

defendant based solely on that defendant's connection to a contract, [] is to fundamentally misunderstand the Supreme Court's recent caselaw in this area.").

On the flip side, other courts—including the district court—have adopted the closely related doctrine and presumably believe the doctrine to be consistent with the Supreme Court's personal jurisdiction precedents.  *See*, *e.g.*, Add. 92-95 (basing denial of FRCP 12(b)(2) motion to dismiss on closely related doctrine); *Xena Invs., Ltd. v. Magnum Fund Mgmt.*, 726 F.3d 1278, 1285 (11th Cir. 2013) (holding district court "correctly enforced" forum selection clause against "closely-related" non-signatories); *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 440-42 (5th Cir. 2022) (reaffirming circuit's commitment to closely related doctrine and finding the doctrine binding to some, but not all, non-signatories before it in the appeal); *but see id.* at 441 (criticizing the closely related doctrine's "vagueness" and for being in "tension with the Supreme Court's approach in the related minimum-contacts context") (citation and internal quotation marks omitted).

Crucially, this Court has not yet weighed in on whether the closely related doctrine can be reconciled with the Supreme Court's personal jurisdiction precedents. *See* Coyle & Effron, *Forum Selection Clauses*, 97 Notre Dame L. Rev. at 201 (noting the Fourth Circuit has "yet to adopt" the closely related doctrine). That fact, in tandem with the conflict between other federal appellate courts, provides additional reason to find substantial ground for difference of opinion exists

22

on the validity of the closely related doctrine. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (noting a substantial ground for difference of opinion may also be found "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point").

At this stage, what matters is not whether one agrees with Petitioners' position that the district court wrongly relied on the closely related doctrine in subjecting them to the court's personal jurisdiction. Instead, it is simply whether reasonable jurists could disagree on the question; and here, they clearly could, as shown by the wide split of authority among federal appellate and district courts and the fact that this Court has yet to weigh in on that split. The district court's contrary conclusion was a clear abuse of discretion.

3.    An interlocutory appeal may materially advance the termination of this litigation.

As an initial matter, in determining whether an interlocutory appeal may materially advance the termination of litigation, the question is not whether the litigation "will end then and there" with "no further proceedings in the district court" if an interlocutory appeal is decided in an appellant's favor. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Instead, "[a]ll that section 1292(b) requires as a precondition to an interlocutory appeal . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Id.* To meet that standard, a party need only show that "resolution of the question

23

'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (quoting *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1027 (9th Cir. 1982)).

Here, there are two reasons an interlocutory appeal may materially advance the termination of this litigation. First, the interlocutory appeal would center on a motion to dismiss for lack of personal jurisdiction, which is a motion courts have routinely found may materially advance the termination of litigation if granted. *See*, *e.g.*, *In re Ingram Barge Co. LLC*, No. 20-0502, 2021 U.S. App. LEXIS 948, at *2-3 (6th Cir. Jan. 13, 2021); *Astrazeneca AB v. Mylan Pharms. Inc.*, No. 2015-117, 2015 U.S. App. LEXIS 15267, at *2-3 (Fed. Cir. Mar. 17, 2015); *Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*, No. 2015-124, 2015 U.S. App. LEXIS 23279, at *2-3 (Fed. Cir. Mar. 17, 2015); *Hall v. Trivest Partners, L.P.*, No. 22-12743, 2024 U.S. Dist. LEXIS 27859, at *13-14 (E.D. Mich. Feb. 16, 2024); *Tieszen v. EBay, Inc.*, No. 4:21-CV-04002-KES, 2022 U.S. Dist. LEXIS 3499, at *6-7 (D.S.D. Jan. 6, 2022); *Gilmore v. Jones*, No. 3:18-cv-00017, 2019 U.S. Dist. LEXIS 157329, at *3, 17-18 (W.D. Va. Sep. 16, 2019).

Second, if this Court agrees that Petitioners are not subject to the district court's personal jurisdiction, Petitioners will be dismissed from this action. That, in turn, will avoid the expenditure of significant resources of the parties and the district

court because SLI's tortious interference claim will be eliminated, half of the defendants will be gone, and, consequently, the scope of discoverable and triable issues will be substantially diminished.

### C.    A Writ of Mandamus is Otherwise Appropriate Under the Circumstances.

Petitioners understand it is the rare exception that this Court issues a writ of mandamus.  Petitioners also appreciate that this Court is even less likely to award mandamus when the act complained of was within a district court's discretion.  *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) ("[W]hile writs of mandamus to review discretionary decisions of district judges are not proscribed, they should 'hardly ever' issue." (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980))).  Nonetheless, this Court has clarified that there are certain instances where mandamus is warranted to remedy a district court's clear abuse of discretion in the interlocutory appeal certification context.  For example, "[i]f the district court ignored a request for certification, denied such a request based on nothing more than caprice, or made its decision in manifest bad faith, issuing the writ might well be appropriate."  *In re Trump*, 958 F.3d at 285.

The district court did not ignore Petitioners' request for certification.  Nor is there any reason to believe the district court's denial of Petitioners' request for certification was made in manifest bad faith.  What is indisputable, however, is that

the district court's decision was "based on nothing more than caprice," *id.*, or put differently, was made on a whim.

The district court's denial of Petitioners' request for certification was made through a conclusory, one-paragraph order that contained no analysis of the section 1292(b) factors, no discussion of Petitioners' arguments regarding the section 1292(b) factors, and no other reasoning or explanation whatsoever. Appellate courts have not hesitated to characterize rulings like this as arbitrary, capricious, and/or discretion-abusing in other contexts. *See*, *e.g.*, *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) ("[A] district court abuses its discretion when it fails to provide any 'analysis or explanation' for its decision regarding expert testimony under *Daubert*." (quoting *Pyramid Technologies, Inc. v. Hartford Casualty Insurance Co.*, 752 F.3d 807, 814 (9th Cir. 2014))); *Pyramid*, 752 F.3d at 814 (concluding district court abused its discretion by denying a *Daubert* motion "[i]n two conclusory sentences and without analysis or explanation"); *Chisolm v. United States*, 41 F. App'x 394, 395-96, 400-01 (Fed. Cir. 2002) (concluding an administrative agency acted in an "arbitrary and capricious manner" and decided an issue "on a mere whim" when it disregarded evidence contrary to its preferred position "without analysis") (citation and internal quotation marks omitted); *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774, 778-79 (5th Cir. 1993) (first observing that courts may not dismiss a request for a declaratory

judgment "on the basis of whim or personal disinclination" and then observing the district court did just that when it summarily dismissed a case "without providing even a cursory analysis of the pertinent facts and law").

Furthermore, in other instances where this Court has determined a lower court's denial of certification did not warrant mandamus relief, this Court hinged its determination on the fact that the lower court explained its denial through "a ***detailed written opinion*** that applied the correct legal standards" and, therefore, demonstrated that "[t]he court's action was ***not arbitrary***." *See*, *e.g.*, *In re Trump*, 958 F.3d at 285 (emphasis added). That is the opposite of what the district court did here.

The district court's treatment of Petitioners' request for certification is exactly the sort of "arbitrary and despotic" exercise of discretion that the Supreme Court and this Court have said warrant mandamus relief. *See In re Trump*, 958 F.3d at 285 (quoting *Ex parte Secombe*, 60 U.S. (19 How.) 9, 13-15 (1856)). To rule otherwise would set a disturbing precedent: it would give district courts the green light to arbitrarily deny requests for certification without explanation, no matter how meritorious the request is, how important the issues at stake are, or how egregious the underlying order at issue is, with the ***guarantee*** that litigants will be stuck with courts' decisions without any opportunity for relief from this Court. The rare circumstances of this case counsel setting a different precedent and warrant an award of mandamus relief.

II.    THIS COURT SHOULD STAY ALL PROCEEDINGS IN THE DISTRICT COURT
PENDING THIS COURT'S CONSIDERATION OF THIS PETITION.

This Court has previously granted stays of district court proceedings pending

disposition of a petition for a writ of mandamus.  *See*, *e.g.*, *In re Trump*, 928 F.3d at

364; *In re Mills*, 287 F. App'x 273, 276 (4th Cir. 2008); *United States v. (Under*

*Seal)*, 757 F.2d 600, 602 (4th Cir. 1985).  Petitioners respectfully request that this

Court do so here as well.

The "traditional" factors for determining whether this Court should enter a

stay are fourfold:

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether the issuance of the stay will substantially injure
> the other parties interested in the proceeding; and (4)
> where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (quoting *Hilton v. Braunskill*, 481 U.S.

770, 776 (1987)).[5]

---

[5] Fed. R. App. Proc. 8 governs motions for "Stay or Injunction Pending
Appeal."  There are two reasons that rule is inapposite here.  First, by its plain terms,
the rule governs stays pending direct appeals, not petitions such as this one.  *See*
Local App. R. 8 (discussing "notice of appeal" in context of general rule, which is
not required for petition for writ of mandamus).  Second, Fed. R. App. Proc. 8(a)(1)
lists the kinds of rulings that require a motion for stay under the rule:

(A)    A stay of the *judgment* or *order* of a district court pending appeal;
(B)    Approval of a bond or other security provided to obtain a stay of
*judgment*; or

All four of those factors are met here.  *First*, as demonstrated above, Petitioners are likely to succeed on this petition.  *Second*, Petitioners will likely suffer irreparable harm in the absence of a stay, as they will be forced to litigate in a forum that does not have personal jurisdiction over them, in violation of their constitutional due process rights.  *See Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (stating that "the irreparable harm factor is satisfied" when "there is a likely constitutional violation").

*Third*, a stay will not substantially injure SLI.  No scheduling order has been entered in the district court proceedings, and SLI has shown no sense of urgency in prosecuting its remaining claims in this litigation.  In fact, even though SLI forecasted its intent to seek preliminary injunctive relief against Defendants Fontalvo and Gomez at the outset of this litigation, *see* Add. 10, SLI has not moved for a preliminary injunction against Fontalvo or Gomez in the ***nine months*** since it filed its lawsuit, despite having no restraints on its ability to do so.  That alone shows SLI faces no immediate harm sufficient to outweigh the irreparable harms that are likely to be inflicted on Petitioners absent a stay.

---

(C)    An order suspending, modifying, restoring, or granting an ***injunction*** while an appeal is pending.

(Emphasis added).  Petitioners do not seek a stay of a "judgment," "order," or "injunction" but rather a stay of district court proceedings until this Court resolves the petition.

*Fourth*, a stay is in the public interest, as "it is well-established that the public interest favors protecting constitutional rights." *Leaders*, 2 F.4th at 346; *see also Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest.").

For these reasons, Petitioners respectfully request that this Court promptly issue a stay of all proceedings in the district court pending the Court's resolution of this petition.

## CONCLUSION

Based on nothing more than caprice, the district court blockaded Petitioners from further attempts to vindicate their due process rights and prevented this Court from weighing in on important constitutional issues that have divided courts across this nation. The district court's decision was a clear abuse of discretion, and Petitioners have no other relief but to seek mandamus from this Court. Petitioners respectfully request that this Court issue a writ of mandamus directing the district court to certify its order denying Petitioners' motion to dismiss for interlocutory appeal and to stay all proceedings in the district court pending resolution of this petition.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.**

By: */s/ Nathan M. Hernandez*
       Of Counsel

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing petition for a writ of mandamus complies with the requirements of Fed. R. App. Proc. 21(d) and 32(c)(2).  The petition is prepared in 14-point Times New Roman font and a proportionately spaced typeface; it is double-spaced; and it does not exceed 7,544 words, exclusive of certificates and documents identified in Fed. R. App. Proc. 32(f).

*/s/ Nathan M. Hernandez*
Nathan M. Hernandez, Esq.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. Proc. 21(a)(1), I hereby certify that on this 20th day of December 2024, a true and accurate copy of the foregoing was electronically filed via this Court's CM/ECF system and was also sent via email to the following:

> Richard H. Ottinger (VSB No. 38842)
> Katherine M. Lennon (VSB No. 92358)
> Woods Rogers Vandeventer Black PLC
> 101 W. Main Street, Suite 500
> Norfolk, VA 23510
> Tel:  (757) 446-8600
> richard.ottinger@wrvblaw.com
> kate.lennon@wrvblaw.com
> *Counsel for Respondent*

Pursuant to Fed. R. App. Proc. 21(a)(1), I also hereby certify that on this 20th day of December 2024, I filed a true and accurate copy of the foregoing via the district court's CM/ECF system, which will send a notice of the filing to the district court.

> */s/ Nathan M. Hernandez*
> Nathan M. Hernandez, Esq.

32

# **ADDENDUM**

## <u>TABLE OF CONTENTS</u>
**Addendum to Petition for Mandamus**

**Page:**

**Complaint,**
**With Exhibits,**
     filed March 20, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

     <u>Exhibits</u>:

     A.     **Non-Compete Agreement**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

     B.     **Non-Compete Agreement**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**Defendants Carlos Sanchez and Latinos**
**Multiservices, Inc.'s Rule 12(b)(2) Motion to Dismiss**
     filed April 30, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

**Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s**
**Memorandum in Support of Their Rule 12(b)(2) Motion to Dismiss,**
**With Attachments,**
     filed April 30, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **34**

     <u>Attachments</u>:

     1.     **Declaration of Carlos Sanchez**
              sworn April 30, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **42**

     2.     **Declaration of Enith Pertuz Fontalvo**
              sworn April 30, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **44**

**-i-**

**Plaintiff's Opposition to Defendants Carlos Sanchez and
Latinos Multiservices, Inc.'s Motion to Dismiss**
     filed May 14, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s
Corrected Reply in Support of Their Rule 12(b)(2) Motion to Dismiss**
     filed May 20, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**Plaintiff/Counterclaim Defendant Servicios Latinos, Inc.'s
Motion for Leave to File a Surreply**
     filed June 18, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**Plaintiff/Counterclaim Defendant Servicios Latinos, Inc.
Memorandum in Support of Motion for Leave to File a Surreply**
     filed June 18, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

**Memorandum Opinion and Order**
     filed November 5, 2024.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

**Amended Memorandum Opinion and Order**
     filed November 6, 2024.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

**Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s
Motion to Amend and Certify Order Denying
Fed. R. Civ. Proc. 12(b)(2) Motion to
Dismiss for Interlocutory Appeal**
     filed November 15, 2024.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

**Memorandum in Support of Defendants Carlos Sanchez and
Latinos Multiservices, Inc.'s Motion to Amend and Certify
Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to
Dismiss for Interlocutory Appeal**
     filed November 15, 2024.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

-ii-

**Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s Answer**
      **filed November 19, 2024..** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

**Plaintiff's Opposition to Defendants Carlos Sanchez and**
**Latinos Multiservices, Inc.'s Motion to Amend & Certify**
      **filed December 2, 2024.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

**Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s**
**Reply in Support of Their Motion to Amend and Certify**
**Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to**
**Dismiss for Interlocutory Appeal**
      **filed December 9, 2024.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130

**Order**
      **filed December 13, 2024.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 46 of 185
PageID# 310
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 1 of 12 PageID# 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


SERVICIOS LATINOS, INC.,

     Plaintiff,

v.                              Civil Action No.:  2:24cv182

LUIS G. AMADO GOMEZ,

     Serve: Luis Amado Gomez            DEMAND FOR TRIAL BY JURY
             44 Bennington St.
             Dover, Delaware 19904

ENITH PERTUZ FONTALVO,

     Serve: Enith Pertuz Fontalvo
             111 Burton St.
             Georgetown, Delaware 19947

CARLOS SANCHEZ,

     Serve: Carlos Sanchez
             111 Burton St.
             Georgetown, Delaware 19947

and

LATINOS MULTISERVICES, INC.,

     Serve: Latinos Multiservices, Inc.
             Seaford Management LLC, Registered Agent
             420 Pennsylvania Ave., Suite 1
             Seaford, Delaware 19973


**COMPLAINT**

     NOW COMES Plaintiff, SERVICIOS LATINOS, INC. ("Servicios" or "Plaintiff"), by

counsel, and for its Complaint against Defendants, LUIS G. AMADO GOMEZ ("Gomez"),

ENITH PERTUZ FONTALVO ("Fontalvo"), CARLOS SANCHEZ ("Sanchez"), and LATINOS

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 47 of 185
PageID# 311
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 2 of 12 PageID# 2

MULTISERVICES INC. ("Latinos Multiservices") (collectively, the "Defendants"), and states as

follows:

## Nature of the Action

1.  Servicios is a business operating in Virginia and Delaware, that provides services to

Spanish-speaking individuals, including, but not limited to, the following:

    a.  Automobile:

        i.  Serving as insurance agent for automobile, workers compensation, and

          other insurance coverage;

        ii.  Completing forms to title and register vehicles with the Department of

          Motor Vehicles;

        iii.  Completing applications for duplicate titles and driver's licenses;

        iv.  Assistance with automobile property taxes and decals;

        v.  Referrals to traffic and other attorneys;

        vi.  Interpretation during court proceedings.

    b.  Taxes:

        i.  Completing W-7 applications;

        ii.  Completing individual tax returns;

        iii.  Completing Federal Employer Identification Number (FEIN) applications.

    c.  Other:

        i.  Completing immigration bond processing;

        ii.  Completing state bond processing;

        iii.  Completing non-governmental identification applications;

        iv.  Automobile legalization to Mexico;

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 48 of 185
PageID# 312
Case 2:24-cv-00182-RAJ-LRL    Document 1    Filed 03/20/24    Page 3 of 12 PageID# 3

      v.   Completing U.S. Passport applications;

     vi.   Referrals to attorneys in civil, criminal, and immigration matters.

2.   Defendants Gomez and Fontalvo were employees of Servicios from December 27, 2018 to October 20, 2023 and November 17, 2023, respectively.  In exchange for their employment, Gomez and Fontalvo signed Non-Compete and Non-Solicitations Agreements.  Despite their fiduciary duties to Servicios, and their agreement to the provisions of the Non-Solicitation and Non-Compete Agreements, Gomez and Fontalvo stole client information and confidential business information from Servicios and planned to open a competitive business while still employed with Servicios.  Even more egregiously, Gomez and Fontalvo directly competed with and stole profits from Servicios while still employed with Servicios.  After their employment with Servicios was terminated, Gomez and Fontalvo opened a competitor business, Latinos Multiservices, mere blocks from from Servicios, and used the stolen confidential information and business secrets to compete directly with Servicios.  Although Defendant Sanchez has been and continues to be fully aware of the Non-Compete and Non-Solicitation Agreements, he has intentionally interfered with the contracts by contributing to Latinos Multiservices's competition with Servicios.

**Parties**

3.   Plaintiff, Servicios Latinos, Inc., is a Virginia corporation with its principal place of business located at 2317 E. Little Creek Road, Norfolk, Virginia 23518.

4.   Upon information and belief, Defendant Luis G. Amado Gomez is a temporary resident in the United States with an authorization to work, and resides at 44 Bennington St., Dover, Delaware 19904.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 49 of 185
PageID# 313
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 4 of 12 PageID# 4

5.   Upon information and belief, Enith Pertuz Fontalvo is a temporary resident of the United

States with authorization to work, and resides at 111 Burton St., Georgetown, Delaware 19947.

6.   Upon information and belief, Carlos Sanchez resides at 111 Burton Street, Georgetown

Delaware, and is a licensed insurance producer in the state of Delaware.

**Jurisdiction and Venue**

7.   This cause of action arises out of contracts executed by Plaintiff and Fontalvo and

Gomez, which include identical "Jurisdiction and Venue" provisions:

> This Agreement is to be construed pursuant to the laws of the State of Virginia.  You agree
> to submit to the jurisdiction and venue of any court of competent jurisdiction in the City of
> Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this
> Agreement.

Exs. A and B, ¶ 13; *see also Cfirstclass Corporation v. Silverjet PLC*, 560 F. Supp. 2d 324, 329

(S.D. N.Y. 2008) (internal citations omitted) ("[A] contractually-based forum selection clause

will also encompass tort claims if the tort claims ultimately depend on the existence of a

contractual relationship between the parties, or if resolution of the claims relates to interpretation

of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach

of contract.").

8.   This Court also has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §

1332, as the amount in controversy exceeds $75,000.00 and the parties are citizens of different

states.

**Factual Allegations**

9.   Defendants Gomez and Fontalvo were employed by Servicios from December 27, 2018

to October 20, 2023 and November 17, 2023, respectively.  Defendant Gomez worked for

Servicios in both the Norfolk, Virginia and Georgetown, Delaware offices.  Fontalvo worked

primarily through the Servicios Office in Georgetown Delaware.

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 50 of 185
PageID# 314
Case 2:24-cv-00182-RAJ-LRL     Document 1     Filed 03/20/24     Page 5 of 12 PageID# 5

10. Gomez and Fontalvo each entered into Non-Compete and Non-Solicitation Agreements ("the Non-Compete Agreements") on December 27, 2018.  Copies of the Non-Compete Agreements are attached hereto as **Exhibit A** and **Exhibit B**.

11. The essential terms of the Non-Compete Agreements are identical.

12. The Non-Compete Agreements state as follows:

> In consideration of the employment opportunity provided by Servicios Latinos, Inc., you, intending to be legally bound, agree that you ***shall not***, for a period of three (3) years after the termination of [Fontalvo and Gomez] employment by Employer for any reason other than Employer's cessation of its business, directly or indirectly, ***own manage, operate, control or be employed by, participate in, or be associated in any manner with the ownership, management, operation or control of any business substantially similar to or competitive with the type of business conducted by employer now or at the time of the termination of this Agreement***, at any location within sixty (60) miles of the boundaries of the City of Norfolk, Virginia, the County of Prince William, Virginia and the City of Georgetown Delaware.

Exs. A and B, at 1 (emphasis added).

13. The Non-Compete Agreements contain the following "Covenant Not to Compete":

> You agree that at ***no time*** during the term of your employment with Servicios Latinos, Inc. will you engage in any business activity which is competitive with Servicios Latinos, Inc., nor work for any Servicios Latinos, Inc. which competes with Servicios Latinos, Inc.

*Id.* ¶ 3 (emphasis added).

14. The Non-Compete Agreements define competitive activity as follows:

> **Competitive Activity Includes, But Is Not Limited To,** forming or making plans to form a business entity to directly compete with any business of Servicios Latinos, Inc.  This provision does not prevent you from seeking or obtaining employment or other forms of business relationships with a competitor after termination of employment with Servicios Latinos, Inc. so long as such competitor was in existence prior to the termination of your relationship with Servicios Latinos, Inc. and You were in no way involved with the organization or formation of such competitor.

*Id.* ¶ 4.

15. The Non-Compete Agreements further prohibit Fontalvo and Gomez from solicitation:

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 51 of 185
PageID# 315
Case 2:24-cv-00182-RAJ-LRL    Document 1    Filed 03/20/24    Page 6 of 12 PageID# 6

> **Non-solicitation.**  During the term of your employment, and for a period of three (3) years immediately thereafter, You agree not to solicit any employee, independent contractor, business associate, client or customer of Servicios Latinos, Inc. on behalf of yourself, your business or any other business enterprise, nor shall you induce any employee, independent contractor, business associate, client or customer of or associated with Servicios Latinos, Inc. to terminate or breach any employment, contractual or other relationship with Servicios Latinos, Inc.

*Id.* ¶ 6.

16. With relation to "Disclosure or Solicitation of Clients or Customers After Termination of

Agreement," the Non-Compete Agreements state as follows:

> For a period of three (3) years following the termination of your employment and your relationship with Servicios Latinos, Inc., you shall not, directly or indirectly, disclose to any person, firm or corporation the names or addresses of any of the customers or clients of Servicios Latinos, Inc. or any other information pertaining to them.  Neither shall you call on, solicit, take away, or attempt to call on, solicit or take away client or customer of Servicios Latinos, Inc. on whom you have called or with whom you became acquainted during the term of your employment as the direct or indirect result of your employment with Servicios Latinos, Inc.

*Id.* ¶ 7.

17. The Non-Compete Agreements further acknowledge the agreement amongst Fontalvo,

Gomez, and Servicios regarding claims for injunctive relief:

> You hereby acknowledge (1) that Servicios Latinos, Inc. will suffer irreparable harm if you breach your obligations under this Agreement; (2) that monetary damages will be inadequate to compensate Servicios Latinos, Inc. for such breach. Therefore, if you breach any of such provisions, then Servicios Latinos, Inc. shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provisions.

*Id.* ¶ 8.

### *Actions While Employed with Servicios*

18. In spite of the aforementioned contracts and their duty of loyalty to Servicios, Fontalvo

and Gomez planned to and began competing with Servicios while still employed with Servicios.

19. Specifically, while still employed with Servicios, Fontalvo and Gomez planned to open a

competing business called Latinos Multiservices Inc.

6

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 52 of 185
PageID# 316
Case 2:24-cv-00182-RAJ-LRL    Document 1    Filed 03/20/24    Page 7 of 12 PageID# 7

20. As part of their plan, Fontalvo and Gomez elicited and received a State Fire Marshal's Office Permit for "Latino Multiservices of DMV" on or about August 3, 2023.

21. Fontalvo and Gomez further elicited and received approval to construct commercial plumbing at "Latino Multiservices of DMV located at 214 North Race Street Georgetown, DE 19947" on or about July 31, 2023.

22. On or about September 14, 2023, Fontalvo and Gomez registered their competing business with the State of Delaware as "Latinos Multiservices Inc."

23. On or about October 16, 2023, Fontalvo and Gomez submitted a New Business Application for Latinos Multiservices Inc. to the Town of Georgetown, Delaware.  Fontalvo was listed as the owner of the business.  Defendant Carlos Sanchez was listed as the contact for the application and signed the application.

24. Upon information and belief, Sanchez is in a romantic relationship with Fontalvo.

25. Upon information and belief, Fontalvo and Gomez provided services, including tax filings, for numerous individuals through Servicios and accepted payment and/or compensation for the services, which was never reported or provided to Servicios.  Fontalvo and Gomez then deleted the records from the system to avoid detection.

26. Fontalvo and Gomez's failure to report services and stealing of income from those services caused damage to Servicios.

### Actions After Termination of Employment with Servicios

27. In November 2023, upon termination of Gomez and Fontalvo's employment with Servicios, Gomez, Fontalvo, Sanchez opened an office for Latinos Multiservices Inc. just 0.1 miles down the street from Servicios's Delaware location.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 53 of 185
PageID# 317
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 8 of 12 PageID# 8

28. Latinos Multiservices advertises the same services that Servicios provides, including services relating to taxes, insurance, notarization, and translation.

29. Gomez, Fontalvo, Sanchez, and Latinos Multiservices have used and continue to use confidential and proprietary client lists and business information stolen from Servicios in competing with Servicios and soliciting Servicios's clients.

30. Servicios has lost clients and profits due to the actions of the Defendants.

### Claims for Relief

### COUNT I: BREACH OF CONTRACT AGAINST GOMEZ AND FONTALVO

31. Servicios incorporates by reference each of the foregoing paragraphs.

32. The Non-Compete Agreements are binding and enforceable agreements.

33. Fontalvo and Gomez materially breached the Non-Compete Agreements by competing with and soliciting clients from Servicios while still employed with Servicios.

34. Fontalvo and Gomez materially breached the Non-Compete Agreements by stealing Servicios's customer lists and business information while working for Servicios.

35. Fontalvo and Gomez materially breached the Non-Compete Agreements by competing with and soliciting clients from Servicios after termination of their employment with Servicios.

36. Fontalvo and Gomez materially breached the Non-Compete Agreements by using stolen customer lists and business information to compete with Servicios and solicit clients from Servicios following termination of their employment with Servicios.

37. Servicios has suffered and continues to suffer damages as a result of Fontalvo and Gomez's breach, including significant loss of business, customers, profits, reputation, and other monetary loss due to Fontalvo and Gomez's breach of the Non-Compete Agreements.

### COUNT II: BREACH OF DUTY OF LOYALTY AGAINST GOMEZ AND FONTALVO

38. Servicios incorporates by reference each of the foregoing paragraphs.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 54 of 185
PageID# 318
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 9 of 12 PageID# 9

39. As employees of Servicios, Fontalvo and Gomez owed a fiduciary duty to Servicios, which prohibited Fontalvo from acting in a manner that was adverse to Servicios's interests. *Phoenix Financial Corp. v. Radford*, 44 Va. Cir. 445, at *1 (Roanoke City Feb. 13, 1998) (quoting *Hilb, Eogal and Hamilton Co. v. DePew*, 247 Va. 240 (1994)).

40. Fontalvo and Gomez violated their fiduciary duty by stealing and misappropriating Servicios's customer lists and confidential business information while employed with Servicios.

41. Fontalvo and Gomez's actions in competing with Servicios and using Servicios's resources to provide services to clients for personal profit while employed with Servicios further constitute a breach of fiduciary duty.

42. Fontalvo and Gomez further breached their fiduciary duty by taking specific actions to compete with Servicios while employed with Servicios.

43. Servicios has suffered and continues to suffer damages as a result of Fontalvo and Gomez's breach of their fiduciary duty of loyalty, including loss of profits, loss of business, loss of customers, loss of reputation, and other monetary loss.

**COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT AGAINST SANCHEZ AND LATINOS MULTISERVICES**

44. Servicios incorporates by reference each of the foregoing paragraphs.

45. The Non-Compete Agreements constitute valid and enforceable contracts between Servicios and Fontalvo and Gomez.

46. Sanchez and Latinos Multiservices have been aware of the Non-Compete Agreements during the events described herein.

47. Sanchez and Latinos Multiservices have intentionally interfered with the Non-Compete Agreements by inducing and causing Gomez and Fontalvo to breach the Non-Compete

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 55 of 185
PageID# 319
Case 2:24-cv-00182-RAJ-LRL    Document 1    Filed 03/20/24    Page 10 of 12 PageID# 10

Agreements, including soliciting clients from Servicios, misappropriating confidential business

information from Servicios, and competing with Servicios.

48. Servicios has suffered and continues to suffer damages as a result of Sanchez Latinos

Multiservices's tortious interference, including loss of profits, loss of business, loss of customers,

loss of reputation, and other monetary loss.

**COUNT III: TEMPORARY RESTRAINING ORDER, PERMANENT INJUNCTION
AND SPECIFIC PERFORMANCE AGAINST GOMEZ AND FONTALVO**

49. Servicios incorporates by reference each of the foregoing paragraphs.

50. The Non-Compete Agreements are valid and enforceable contracts with Gomez and

Fontalvo.

51. Paragraph 8 of the Non-Compete Agreements reflects agreement that the Defendants

actions in this case have caused and continue to cause irreparable harm to Servicios:

> **Injunctive relief.** You hereby acknowledge (1) that Servicios Latinos, Inc. will suffer
> irreparable harm if you breach your obligations under this Agreement; and (2) that
> monetary damages will be inadequate to compensate Servicios Latinos, Inc. for such a
> breach. Therefore, if you breach any of such provisions, then Servicios Latinos, Inc. shall
> be entitled to injunctive relief, in addition to any other remedies at law or equity, to
> enforce such provisions.

Exs. A and B, ¶ 8.

52. Servicios has performed its obligations under the Non-Compete Agreements.

53. Servicios has suffered and continues to suffer irreparable and specific harm through loss

of business information, loss of clients, and loss of reputation.

54. Monetary damages are inadequate to compensate Servicios for its losses.

55. The balance of equities and hardships between the parties supports a remedy in equity.

56. An injunction would not harm the public interest.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 56 of 185
PageID# 320
Case 2:24-cv-00182-RAJ-LRL    Document 1    Filed 03/20/24    Page 11 of 12 PageID# 11

**PRAYER FOR RELIEF**

WHEREFORE, Servicios respectfully requests that this Court:

57. Enter judgment in favor of Servicios on all counts herein against all Defendants;

58. Award compensatory damages in an amount to be determined at trial;

59. Award Servicios reasonable attorneys' fees and costs in an amount to be determined at trial;

60. Award pre-judgment and post-judgment interest;

61. Award Servicios the costs of these proceedings;

62. Enter judgment awarding specific performance with respect to the obligations in the Non-Compete Agreements;

63. Issue a temporary restraining order against Defendants, and their employees and agents, enjoining Defendants from competing with Servicios, using Servicios's business information, and soliciting Servicios's clients;

64. Enter permanent injunctive relief against Defendants ordering that Defendants and their agents cease competition with Servicios, use of Servicios's stolen business information, and solicitation of Servicios's clients.

65. Grant any other relief as the Court deems just and proper.

**Plaintiff Requests a Trial by Jury.**

Respectfully Submitted,

SERVICIOS LATINOS, INC.

By: */s/ Richard H. Ottinger*
        Of Counsel

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 57 of 185
PageID# 321
Case 2:24-cv-00182-RAJ-LRL   Document 1   Filed 03/20/24   Page 12 of 12 PageID# 12

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@wrvblaw.com
Kate.Lennon@wrvblaw.com
*Counsel for Plaintiff*



**Servicios Latinos, Inc. EIN 20-4824160**

# Non-Compete and Non-Solicitation Agreement

**This Agreement** made this December 27, 2018, is between, Servicios Latinos, Inc., a Virginia Corporation referred to hereinafter as "Employer" and **Luis G Amado Gomez**, referred to hereinafter as "**Luis G Amado Gomez**." The Agreement is effective on December 27, 2018.

In consideration of the employment opportunity provided by Servicios Latinos, Inc., you, intending to be legally bound, agree that you shall not, for a period of three (3) years after the termination of Luis G Amado Gomez employment by Employer for any reason other than Employer's cessation of its business, directly or indirectly, own manage, operate, control or be employed by, participate in, or be associated in any manner with the ownership, management, operation or control of any business substantially similar to or competitive with the type of business conducted by Employer now or at the time of the termination of this Agreement, at any location within sixty (60) miles of the boundaries of the City of Norfolk, Virginia, the County of Prince William, Virginia and the City of Georgetown, Delaware.

And, you agree to the following:

1. **Term of Agreement**. This Agreement is effective on the Effective Date, and shall remain in effect throughout the term of your employment with Servicios Latinos, Inc. and for a period of one year thereafter.

2. **Limitations of this Agreement**. This Agreement is *not* a contract of association. Neither you nor Servicios Latinos, Inc. is obligated to any specific term of employment. This Agreement is limited to the subject matter of covenants not to compete or solicit as described in this Agreement.

3. **Covenant Not to Compete**. You agree that at no time during the term of your employment with Servicios Latinos, Inc. will you engage in any business activity which is competitive with Servicios Latinos, Inc., nor work for any Servicios Latinos, Inc. which competes with Servicios Latinos, Inc.

4. **Competitive Activity Includes, But Is Not Limited To**, forming or making plans to form a business entity to directly compete with any business of Servicios Latinos, Inc. This provision does not prevent you from seeking or obtaining employment or other forms of business relationships with a competitor after termination of employment with Servicios Latinos, Inc. so long as such competitor was in existence prior to the termination of your relationship with Servicios Latinos, Inc. and You were in no way involved with the organization or formation of such competitor.

5. **Acknowledgement: Luis G Amado Gomez** acknowledges that Employer shall or may, in reliance on this Agreement, provide **Luis G Amado Gomez** with access to trade secrets, customers, and confidential data and good will. Luis G Amado Gomez agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.

Non-Compete and Non-Solicitation Agreement 1 | P a g e

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaria | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit A

**-13-**

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 59 of 185
PageID# 323
Case 2:24-cv-00182-RAJ-LRL   Document 1-1   Filed 03/20/24   Page 2 of 9 PageID# 14



ServiciosLatinos,Inc

Lo hacen por ti!

The parties hereto agree that the duties and functions of the Employer, which may from time to time be assigned to **Luis G Amado Gomez**, include but are not limited to assistance to customers, including language interpretation, in the following areas:

➤ Immigration:
  - H2b work visas – all of the visa process, starting with the Labor Certificate Application ETA 750, recruiting, and obtaining the work visa.
  - Adjustment of status – employment-based adjustment of status, family based adjustment of status, naturalization.
  - Temporary Protected Status (TPS) – filling out every required form for TPS applicants from Nicaragua, El Salvador and Honduras

➤ Traffic:
  - Referral to insurance agent   - automobile, workers compensation, and other insurance coverage.
  - Titling and registration – filling out forms to register automobiles at the Department of Motor Vehicles.
  - Applications for duplicate titles and driver's licenses.
  - Automobile property taxes and decals.
  - Referral to attorney.
  - Interpretation at court.

➤ Taxes:
  - W7 applications
  - Individual tax returns
  - Federal Employer Identification Number (FEIN) applications

➤ Other:
  - Immigration bond processing
  - State bond processing
  - Non-governmental identification applications
  - Automobile legalization to Mexico
  - U.S. Passport applications
  - Referral to attorney for civil and criminal matters, immigration

6.  **Non-solicitation.** During the term of your employment, and for a period of three (3) years immediately thereafter, You agree not to solicit any employee, independent contractor, business associate, client or customer of Servicios Latinos, Inc. on behalf of yourself, your business or any other business enterprise, nor shall you induce any employee, independent contractor,

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaría | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit A

**-14-**



ServiciosLatinos,Inc
Lo hacen por ti!

business associate, client or customer of or associated with Servicios Latinos, Inc. to terminate or breach an employment, contractual or other relationship with Servicios Latinos, Inc.

7.  **Disclosure or Solicitation of Clients or Customers After Termination of Agreement**. For a period of three (3) years following the termination of your employment and your relationship with Servicios Latinos, Inc., you shall not, directly or indirectly, disclose to any person, firm or corporation the names or addresses of any of the customers or clients of Servicios Latinos, Inc. or any other information pertaining to them. Neither shall you call on, solicit, take away, or attempt to call on, solicit, or take away client or customer of Servicios Latinos, Inc. on whom you have called or with whom you became acquainted during the term of your employment, as the direct or indirect result of your employment with Servicios Latinos, Inc.

8.  **Injunctive Relief**. You hereby acknowledge (1) that Servicios Latinos, Inc. will suffer irreparable harm if you breach your obligations under this Agreement; and (2) that monetary damages will be inadequate to compensate Servicios Latinos, Inc. for such a breach. Therefore, if you breach any of such provisions, then Servicios Latinos, Inc. shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provisions.

9.  **Severable Provisions**. The provisions of this Agreement are severable, and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions and any partially unenforceable provisions to the extent enforceable shall nevertheless be binding and enforceable.

10. **Modifications**. This Agreement may be modified only by a writing executed by both you and Servicios Latinos, Inc.

11. **Prior Understandings**. This Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement. The Agreement supersedes all prior understanding, agreements, or representations.

12. **Waiver**. Any waiver of a default under this Agreement must be made in writing and shall not be a waiver of any other default concerning the same or any other provision of this Agreement. No delay or omission in the exercise of any right or remedy shall impair such right or remedy or be constructed as a waiver. A consent to or approval of any act shall not be deemed to waive or render unnecessary consent to or approval of any other or subsequent act.

13. **Jurisdiction and Venue**. This Agreement is to be construed pursuant to the laws of the State of Virginia. You agree to submit to the jurisdiction and venue of any court of competent jurisdiction in City of Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this Agreement.

Non-Compete and Non-Solicitation Agreement  3 | P a g e

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

Exhibit A

**-15-**

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 61 of 185
PageID# 325
Case 2:24-cv-00182-RAJ-LRL   Document 1-1   Filed 03/20/24   Page 4 of 9 PageID# 16

**SL**

ServiciosLatinos,Inc

Lo hacen por ti!

Date: January 9, 2019

Given under our hand:

Servicios Latinos, Inc

By
**Blanca Marie Hanley, President**

COMMONWEALTH OF VIRGINIA
City of Norfolk, to-wit:

Subscribed and acknowledged before me, Jacob Liam Brecker
20, 2023 JB
by **Blanca Marie Hanley**, on December ~~27, 2018~~

Notary Public

My Commission expires: 03|31|2027

JACOB LIAM BIECKER
Notary Public
Commonwealth of Virginia
Registration No. 8061022
My Commission Expires Mar 31, 2027

By your signature below you acknowledge that you have read and understand the foregoing Agreement, that you agree to comply with all of the terms of the Agreement, and that you have received a copy of the Agreement.

Luis G Amado Gomez:

Luis Amado.

COMMONWEALTH OF VIRGINIA
City of Norfolk, to-wit:

Subscribed and acknowledged before me, Galvin Phillips

by **Luis G Amado Gomez**

GALVIN TRUVON PHILLIPS
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JULY 31, 2022
COMMISSION # 7793387

Notary Public

My Commission expires: 7-31-2022

Non-Compete and Non-Solicitation Agreement 4 | P a g e

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaría | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit A

**-16-**

# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4.*

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider

using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions
### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. *Head of household please note:*** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total

---

Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records.

| Form **W-4**<br>Department of the Treasury<br>Internal Revenue Service | **Employee's Withholding Allowance Certificate**<br>► Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | OMB No. 1545-0074<br>20**19** |
|---|---|---|

| 1 Your first name and middle initial | Last name | 2 Your social security number |
|---|---|---|
| lois G | Amado | 5074 |

| Home address (number and street or rural route) | 3 ☑ Single  ☐ Married |
|---|---|
| 2317 east little creek Rd | Note: If married filing separately, check "Married, but withhold at higher Single rate." |

| City or town, state, and ZIP code | 4 If your last name differs from that shown on your social security card, |
|---|---|
| 23518 - Norfolk VA. | check here. You must call 800-772-1213 for a replacement card. ► ☐ |

5 Total number of allowances you're claiming (from the applicable worksheet on the following pages) . . . | **5** |

6 Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . . . | **6** | $ |

7 I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption.
• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**
• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.
If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . . ► | **7** |

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

| Employee's signature<br>(This form is not valid unless you sign it.) ► | lois Amado | Date ► | 12/26/18. |
|---|---|---|---|

| 8 Employer's name and address (**Employer:** Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.** | Cat. No. 10220Q | Form **W-4** (2019)

-17-

Exhibit A

Form W-4 (2019)                                                                                                                    Page **3**

## Personal Allowances Worksheet (Keep for your records.)

**A**  Enter "1" for yourself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **A**   **1**

**B**  Enter "1" if you will file as married filing jointly . . . . . . . . . . . . . . . . . . . .   **B**  _____

**C**  Enter "1" if you will file as head of household . . . . . . . . . . . . . . . . . . . .   **C**  _____

**D**  Enter "1" if: { • You're single, or married filing separately, and have only one job; or
  • You're married filing jointly, have only one job, and your spouse doesn't work; or
  • Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less.   } **D**  _____

**E**  **Child tax credit.** See Pub. 972, Child Tax Credit, for more information.

• If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "4" for each eligible child.
• If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "2" for each eligible child.
• If your total income will be from $179,051 to $200,000 ($345,851 to $400,000 if married filing jointly), enter "1" for each eligible child.
• If your total income will be higher than $200,000 ($400,000 if married filing jointly), enter "-0-" . . . . . .   **E**  _____

**F**  **Credit for other dependents.** See Pub. 972, Child Tax Credit, for more information.

• If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "1" for each eligible dependent.
• If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "1" for every two dependents (for example, "-0-" for one dependent, "1" if you have two or three dependents, and "2" if you have four dependents).
• If your total income will be higher than $179,050 ($345,850 if married filing jointly), enter "-0-" . . . . . .   **F**  _____

**G**  **Other credits.** If you have other credits, see Worksheet 1-6 of Pub. 505 and enter the amount from that worksheet here. If you use Worksheet 1-6, enter "-0-" on lines E and F . . . . . . . . . . . . . . . . .   **G**  _____

**H**  Add lines A through G and enter the total here . . . . . . . . . . . . . . . . . . . ▶ **H**   **1**

For accuracy, complete all worksheets that apply. { • If you plan to **itemize** or claim adjustments to income and want to reduce your withholding, or if you have a large amount of nonwage income not subject to withholding and want to increase your withholding, see the **Deductions, Adjustments, and Additional Income Worksheet** below.
• If you **have more than one job at a time** or are **married filing jointly and you and your spouse both work,** and the combined earnings from all jobs exceed $53,000 ($24,450 if married filing jointly), see the **Two-Earners/Multiple Jobs Worksheet** on page 4 to avoid having too little tax withheld.
• If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 above. }

## Deductions, Adjustments, and Additional Income Worksheet

**Note:** Use this worksheet *only* if you plan to itemize deductions, claim certain adjustments to income, or have a large amount of nonwage income not subject to withholding.

**1**  Enter an estimate of your 2019 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your income. See Pub. 505 for details . . . . . . . . . . . . . . . . . . . . . .   **1** $ _____

**2**  Enter: { $24,400 if you're married filing jointly or qualifying widow(er)
  $18,350 if you're head of household
  $12,200 if you're single or married filing separately }  . . . . . . . . . .   **2** $ _____

**3**  **Subtract** line 2 from line 1. If zero or less, enter "-0-" . . . . . . . . . . . . . . . .   **3** $ _____

**4**  Enter an estimate of your 2019 adjustments to income, qualified business income deduction, and any additional standard deduction for age or blindness (see Pub. 505 for information about these items) . .   **4** $ _____

**5**  **Add** lines 3 and 4 and enter the total . . . . . . . . . . . . . . . . . . . . . . .   **5** $ _____

**6**  Enter an estimate of your 2019 nonwage income not subject to withholding (such as dividends or interest) .   **6** $ _____

**7**  **Subtract** line 6 from line 5. If zero, enter "-0-". If less than zero, enter the amount in parentheses . . .   **7** $ _____

**8**  **Divide** the amount on line 7 by $4,200 and enter the result here. If a negative amount, enter in parentheses. Drop any fraction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **8** _____

**9**  Enter the number from the **Personal Allowances Worksheet,** line H, above . . . . . . . . . .   **9** _____

**10**  Add lines 8 and 9 and enter the total here. If zero or less, enter "-0-". If you plan to use the **Two-Earners/Multiple Jobs Worksheet,** also enter this total on line 1 of that worksheet on page 4. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1 . . . . . . . . . . . . . . . . . . . .   **10** _____

Exhibit A

| | CORRECTED (if checked) | | |
|---|---|---|---|

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

SERVICIOS LATINOS INC

2317 E LITTLE CREEK RD
NORFOLK                    VA 23518
(757) 287-6271   MARIE HANLEY

OMB No. 1545-0116

Form **1099-NEC**
(Rev. January 2022)
For calender year
20 22      FDEA2002   09/20/22

**Nonemployee Compensation**

| PAYER'S TIN | RECIPIENT'S TIN | **1** Nonemployee compensation | **Copy B** |
|---|---|---|---|
| 20-4824160 | -5074 | $            44926.00 | **For Recipient** |

RECIPIENT'S name

LUIS AMADO

**2** Payer made direct sales totaling $5,000 or more of consumer products to recipient for resale ☐

**3**

This is important tax information and is being furnished to the IRS.If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Street address (including apt. no.)

8902 CANNON RD

City or town, state or province, country, and ZIP or foreign postal code

BRIDGEVILLE          DE   19933

**4** Federal income tax withheld
$

Account number (see instructions)

| **5** State tax withheld | **6** State/Payer's state no. | **7** State income |
|---|---|---|
| $ | | $ |
| $ | | $ |

Form **1099-NEC**        (keep for your records)    www.irs.gov/Form1099NEC        Department of the Treasury — Internal Revenue Service

## Instructions for Recipient

You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax.

If you believe you are an employee and cannot get the payer to correct this form, report the amount shown in box 1 on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. For more information, see Pub. 1779, Independent Contractor or Employee.

If you are not an employee but the amount in box 1 is not self-employment (SE) income (for example, it is income from a sporadic activity or a hobby), report the amount shown in box 1 on the "Other income" line (on schedule 1 (Form 1040).

**Recipient's taxpayer identification number (TIN).** For your protection this form may show only the last four digits of your TIN(social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)).
However the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation. If the amount in this box is SE income, report it on Schedule C or F (Form 1040) if a sole proprietor, or on Form 1065 and Schedule K-1 (Form 1065) if a partnership, and the recipient/partner completes Schedule SE (Form 1040).

**Note:** If you are receiving payments on which no income, social security, and Medicare taxes are withheld you should make estimated tax payments. See Form 1040-ES (or Form 1040-ES (NR)). Individuals must report these amounts as explained in these box 1 instructions. Corporations, fiduciaries, and partnerships must report these amounts on the appropriate line of their tax returns.

**Box 2.** If checked, consumer products totaling $5,000 or more were sold to you for resale, on a buy-sell, a deposit-commission, or other basis.
Generally, report any income from your sale of these products on Schedule C (Form 1040).

**Box 3.** Reserved for future use.

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099NEC*

**Free File Program.** Go to *www.irs.gov/FreeFile* to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

| b Employer's Identification number | 20-4824160 | | 12a See instructions for Box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | | $ | 42689.26 | 2658.61 |
| SERVICIOS LATINOS INC | | 12b | | 3 Social security wages | 4 Social security tax withheld |
| | | | $ | 42689.26 | 2646.73 |
| 2317 E LITTLE CREEK RD | | 12c | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | | $ | 42689.26 | 618.99 |
| | | 12d | | 7 Social security tips | 8 Allocated tips |
| NORFOLK VA 23518 | | | $ | | |
| e Employee's first name and initial    Last name | | | | 9 | 10 Dependent care benefits |
| | 10568571 | | This information is being furnished to the Internal Revenue Service | | |
| LUIS G AMADO | | | Copy B To Be Filed with Employee's FEDERAL Tax Return | 11 Nonqualified plans | 13 Statutory employee  Retirement plan  Third-party sick pay |
| 8902 CANNON RD | | | | 14 Other | |
| BRIDGEVILLE DE 19933 | | | d Employee's soc. sec. no | | |
| | | | 5074 | | |
| f Employee's address and ZIP code | | | a. tips. etc. | 19 Local income tax | 20 Locality name |
| 15 State  Employer's state I.D. No. 16 State wages, tips, etc. | 17 State income tax | | | | |
| DE  1-204824160-001 | 42689.26 | 1514.50 | | | |
| VA  30-204824160F-001 | 42689.26 | | | | |

Form W-2 Wage and Tax Statement  2022  Department of the Treasury-Internal Revenue Service      OMB # 1545-0008      Copy B To Be Filed With Employee's FEDERAL Tax Return

| b Employer's Identification number | 20-4824160 | | 12a See instructions for Box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | | $ | 42689.26 | 2658.61 |
| SERVICIOS LATINOS INC | | 12b | | 3 Social security wages | 4 Social security tax withheld |
| | | | $ | 42689.26 | 2646.73 |
| 2317 E LITTLE CREEK RD | | 12c | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | | $ | 42689.26 | 618.99 |
| | | 12d | | 7 Social security tips | 8 Allocated tips |
| NORFOLK VA 23518 | | | $ | | |
| e Employee's first name and initial    Last name | | | | 9 | 10 Dependent care benefits |
| | 10568571 | | | | |
| LUIS G AMADO | | | Copy 2 for State, City, or Local Tax Departments | 11 Nonqualified plans | 13 Statutory employee  Retirement plan  Third-party sick pay |
| 8902 CANNON RD | | | | 14 Other | |
| BRIDGEVILLE DE 19933 | | | a Employee's soc. sec. no | | |
| | | | 5074 | | |
| f Employee's address and ZIP code | | | a. tips. etc. | 19 Local income tax | 20 Locality name |
| 15 State  Employer's state I.D. No. 16 State wages, tips, etc. | 17 State income tax | | | | |
| DE  1-204824160-001 | 42689.26 | 1514.50 | | | |
| VA  30-204824160F-001 | 42689.26 | | | | |

Form W-2 Wage and Tax Statement  2022  Department of the Treasury-Internal Revenue Service      OMB # 1545-0008      Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

REV 01/03/23 QSP

| b Employer's Identification number | 20-4824160 | | 12a See instructions for Box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | | $ | 42689.26 | 2658.61 |
| SERVICIOS LATINOS INC | | 12b | | 3 Social security wages | 4 Social security tax withheld |
| | | | $ | 42689.26 | 2646.73 |
| 2317 E LITTLE CREEK RD | | 12c | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | | $ | 42689.26 | 618.99 |
| | | 12d | | 7 Social security tips | 8 Allocated tips |
| NORFOLK VA 23518 | | | $ | | |
| e Employee's first name and initial    Last name | | | | 9 | 10 Dependent care benefits |
| | 10568571 | | | | |
| LUIS G AMADO | | | Copy 2 for State, City, or Local Tax Departments | 11 Nonqualified plans | 13 Statutory employee  Retirement plan  Third-party sick pay |
| 8902 CANNON RD | | | | 14 Other | |
| BRIDGEVILLE DE 19933 | | | a Employee's soc. sec. no | | |
| | | | 5074 | | |
| f Employee's address and ZIP code | | | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
| 15 State  Employer's state I.D. No. 16 State wages, tips, etc. | 17 State income tax | | | | |
| DE  1-204824160-001 | 42689.26 | 1514.50 | | | |
| VA  30-204824160F-001 | 42689.26 | | | | |

Form W-2 Wage and Tax Statement  2022  Department of the Treasury-Internal Revenue Service      OMB # 1545-0008      Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

| b Employer's Identification number | 20-4824160 | | 12a See instructions for Box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | | $ | 42689.26 | 2658.61 |
| SERVICIOS LATINOS INC | | 12b | | 3 Social security wages | 4 Social security tax withheld |
| | | | $ | 42689.26 | 2646.73 |
| 2317 E LITTLE CREEK RD | | 12c | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | | $ | 42689.26 | 618.99 |
| | | 12d | | 7 Social security tips | 8 Allocated tips |
| NORFOLK VA 23518 | | | $ | | |
| e Employee's first name and initial    Last name | | | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | 9 | 10 Dependent care benefits |
| | 10568571 | | | | |
| LUIS G AMADO | | | | 11 Nonqualified plans | 13 Statutory employee  Retirement plan  Third-party sick pay |
| 8902 CANNON RD | | | Copy C for Employee's Records (see notice to Employee on back.) | 14 Other | |
| BRIDGEVILLE DE 19933 | | | a Employee's soc. sec. no | | |
| | | | 5074 | | |
| f Employee's address and ZIP code | | | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
| 15 State  Employer's state I.D. No. 16 State wages, tips, etc. | 17 State income tax | | | | |
| DE  1-204824160-001 | 42689.26 | 1514.50 | | | |
| VA  30-204824160F-001 | 42689.26 | | | | |

Form W-2 Wage and Tax Statement  2022  Department of the Treasury-Internal Revenue Service      OMB # 1545-0008      Copy C For Employee's Records

-20-

Exhibit A

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 66 of 185
PageID# 330
Case 2:24-cv-00182-RAJ-LRL   Document 1-1   Filed 03/20/24   Page 9 of 9 PageID# 21





Exhibit A

**-21-**

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 67 of 185
PageID# 331
Case 2:24-cv-00182-RAJ-LRL   Document 1-2   Filed 03/20/24   Page 1 of 9 PageID# 22



**Servicios Latinos, Inc. EIN 20-4824160**

# Non-Compete and Non-Solicitation Agreement

**This Agreement** made this December 27, 2018, is between, Servicios Latinos, Inc., a Virginia Corporation referred to hereinafter as "Employer" and **Enith Pertuz Fontalvo** referred to hereinafter as "**Enith Pertuz Fontalvo."** The Agreement is effective on December 27, 2018.

In consideration of the employment opportunity provided by Servicios Latinos, Inc., you, intending to be legally bound, agree that you shall not, for a period of three (3) years after the termination of **Enith Pertuz Fontalvo** employment by Employer for any reason other than Employer's cessation of its business, directly or indirectly, own manage, operate, control or be employed by, participate in, or be associated in any manner with the ownership, management, operation or control of any business substantially similar to or competitive with the type of business conducted by Employer now or at the time of the termination of this Agreement, at any location within sixty (60) miles of the boundaries of the City of Norfolk, Virginia, the County of Prince William, Virginia and the City of Georgetown, Delaware.

And, you agree to the following:

1.  **Term of Agreement**. This Agreement is effective on the Effective Date, and shall remain in effect throughout the term of your employment with Servicios Latinos, Inc. and for a period of one year thereafter.

2.  **Limitations of this Agreement**. This Agreement is *not* a contract of association. Neither you nor Servicios Latinos, Inc. is obligated to any specific term of employment. This Agreement is limited to the subject matter of covenants not to compete or solicit as described in this Agreement.

3.  **Covenant Not to Compete**. You agree that at no time during the term of your employment with Servicios Latinos, Inc. will you engage in any business activity which is competitive with Servicios Latinos, Inc., nor work for any Servicios Latinos, Inc. which competes with Servicios Latinos, Inc.

4.  **Competitive Activity Includes, But Is Not Limited To**, forming or making plans to form a business entity to directly compete with any business of Servicios Latinos, Inc. This provision does not prevent you from seeking or obtaining employment or other forms of business relationships with a competitor after termination of employment with Servicios Latinos, Inc. so long as such competitor was in existence prior to the termination of your relationship with Servicios Latinos, Inc. and You were in no way involved with the organization or formation of such competitor.

5.  **Acknowledgement: Enith Pertuz Fontalvo** acknowledges that Employer shall or may, in reliance on this Agreement, provide **Enith Pertuz Fontalvo** with access to trade secrets, customers, and confidential data and good will. **Enith Pertuz Fontalvo** agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaría | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit B

-22-



The parties hereto agree that the duties and functions of the Employer, which may from time to time be assigned to **Enith Pertuz Fontalvo**, include but are not limited to assistance to customers, including language interpretation, in the following areas:

➢ Immigration:
- H2b work visas – all of the visa process, starting with the Labor Certificate Application ETA 750, recruiting, and obtaining the work visa.
- Adjustment of status – employment-based adjustment of status, family based adjustment of status, naturalization.
- Temporary Protected Status (TPS) – filling out every required form for TPS applicants from Nicaragua, El Salvador and Honduras

➢ Traffic:
- Referral to insurance agent  - automobile, workers compensation, and other insurance coverage.
- Titling and registration – filling out forms to register automobiles at the Department of Motor Vehicles.
- Applications for duplicate titles and driver's licenses.
- Automobile property taxes and decals.
- Referral to attorney.
- Interpretation at court.

➢ Taxes:
- W7 applications
- Individual tax returns
- Federal Employer Identification Number (FEIN) applications

➢ Other:
- Immigration bond processing
- State bond processing
- Non-governmental identification applications
- Automobile legalization to Mexico
- U.S. Passport applications
- Referral to attorney for civil and criminal matters, immigration

6.  **Non-solicitation.** During the term of your employment, and for a period of three (3) years immediately thereafter, You agree not to solicit any employee, independent contractor, business associate, client or customer of Servicios Latinos, Inc. on behalf of yourself, your business or any other business enterprise, nor shall you induce any employee, independent contractor,

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaria | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit B

-23-

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 69 of 185
PageID# 333
Case 2:24-cv-00182-RAJ-LRL   Document 1-2   Filed 03/20/24   Page 3 of 9 PageID# 24



business associate, client or customer of or associated with Servicios Latinos, Inc. to terminate or breach an employment, contractual or other relationship with Servicios Latinos, Inc.

7.    **Disclosure or Solicitation of Clients or Customers After Termination of Agreement**. For a period of three (3) years following the termination of your employment and your relationship with Servicios Latinos, Inc., you shall not, directly or indirectly, disclose to any person, firm or corporation the names or addresses of any of the customers or clients of Servicios Latinos, Inc. or any other information pertaining to them. Neither shall you call on, solicit, take away, or attempt to call on, solicit, or take away client or customer of Servicios Latinos, Inc. on whom you have called or with whom you became acquainted during the term of your employment, as the direct or indirect result of your employment with Servicios Latinos, Inc.

8.    **Injunctive Relief**. You hereby acknowledge (1) that Servicios Latinos, Inc. will suffer irreparable harm if you breach your obligations under this Agreement; and (2) that monetary damages will be inadequate to compensate Servicios Latinos, Inc. for such a breach. Therefore, if you breach any of such provisions, then Servicios Latinos, Inc. shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provisions.

9.    **Severable Provisions**. The provisions of this Agreement are severable, and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions and any partially unenforceable provisions to the extent enforceable shall nevertheless be binding and enforceable.

10.    **Modifications**. This Agreement may be modified only by a writing executed by both you and Servicios Latinos, Inc.

11.    **Prior Understandings**. This Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement.    The Agreement supersedes all prior understanding, agreements, or representations.

12.    **Waiver**. Any waiver of a default under this Agreement must be made in writing and shall not be a waiver of any other default concerning the same or any other provision of this Agreement. No delay or omission in the exercise of any right or remedy shall impair such right or remedy or be constructed as a waiver. A consent to or approval of any act shall not be deemed to waive or render unnecessary consent to or approval of any other or subsequent act.

13.    **Jurisdiction and Venue**. This Agreement is to be construed pursuant to the laws of the State of Virginia. You agree to submit to the jurisdiction and venue of any court of competent jurisdiction in City of Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this Agreement.

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaría | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit B

**-24-**

ServiciosLatinos,Inc
Lo hacen por ti!

Date: December 27, 2018

Given under our hand:

Servicios Latinos, Inc

By

**Blanca Marie Hanley, President**

COMMONWEALTH OF VIRGINIA
City of Norfolk, to-wit:

Subscribed and acknowledged before me, Jacob Liam Biecker
20,2023

by **Blanca Marie Hanley**, on December ~~27, 2018~~

Notary Public

JACOB LIAM BIECKER
Notary Public
Commonwealth of Virginia
Registration No. 8061022
My Commission Expires Mar 31, 2027

My Commission expires: 03 31 2027

By your signature below you acknowledge that you have read and understand the foregoing Agreement, that you agree to comply with all of the terms of the Agreement, and that you have received a copy of the Agreement.

**Enith Pertuz Fontalvo:**

COMMONWEALTH OF ~~VIRGINIA~~ DELAWARE
~~City of Norfolk~~, to-wit: COUNTY OF SUSSEX

Subscribed and acknowledged before me, IDA A. BONSU
31ST

by **Enith Pertuz Fontalvo** on December ~~27~~, 2018

Notary Public

IDA A BONSU
MY COMMISSION
EXPIRES
MAR. 21, 2019
NOTARY PUBLIC
STATE OF DELAWARE

My Commission expires: 3 21 2019

Non-Compete and Non-Solicitation Agreement 4 | P a g e

**757.588.0623** | 2317 East Little Creek Rd. Norfolk, VA 23518

**MULTISERVICIOS**
DMV Registración de Autos | Notaría | Apostille | Traducción | TAXES

**SEGUROS**
Auto | Personal y Comercial | Motocicleta | Formas SR-22 | FR-44

Exhibit B

-25-

# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider

using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions

### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. *Head of household please note:*** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total

---

Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records.

| Form **W-4**<br>Department of the Treasury<br>Internal Revenue Service | **Employee's Withholding Allowance Certificate**<br>▶ Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | OMB No. 1545-0074<br>**2019** |
|---|---|---|

| 1 Your first name and middle initial  Enith H. | Last name  PERTOS Fontalvo | 2 Your social security number  1885 |
|---|---|---|

Home address (number and street or rural route)  317 Chandler ST

3 ☐ Single  ☒ Married  ☐ Married, but withhold at higher Single rate.
Note: If married filing separately, check "Married, but withhold at higher Single rate."

City or town, state, and ZIP code  Seaford DE 19973

4 If your last name differs from that shown on your social security card, check here. You must call 800-772-1213 for a replacement card. ▶ ☐

| 5 | Total number of allowances you're claiming (from the applicable worksheet on the following pages) . . . . | 5 | 2 |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . | 6 | $ |
| 7 | I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption. | | |

• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**
• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.
If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . ▶ | 7 |

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

Employee's signature
(This form is not valid unless you sign it.) ▶ *[signature]*    Date ▶ 12/26/2018

| 8 Employer's name and address (Employer: Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|

For Privacy Act and Paperwork Reduction Act Notice, see page 4.    Cat. No. 10220Q    Form **W-4** (2019)

Exhibit B

Form W-4 (2019)                                                                                                    Page **3**

## Personal Allowances Worksheet (Keep for your records.)

| | | |
|---|---|---|
| A | Enter "1" for yourself | A |
| B | Enter "1" if you will file as married filing jointly | B \_\_\_\_ |
| C | Enter "1" if you will file as head of household | C \_\_\_\_ |
| D | Enter "1" if: • You're single, or married filing separately, and have only one job; or<br>• You're married filing jointly, have only one job, and your spouse doesn't work; or<br>• Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less. | D \_\_\_\_ |

E **Child tax credit.** See Pub. 972, Child Tax Credit, for more information.

• If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "4" for each eligible child.

• If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "2" for each eligible child.

• If your total income will be from $179,051 to $200,000 ($345,851 to $400,000 if married filing jointly), enter "1" for each eligible child.

• If your total income will be higher than $200,000 ($400,000 if married filing jointly), enter "-0-"    **E** \_\_\_\_

F **Credit for other dependents.** See Pub. 972, Child Tax Credit, for more information.

• If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "1" for each eligible dependent.

• If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "1" for every two dependents (for example, "-0-" for one dependent, "1" if you have two or three dependents, and "2" if you have four dependents).

• If your total income will be higher than $179,050 ($345,850 if married filing jointly), enter "-0-"    **F** \_\_\_\_

G **Other credits.** If you have other credits, see Worksheet 1-6 of Pub. 505 and enter the amount from that worksheet here. If you use Worksheet 1-6, enter "-0-" on lines E and F    **G** \_\_\_\_

H Add lines A through G and enter the total here    ▶ **H**   2

| | |
|---|---|
| **For accuracy, complete all worksheets that apply.** | • If you plan to **itemize** or claim adjustments to income and want to reduce your withholding, or if you have a large amount of nonwage income not subject to withholding and want to increase your withholding, see the **Deductions, Adjustments, and Additional Income Worksheet** below.<br>• If you **have more than one job at a time** or are **married filing jointly and you and your spouse both work,** and the combined earnings from all jobs exceed $53,000 ($24,450 if married filing jointly), see the **Two-Earners/Multiple Jobs Worksheet** on page 4 to avoid having too little tax withheld.<br>• If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 above. |

## Deductions, Adjustments, and Additional Income Worksheet

**Note:** Use this worksheet *only* if you plan to itemize deductions, claim certain adjustments to income, or have a large amount of nonwage income not subject to withholding.

| | | |
|---|---|---|
| 1 | Enter an estimate of your 2019 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your income. See Pub. 505 for details | 1 $ \_\_\_\_ |
| 2 | Enter: $24,400 if you're married filing jointly or qualifying widow(er)<br>$18,350 if you're head of household<br>$12,200 if you're single or married filing separately | 2 $ \_\_\_\_ |
| 3 | **Subtract** line 2 from line 1. If zero or less, enter "-0-" | 3 $ \_\_\_\_ |
| 4 | Enter an estimate of your 2019 adjustments to income, qualified business income deduction, and any additional standard deduction for age or blindness (see Pub. 505 for information about these items) | 4 $ \_\_\_\_ |
| 5 | **Add** lines 3 and 4 and enter the total | 5 $ \_\_\_\_ |
| 6 | Enter an estimate of your 2019 nonwage income not subject to withholding (such as dividends or interest) | 6 $ \_\_\_\_ |
| 7 | **Subtract** line 6 from line 5. If zero, enter "-0-". If less than zero, enter the amount in parentheses | 7 $ \_\_\_\_ |
| 8 | **Divide** the amount on line 7 by $4,200 and enter the result here. If a negative amount, enter in parentheses. Drop any fraction | 8 \_\_\_\_ |
| 9 | Enter the number from the **Personal Allowances Worksheet,** line H, above | 9 \_\_\_\_ |
| 10 | **Add** lines 8 and 9 and enter the total here. If zero or less, enter "-0-". If you plan to use the **Two-Earners/ Multiple Jobs Worksheet,** also enter this total on line 1 of that worksheet on page 4. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1 | 10 \_\_\_\_ |

Exhibit B

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 73 of 185
PageID# 337
Case 2:24-cv-00182-RAJ-LRL   Document 1-2   Filed 03/20/24   Page 7 of 9 PageID# 28





**-28-**

Exhibit B

**Copy 1 (Copy B To Be Filed with Employee's FEDERAL Tax Return)**

| b Employer's identification number | 20-4824160 |
|---|---|

c Employer's name, address, and ZIP code
SERVICIOS LATINOS INC
2317 E LITTLE CREEK RD
NORFOLK VA 23518

a Employee's first name and initial   Last name
10568571
ENITH PERTUZ FONTALVO
111 BURTON ST
GEORGETOWN DE 19947

- 12a See instructions for Box 12
- 1 Wages, tips, other compensation 37180.80
- 2 Federal income tax withheld 2022.48
- 3 Social security wages 37180.80
- 4 Social security tax withheld 2305.21
- 5 Medicare wages and tips 37180.80
- 6 Medicare tax withheld 539.12

e Employee's soc. sec. no 1885

f Employee's address and ZIP code
15 State DE  Employer's state ID No. 1-204824160-001  16 State wages, tips, etc. 37180.80  17 State income tax 1096.46
VA 30-204824160F-001  3600.00

Form W-2 Wage and Tax Statement 2022   Department of the Treasury-Internal Revenue Service   OMB # 1545-0008

Copy B To Be Filed With Employee's FEDERAL Tax Return

**Copy 2 (Copy 2 for State, City, or Local Tax Departments)**

b Employer's identification number 20-4824160
SERVICIOS LATINOS INC
2317 E LITTLE CREEK RD
NORFOLK VA 23518
10568571
ENITH PERTUZ FONTALVO
111 BURTON ST
GEORGETOWN DE 19947

1 Wages 37180.80  2 Federal income tax withheld 2022.48
3 Social security wages 37180.80  4 Social security tax withheld 2305.21
5 Medicare wages and tips 37180.80  6 Medicare tax withheld 539.12
soc sec no 1885

15 State DE 1-204824160-001  37180.80  1096.46
VA 30-204824160F-001  3600.00
Form W-2 Wage and Tax Statement 2022   OMB # 1545-0008
Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

**Copy 3 (REV 01/03/23 OSP)**

b Employer's identification number 20-4824160
SERVICIOS LATINOS INC
2317 E LITTLE CREEK RD
NORFOLK VA 23518
10568571
ENITH PERTUZ FONTALVO
111 BURTON ST
GEORGETOWN DE 19947

1 Wages 37180.80  2 Federal income tax withheld 2022.48
3 Social security wages 37180.80  4 Social security tax withheld 2305.21
5 Medicare wages and tips 37180.80  6 Medicare tax withheld 539.12
soc sec no 1885

15 State DE 1-204824160-001  37180.80  1096.46
VA 30-204824160F-001  3600.00
Form W-2 Wage and Tax Statement 2022   OMB # 1545-0008
Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

**Copy 4 (Copy C for Employee's Records)**

b Employer's identification number 20-4824160
SERVICIOS LATINOS INC
2317 E LITTLE CREEK RD
NORFOLK VA 23518
10568571
ENITH PERTUZ FONTALVO
111 BURTON ST
GEORGETOWN DE 19947

1 Wages 37180.80  2 Federal income tax withheld 2022.48
3 Social security wages 37180.80  4 Social security tax withheld 2305.21
5 Medicare wages and tips 37180.80  6 Medicare tax withheld 539.12
soc sec no 885

15 State DE 1-204824160-001  37180.80  1096.46
VA 30-204824160F-001  3600.00
Form W-2 Wage and Tax Statement 2022   OMB # 1545-0008
Copy C For Employee's Records

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 75 of 185
PageID# 339
Case 2:24-cv-00182-RAJ-LRL   Document 1-2   Filed 03/20/24   Page 9 of 9 PageID# 30

| | CORRECTED (if checked) | | |
|---|---|---|---|

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

SERVICIOS LATINOS INC

2317 E LITTLE CREEK RD
NORFOLK          VA 23518
(757) 287-6271   MARIE HANLEY

OMB No. 1545-0116

Form **1099-NEC**

(Rev. January 2022)

For calendar year
20 22    FDEA2002  09/20/22

**Nonemployee Compensation**

| PAYER'S TIN | RECIPIENT'S TIN |
|---|---|
| 20-4824160 | 1885 |

RECIPIENT'S name
ENITH H PERTUZ FONTALVO

Street address (including apt. no.)
111 BURTON ST

City or town, state or province, country, and ZIP or foreign postal code
GEORGETOWN          DE  19947

Account number (see instructions)

**1** Nonemployee compensation
$                    22244.00

**2** Payer made direct sales totaling $5,000 or more of consumer products to recipient for resale ☐

**3**

**4** Federal income tax withheld
$

**5** State tax withheld
$
$

**6** State/Payer's state no.

**7** State income
$
$

**Copy B
For Recipient**

This is important tax information and is being furnished to the IRS.If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Form **1099-NEC**          (keep for your records)          www.irs.gov/Form1099NEC          Department of the Treasury — Internal Revenue Service

## Instructions for Recipient

You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax.

If you believe you are an employee and cannot get the payer to correct this form, report the amount shown in box 1 on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. For more information, see Pub. 1779, Independent Contractor or Employee.

If you are not an employee but the amount in box 1 is not self-employment (SE) income (for example, it is income from a sporadic activity or a hobby), report the amount shown in box 1 on the "Other income" line (on schedule 1 (Form 1040).

**Recipient's taxpayer identification number (TIN).** For your protection this form may show only the last four digits of your TIN(social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)).
However the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation. If the amount in this box is SE income, report it on Schedule C or F (Form 1040) if a sole proprietor, or on Form 1065 and Schedule K-1 (Form 1065) if a partnership, and the recipient/partner completes Schedule SE (Form 1040).

**Note:** If you are receiving payments on which no income, social security, and Medicare taxes are withheld you should make estimated tax payments. See Form 1040-ES (or Form 1040-ES (NR)). Individuals must report these amounts as explained in these box 1 instructions. Corporations, fiduciaries, and partnerships must report these amounts on the appropriate line of their tax returns.

**Box 2.** If checked, consumer products totaling $5,000 or more were sold to you for resale, on a buy-sell, a deposit-commission, or other basis.
Generally, report any income from your sale of these products on Schedule C (Form 1040).

**Box 3.** Reserved for future use.

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099NEC

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

**-30-**

Exhibit B

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 76 of 185
PageID# 340
Case 2:24-cv-00182-RAJ-LRL   Document 17   Filed 04/30/24   Page 1 of 3 PageID# 75

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

### DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S RULE 12(b)(2) MOTION TO DISMISS

NOW COME the Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc. ("LMI") (collectively, "Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(2), move this Court to dismiss Plaintiff Servicios Latinos, Inc's Complaint as to them. Defendants rely on the arguments more fully set forth in their Memorandum in support of this Motion, filed contemporaneously with this Motion.

WHEREFORE, Defendants Sanchez and LMI respectfully request that this Court grant their Motion and dismiss Plaintiff's Complaint as to them *with* prejudice.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS
MULTISERVICES, INC.**

1

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 77 of 185
PageID# 341
Case 2:24-cv-00182-RAJ-LRL    Document 17    Filed 04/30/24    Page 2 of 3 PageID# 76

By:  */s/ Nathan M. Hernandez*
Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 78 of 185
PageID# 342
Case 2:24-cv-00182-RAJ-LRL   Document 17   Filed 04/30/24   Page 3 of 3 PageID# 77

## CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of April 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@wrvblaw.com
kate.lennon@wrvblaw.com
*Counsel for Plaintiff*

                                    */s/ Nathan M. Hernandez*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 79 of 185
PageID# 343
Case 2:24-cv-00182-RAJ-LRL   Document 18   Filed 04/30/24   Page 1 of 8 PageID# 78

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| SERVICIOS LATINOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:24-cv-182 |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS G. AMADO GOMEZ, | ) | |
| | ) | |
| ENITH PERTUZ FONTALVO, | ) | |
| | ) | |
| CARLOS SANCHEZ, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LATINOS MULTISERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S
MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(2)
MOTION TO DISMISS**

Plaintiff Servicios Latinos, Inc. ("SLI") initiated litigation against Defendants Carlos

Sanchez ("Sanchez") and Latinos Multiservices, Inc. ("LMI") where that litigation never

belonged:  in this Court, which has no personal jurisdiction over either of them.   SLI does not

even allege this Court has personal jurisdiction over Sanchez or LMI, and nothing else in the

Complaint remotely suggests Sanchez or LMI engaged in any conduct that would subject them to

this Court's personal jurisdiction.  Neither Sanchez nor LMI are residents of Virginia.  Neither of

them owns property in Virginia. Neither of them conducts business or other transactions in

Virginia.  Neither of them was even aware that SLI was a Virginia corporation in the first place,

which forecloses the possibility that either of them could have directed any tortious conduct to

Virginia. And the Complaint is clear that all the alleged relevant conduct took place in Delaware,

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 80 of 185
PageID# 344
Case 2:24-cv-00182-RAJ-LRL    Document 18    Filed 04/30/24    Page 2 of 8 PageID# 79

not Virginia.  At bottom, this district is not the correct place for SLI's lawsuit against Defendants

to occur, and accordingly, this Court should dismiss the Complaint as to them with prejudice.

<b>LEGAL STANDARD</b>

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

ultimately bears the burden of proving to the district court judge the existence of jurisdiction over

the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort*

*Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th

Cir. 1989)).  To meet its burden, the plaintiff "must make a prima facie showing of a sufficient

jurisdictional basis to survive a motion to dismiss." *New Venture Holdings, L.L.C. v. DeVito Verdi,*

*Inc.*, 376 F. Supp. 3d 683, 689 (E.D. Va. 2019).  In determining whether a plaintiff has made that

showing, a court may "consider affidavits submitted by both parties, although it must resolve all

factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction."

*Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).  Nonetheless, where,

as here, the defendant "provides evidence which denies facts essential for jurisdiction, the plaintiff

must, under threat of dismissal, present sufficient evidence to create a factual dispute on each

jurisdictional element which has been denied by the defendant on which the defendant has

presented evidence." *New Venture Holdings*, 376 F. Supp. 3d at 689 (citations and internal

quotation marks omitted); *see also Reynolds Foil, Inc. v. Pai*, 2010 U.S. Dist. LEXIS 28473, at

*4-5 (E.D. Va. Mar. 25, 2010) ("[T]he reviewing court may presume that any uncontradicted

evidence submitted by either party is true." (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477-

78 (1985))).  "[A] plaintiff cannot rely on bare pleadings alone after a defendant properly

challenges personal jurisdiction."  *Gibbs v. Elevate Credit, Inc.*, 2021 U.S. Dist. LEXIS 200197,

at *28 (E.D. Va. Oct. 17, 2021) (citation and internal quotation marks omitted).  "Instead, the

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 81 of 185
PageID# 345
Case 2:24-cv-00182-RAJ-LRL    Document 18    Filed 04/30/24    Page 3 of 8 PageID# 80

plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence . . . [and] must respond with actual proofs, not mere allegations." *Id.* (citation and internal quotation marks omitted).

"A federal district court may only exercise personal jurisdiction over a foreign [defendant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Id.*; *see also Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319 (1999) ("[I]t is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." (quoting *John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.*, 211 Va. 736, 740 (1971))).

Due process requires that in order to find personal jurisdiction over a defendant in the forum state, the defendant must have sufficient "minimum contacts" with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "There are two types of personal jurisdiction: general and specific." *Crawl Space Door Sys. v. White & Williams, LLP*, 2022 U.S. Dist. LEXIS 212019, at *5 (E.D. Va. Nov. 22, 2022). To establish general jurisdiction over a defendant, a plaintiff must show that the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 82 of 185
PageID# 346
Case 2:24-cv-00182-RAJ-LRL    Document 18    Filed 04/30/24    Page 4 of 8 PageID# 81

By contrast, "[e]stablishing specific jurisdiction is less burdensome but extends over conduct which connects the defendant to the [forum] state." *Crawl Space*, 2022 U.S. Dist. LEXIS 212019, at *5. "The Fourth Circuit has synthesized the specific jurisdiction inquiry to a three-part test[.]" *Id.* Under that three-part test, courts consider "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quoting *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)).

## ARGUMENT

Plaintiff Servicios Latinos, Inc. ("SLI") cannot establish that Sanchez or LMI are subject to this Court's personal jurisdiction. In fact, SLI failed to even allege in its Complaint that this Court has personal jurisdiction over Sanchez or LMI. The only personal jurisdictional allegation SLI brings is in paragraph 7 of its Complaint, where it cites a permissive forum selection clause found in non-compete and non-solicitation agreements between SLI and other Defendants, Luis G. Amado Gomez and Enith Pertuz Fontalvo (the "NCAs"). ECF No. 1, ¶ 7. But neither Sanchez nor LMI are parties to NCAs, so the NCAs' forum selection clauses are irrelevant to whether this Court has personal jurisdiction over them.

Nothing else in the Complaint supports a finding of personal jurisdiction either. For one thing, Sanchez is a resident of Delaware, and LMI is a Delaware corporation with its principal place of business in Delaware. *See* ECF No. 1, ¶¶ 6, 22, 27. Moreover, neither Sanchez nor LMI owns property in Virginia or conducts business or other transactions in Virginia. *See* Attachment 1, Declaration of Carlos Sanchez, ¶¶ 3-4; Attachment 2, Declaration of Enith Pertuz Fontalvo, ¶¶

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 83 of 185
PageID# 347
Case 2:24-cv-00182-RAJ-LRL    Document 18    Filed 04/30/24    Page 5 of 8 PageID# 82

3-5. Accordingly, there is no basis to find general personal jurisdiction. *Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (stating that a corporation's paradigm forums for general jurisdiction are "the place of incorporation and principal place of business"); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (stating that general jurisdiction may be found in forum outside a defendant's domicile only if his activities in the forum state are "continuous and systematic" (quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414-15 (1984))).

For another thing, there is no basis to find specific jurisdiction, as Sanchez and LMI did not purposefully avail themselves of the privilege of conducting activities in Virginia. Indeed, SLI does not allege those two did *anything* in Virginia at all. To the contrary, SLI's allegations are clear that all of the relevant conduct took place in Delaware—*i.e.*, that Gomez and Fontalvo breached their NCAs by allegedly "stealing" SLI's clients and business information in Delaware and operating a "competing" business in Delaware and, critical here, that Sanchez and LMI "tortiously interfered" with the NCAs by "inducing and causing" Gomez and Fontalvo to engage in that unlawful conduct in Delaware. *See* ECF No. 1, ¶¶ 2, 19-29, 47.

In the absence of any allegation that Defendants engaged in unlawful conduct in Virginia, SLI must offer sufficient evidence that Defendants "intentionally directed [their] tortious conduct toward the forum state, knowing that [their] conduct would cause harm to a forum resident." *Khashoggi v. NSO Grp. Techs. Ltd.*, 2023 U.S. Dist. LEXIS 192466, at *20 (E.D. Va. Oct. 26, 2023) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). SLI cannot do so. Its Complaint is clear that all of the Defendants' conduct occurred in Delaware for the alleged purpose of establishing a competitive business within Delaware. Furthermore, as shown by Sanchez and

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 84 of 185
PageID# 348
Case 2:24-cv-00182-RAJ-LRL   Document 18   Filed 04/30/24   Page 6 of 8 PageID# 83

Fontalvo's respective Declarations,[1] neither Sanchez nor LMI even knew SLI was a Virginia corporation to begin with.  *See* Attachment 1, Declaration of Carlos Sanchez, ¶ 6; Attachment 2, Declaration of Enith Pertuz Fontalvo, ¶¶ 7-8.  Thus, there is simply no basis to find that Sanchez or LMI could have "intentionally directed" tortious conduct toward Virginia "knowing" that their conduct "would cause harm" in Virginia.  *See Khashoggi*, 2023 U.S. Dist. LEXIS 192466, at *20; *see also JTH Tax v. Liberty Servs. Title, Inc.*, 543 F. Supp. 2d 504, 508 (E.D. Va. 2008) (finding lack of personal jurisdiction where defendant had no contacts with forum state other than the knowledge that its alleged unlawful conduct "might impact" the pecuniary interests of the plaintiff who "happen[ed] to be based in Virginia").

Given all this, the only thing SLI is left with is the argument that Defendants should be subject to this Court's personal jurisdiction because SLI suffered damages in Virginia.  But that too would be insufficient, as "mere injury to a forum resident is not a sufficient connection to the forum" so as to support finding of personal jurisdiction over a defendant.  *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.*  And as has been shown, neither Sanchez nor LMI's alleged conduct connects them to Virginia in any meaningful way.

In short, this Court does not have personal jurisdiction over Sanchez or LMI, whether viewed from a general jurisdiction or specific jurisdiction analysis.  Sanchez and LMI are not citizens of Virginia, do not own property or conduct transactions in Virginia, and did not engage in any conduct in Virginia or elsewhere that would have led them to reasonably foresee being sued

---

[1] Fontalvo made her Declaration on behalf of LMI as owner and Vice President of LMI.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 85 of 185
PageID# 349
Case 2:24-cv-00182-RAJ-LRL   Document 18   Filed 04/30/24   Page 7 of 8 PageID# 84

in Virginia.  Accordingly, SLI's action against Sanchez and LMI cannot be allowed to move forward in this Court.

## CONCLUSION

Sanchez and LMI should never have been sued here in this first place, as neither party is subject to this Court's personal jurisdiction.  For that reason, Sanchez and LMI respectfully request that this Court grant their Rule 12(b)(2) motion to dismiss and dismiss Plaintiff's Complaint as to them *with* prejudice.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.**


By: */s/ Nathan M. Hernandez*
    Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 86 of 185
PageID# 350
Case 2:24-cv-00182-RAJ-LRL   Document 18   Filed 04/30/24   Page 8 of 8 PageID# 85

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@wrvblaw.com
kate.lennon@wrvblaw.com
*Counsel for Plaintiff*


*/s/ Nathan M. Hernandez*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 87 of 185
PageID# 351
Case 2:24-cv-00182-RAJ-LRL    Document 18-1    Filed 04/30/24    Page 1 of 2 PageID# 86

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **Defendant/Counterclaim Plaintiff** | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

<u>**DECLARATION OF CARLOS SANCHEZ**</u>

Pursuant to 28 U.S.C. § 1746, I, Carlos Sanchez, declare and verify the following:

1.      I am over 18 years of age and am fully competent to make this Declaration.

2.      I am a Delaware resident.

3.      I do not personally own any real property in Virginia.

4.      I do not conduct any business or other transactions in Virginia.

5.      Prior to the initiation of this action, I had no interaction with the Plaintiff and

Counterclaim Defendant in this matter, Servicios Latinos, Inc. ("SLI").

6.      Prior to the initiation of this action, I had no knowledge that SLI was a Virginia

corporation.

1

**-42-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 88 of 185
PageID# 352
Case 2:24-cv-00182-RAJ-LRL    Document 18-1    Filed 04/30/24    Page 2 of 2 PageID# 87

7.    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

30/04/24
_____
Date

_____
Carlos Sanchez

2

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 89 of 185
PageID# 353
Case 2:24-cv-00182-RAJ-LRL    Document 18-2    Filed 04/30/24    Page 1 of 2 PageID# 88

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **SERVICIOS LATINOS, INC.,** ) | |
| ) | |
| **Plaintiff/Counterclaim Defendant,** ) | **Case No.: 2:24-cv-182** |
| ) | |
| **v.** ) | |
| ) | |
| **LUIS G. AMADO GOMEZ,** ) | |
| ) | |
| **Defendant/Counterclaim Plaintiff** ) | |
| ) | |
| **ENITH PERTUZ FONTALVO,** ) | |
| ) | |
| **CARLOS SANCHEZ,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **LATINOS MULTISERVICES, INC.** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

<u>**DECLARATION OF ENITH PERTUZ FONTALVO**</u>

Pursuant to 28 U.S.C. § 1746, I, Enith Pertuz Fontalvo, declare and verify the following:

1.      I am over 18 years of age and am fully competent to make this Declaration.

2.      I am Vice President and owner of Defendant Latinos Multiservices, Inc. ("LMI")

and am duly authorized to make this Declaration on its behalf.

3.      LMI has no real property in Virginia.

4.      LMI is not registered to do business in Virginia.

5.      LMI does not conduct any business or other transactions in Virginia.

6.      LMI does not have an agent appointed to receive process in Virginia.

7.      Prior to the initiation of this action, neither I nor any agent of LMI had knowledge

that SLI was a Virginia corporation.

1

**-44-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 90 of 185
PageID# 354
Case 2:24-cv-00182-RAJ-LRL    Document 18-2    Filed 04/30/24    Page 2 of 2 PageID# 89

8.      Relatedly, I do not read or speak much English, and I did not understand the contents of the Non-Compete and Non-Solicitation Agreement that SLI required me to sign on December 27, 2018, including the provision that identified SLI as a "Virginia corporation."

9.      Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

30/04/24
_____
Date

_____
Enith Pertuz Fontalvo (Apr 30, 2024 16:18 EDT)
*Enith Pertuz Fontalvo*
*Vice President*
*Latinos Multiservices, Inc.*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 91 of 185
PageID# 355
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 1 of 8 PageID# 104

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

     Plaintiff,

v.                                      Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ, *et al*.,

     Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CARLOS SANCHEZ
AND LATINOS MULTISERVICES, INC.'S MOTION TO DISMISS**

     NOW COMES Plaintiff Servicios Latinos, Inc. ("Servicios" or the "plaintiff"), by

counsel, and for its opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos

Multiservices, Inc.'s ("Latinos Multiservices") Motion to Dismiss, states as follows:

**INTRODUCTION**

     As alleged in the Complaint in this matter, Defendants Luis G. Amado Gomez

("Gomez") and Enith Pertuz Fontalvo ("Fontalvo") are former employees of the plaintiff.

(Compl. ¶ 2.)  In exchange for their employment, Gomez and Fontalvo signed Non-Compete and

Non-Solicitation Agreements (the "Agreements").  (*Id.*)  Despite their fiduciary duties to the

plaintiff and the provisions in the Agreements, Gomez and Fontalvo stole client information and

confidential business information from the plaintiff and planned to open a competitive business

while still employed with the plaintiff.  (*Id.*)  After their employment was terminated, Gomez and

Fontalvo opened a competitor business, Latinos Multiservices, mere blocks from the plaintiff's

Delaware office, and used stolen confidential information and business secrets to compete

directly with the plaintiff.  (*Id.*)  Notably, the Complaint alleges that Defendant Sanchez has been

1

**-46-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 92 of 185
PageID# 356
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 2 of 8 PageID# 105

and continues to be fully aware of the Agreements and has intentionally interfered with the contracts by contributing to Latinos Multiservices's competition with the plaintiff.  (*Id.*)

The Complaint alleges that Gomez and Fontalvo breached their contract with and their fiduciary duty of loyalty to the plaintiff.  (*See* Dkt. No. 1, Counts I–II.)  The Complaint further alleges tortious interference with contract against Sanchez and Latinos Multiservices given their awareness of the Agreements and actions in interfering with the Agreements and causing Fontalvo and Gomez to breach the Agreements.  (*Id.*, Count III.)  In addition to damages, the Complaint seeks a temporary restraining order, permanent injunction, and specific performance. (*Id.* ¶¶ 49–64.)

As discussed in the facts section below, Gomez and Fontalvo filed a joint Answer to the Complaint.  (*See generally* Dkt. No. 19.)  In their Answer, they do not contest planning to open Latinos Multiservices while employed with the plaintiff, nor do they contest that they opened the business near one of the plaintiff's offices.  They further admit that Sanchez has a romantic relationship with Fontalvo and that Sanchez actively participated in the creation and operation of Latinos Multiservices, including serving as the contact and signatory on Latinos Multiservices's New Business Application.  Nothing in the Declaration of Carlos Sanchez (Dkt. No. 18-1) nor the Declaration of Enith Pertuz Fontalvo contradicts the pertinent allegations in the Complaint and admissions in Gomez and Fontalvo's Answer, which support enforcement of the forum selection clauses in the Agreements against Sanchez and Latinos Multiservices.  Accordingly, this Court should deny the Motion to Dismiss filed by Sanchez and Latinos Multiservices.

## BACKGROUND AND ADMISSIONS

Defendants Gomez and Fontalvo filed a joint Answer to the Complaint on April 30, 2024. In their Answer, they admit that they signed the Agreements.  (Dkt. No. 19, ¶ 2.)  On that same

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 93 of 185
PageID# 357
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 3 of 8 PageID# 106

date, Sanchez and Latinos Multiservices filed a Motion to Dismiss, attaching declarations from Sanchez and Fontalvo.  Notably, Sanchez, Fontalvo, Gomez, and Latinos Multiservices are all represented by the same counsel.

In their Answer, Gomez and Fontalvo admit that they planned to open a competitive business while still employed with the plaintiff.  (*Id.*)  They admit that they opened Latinos Multiservices after their employment ended, mere blocks from the plaintiff's location.  (*Id.*)  Neither Fontalvo, nor Gomez contest the content of the Agreements, nor do they contest the enforceability of the forum selection clauses in the Agreements.  (*Id.* ¶¶ 11–17.)

Fontalvo and Gomez further admit that they submitted a New Business Application for Latinos Multiservices on or about October 16, 2023.  (*Id.* ¶ 23.)  They admit that Fontalvo was listed as the business owner and that Carlos Sanchez was listed as the contact for the application and signed the application.  (*Id.*)  They further admit to the close relationship between Sanchez and Fontalvo.  (*Id.* ¶ 24.)  Gomez and Fontalvo further admit that in November of 2023, they, along with Sanchez, opened an office for Latinos Multiservices just 0.1 miles down the street from the plaintiff's Delaware office.  (*Id.* ¶ 27.)

The declarations attached to the Motion to Dismiss do not contest these admissions and are not relevant to the forum selection analysis.  (*See* Dkt. Nos. 18-1, 18-2.)

## LEGAL STANDARD

Given that the defendants did not present any evidence with relation to personal jurisdiction as it relates to the forum selection clauses, "the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence." *Gibbs v. Elevate Credit, Inc.*, No. 3:20cv632, 2021 WL 4851066, at *11 (E.D. Va. Oct. 17, 2021).  Accordingly, "the district court must determine whether the facts proffered by

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 94 of 185
PageID# 358
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 4 of 8 PageID# 107

the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)). Although a court may consider affidavits submitted by both parties, "it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (quoting *Hawkins*, 935 F.3d at 226).

"Interpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law." *Mitsui Sumitomo Insurance USA, Inc. v. Tokio Marine & Nichido Fire Ins. Co., Ltd.*, No. LA CV12-09953, 2013 WL 12136602, at *4 (C.D. Calif. Aug. 8, 2013). "A forum selection clause is presumptively valid in actions arising out of the contract." *Id.* (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). "A valid forum selection clause allows for personal jurisdiction in the chosen forum under the principles of 'contractual consent or waiver.'" *Kraze Burger, Inc. v. Kraze International, Inc.*, No. 1:19cv0717, 2023 WL 4357251, at *5 (E.D. Va. May 19, 2023) (quoting *W.L. Gore & Assocs. v. Medtonic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011)).

## ARGUMENTS & AUTHORITIES

### I.    The Forum Selection Clauses

Sanchez and Latinos Multiservices incorrectly assert that the forum selection clauses are irrelevant to whether this court has personal jurisdiction over them. "This court has previously held that forum selection clauses can be enforced against a nonsignatory to a contract 'if the non-party is so "closely related" to the dispute such that it becomes "foreseeable that it will be bound."'" *Kraze Burger, Inc.*, 2023 WL 4357251, at *6 (quoting *Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000)); *see also directPacket Research, Inc. v. Polycom, Inc.*, No. 2:18cv331, 2019 WL 8065832, at *2 (E.D. Va. July 3, 2019) (quoting

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 95 of 185
PageID# 359
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 5 of 8 PageID# 108

*In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011)) ("'A forum selection clause may bind non-parties to a contract if the relationship between the non-party and the signatory [is] sufficiently close,' and enforcement is 'foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'").

"The non-signatory need not be a third-party beneficiary to be bound by the contract." *Id.* "[E]nforcement of terms [of forum selection agreements] is foreseeable when entities share corporate officers." *directPacket Research, Inc.*, 2019 WL 8065832, at *3. Further, "officers and directors of a signatory are 'closely related' to the disputes arising out of agreements." *Kraze Burger, Inc.*, 2023 WL 4357251, at *6. "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Morag v. Quark Expeditions, Inc.*, 2008 WL 3166066, at *5 (D. Conn. Aug. 5, 2008) (quoting *Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No. 03-cv-3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005)).

Fontalvo and Gomez were signatories to the subject Agreements and have admitted that they created and operate Latinos Multiservices. In fact, the Motion to Dismiss and the declaration attached thereto state that Fontalvo is the owner and Vice President of Latinos Multiservices. (*See* Dkt. No. 18 at 6 n.1, Dkt. No. 18-2 ¶ 2.) The knowledge of the forum selection clause is therefore imputed on Latinos Multiservices. Given the close relationship between the signatories to the Agreements and Latinos Multiservices, it was foreseeable that Latinos Multiservices would be bound by the terms of the Agreements.

Sanchez is closely related and in a romantic relationship with Fontalvo, and now operates Latinos Multiservices with Gomez and Fontalvo. The Complaint alleges that Sanchez was aware of the Agreements, which include the forum selection clauses. Although Sanchez attached a

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 96 of 185
PageID# 360
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 6 of 8 PageID# 109

declaration to his Motion to Dismiss, he does not contend that he was not aware of the forum

selection clause.  (*See* Dkt. No. 18-1.)  Further, the claim against Sanchez is for tortious

interference with the very contracts containing the forum selection clauses, and the conduct is

therefore closely related to the Agreements.  *See Magi XXI, Inc. v. Stato della Citta del Vaticano*,

714 F.3d 714, 724 (2d Cir. 2013) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,

709 F.2d 190, 203 (3d Cir. 1983)) ("A contractually-based forum selection clause also covers

tort claims against non-signatories if the tort claims 'ultimately depend on the existence of a

contractual relationship' between the signatory parties."); *see also BNY AIS Nominees Ltd. v.

Quan*, 609 F. Supp. 2d 269, 275 (D. Conn. 2009) (quoting *Morag*, 2008 WL 3166066, at *5

("[W]here the alleged conduct of the nonparties is closely related to the contractual relationship,

'a range of transaction participants, parties and non-parties, should benefit from and be subject to

the forum selection clauses.'"); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514

n.5 (9th Cir. 1988) (stating agreement "with the district court that the alleged conduct of the non-

parties is so closely related to the contractual relationship that the forum selection clause applies

to all defendants").

Both Sanchez and Latinos Multiservices have a close relationship with the signatories to

the Agreements and their interests are intertwined with those of the signatories.  The claim

against Sanchez and Latinos Multiservices for tortious interference with contract is directly

related to the Agreements containing the forum selection clauses.  Accordingly, federal law and

judicial economy support the lawsuit against all defendants proceeding in this forum.

## II.    Prima Facie Case for Personal Jurisdiction

Although the forum selection clauses are dispositve on the issue of personal jurisdiction,

there is a basis for personal jurisdiction independent of the forum selection clauses.  "The United

States Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists." *Foster Made, LLC v. Foster*, No. 3:17cv775, 2018 WL 4693810, at *3 (E.D. Va. Sept. 28, 2018). The Court must consider the following: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State, and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Sanchez and Latinos Multiservices appear to attack the purposeful availment portion of the analysis only.

"[T]he Supreme Court has long held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's 'intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Foster Made, LLC*, 2018 WL 4693810, at *3 n.6 (quoting *Calder v. Jones*, 465 U.S. 783, 791 (1984)). Contrary to the assertions in the Memorandum in Support of the Motion to Dismiss, Sanchez and Latinos Multiservices did not just incidentally cause injury in Virginia by their conduct. Rather, all of the owners, officers, and operators of Latinos Multiservices, including Sanchez, were aware that the plaintiff had multiple offices in Virginia and operated in Virginia. In fact, Gomez, who admittedly created and operated Latinos Multiservices, admits in his Answer that he worked for the plaintiff in the Norfolk, Virginia office. (Dkt. No. 19 ¶ 9.)

Two of the individuals owning and operating Latinos Multiservices were employees of the plaintiff and interacted with the plaintiff's business in Virginia. Latinos Multiservices, through its owners, officers, and operators, and Sanchez knew that their conduct was meaningfully directed at a Virginia corporation, and therefore could reasonably foresee being

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 98 of 185
PageID# 362
Case 2:24-cv-00182-RAJ-LRL    Document 21    Filed 05/14/24    Page 8 of 8 PageID# 111

sued in Virginia for their conduct directed at the Virginia corporation. A prima facie case for

personal jurisdiction has therefore been met.

### <u>CONCLUSION</u>

For the foregoing reasons, Servicios Latinos, Inc. respectfully requests that the Court deny

Defendants' Motion to Dismiss, exercise its jurisdiction over the Complaint, and award Servicios

Latinos such other relief as is just and appropriate.

Dated: May 14, 2024

Respectfully Submitted,

SERVICIOS LATINOS, INC

By: _/s/_____
    Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@wrvblaw.com
Kate.Lennon@wrvblaw.com
*Counsel for Plaintiff*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 99 of 185
PageID# 363
Case 2:24-cv-00182-RAJ-LRL    Document 22    Filed 05/20/24    Page 1 of 8 PageID# 121

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S**
**CORRECTED REPLY IN SUPPORT OF THEIR RULE 12(b)(2)**
**MOTION TO DISMISS**

In its Opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") Rule 12(b)(2) Motion to Dismiss, Plaintiff Servicios Latinos, Inc. ("SLI") does not dispute that all of the relevant alleged conduct took place in Delaware, not Virginia.  Nor does it provide any counter-evidence disputing the claim from the Declarations of Sanchez and Enith Pertuz Fontalvo that neither Sanchez nor LMI even knew SLI was a Virginia corporation before this lawsuit began, which precludes the possibility that Sanchez or LMI purposefully directed any tortious conduct toward Virginia.  Instead, SLI's principal contention is grounded in a seldom-used doctrine known as the "closely related" doctrine, which holds that a party who is not a signatory to a forum selection clause may nonetheless be bound by the forum selection clause if it

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 100 of 185
PageID# 364
Case 2:24-cv-00182-RAJ-LRL     Document 22     Filed 05/20/24     Page 2 of 8 PageID# 122

is "closely related" to the contractual relationship in dispute.[1]  Because, in SLI's view, LMI and Sanchez are "closely related" to Fontalvo and Luis G. Amado Gomez (LMI because it is operated by Fontalvo and Gomez, and Sanchez because he's in a romantic relationship with Fontalvo), SLI avers they should be bound by the forum selection clauses found in the non-compete and non-solicitation agreements signed by Fontalvo and Gomez (the "NCAs").

That argument is without merit.  For one thing, neither LMI nor Sanchez are "closely related" in the narrow sense this Court has construed the concept in the past, as neither one of them was closely related to the *contractual relationship* at issue here—namely, the NCAs.  LMI did not even exist at the time the NCAs were negotiated or executed.  And Sanchez did not have any proximity or role to the negotiation or execution of the NCAs, nor was he a beneficiary of the NCAs.

For another thing, as other courts have correctly pointed out, the "closely related" doctrine suffers from two significant problems:  (1) it is constitutionally suspect, and (2) it is fundamentally incompatible with the Supreme Court's precedents on personal jurisdiction.  Accordingly, this Court should not only decline to expand the doctrine's application in the manner sought by SLI here but should also be suspect of any future expansions going forward.

In short, none of SLI's arguments change the conclusion that its Complaint was improperly brought against LMI and Sanchez.  This Court should reject SLI's arguments and grant the relief LMI and Sanchez respectfully seek in their Motion to Dismiss.

---

[1] In the last portion of its Opposition, SLI also argued the facts alleged in its Complaint establish personal jurisdiction independently from the closely related doctrine.  *See* ECF No. 21, pp. 6-8.  Sanchez and LMI rely on their initial memorandum in support of their motion to dismiss to address that argument, *see generally* ECF No. 18, and also reserve the right to address any questions or concerns this Court has related to that argument at a future hearing, should this Court hold one.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 101 of 185
PageID# 365
Case 2:24-cv-00182-RAJ-LRL    Document 22    Filed 05/20/24    Page 3 of 8 PageID# 123

**ARGUMENT**

### A. Neither LMI nor Sanchez are Closely Related to the Contractual Relationship at Issue in this Action.

*Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.* represents the sole published case where this Court applied the "closely related" doctrine.[2]  There, the Court stated the doctrine applies "when the non-parties' alleged conduct is so closely related to the *contractual relationship*" such that "both parties and non-parties should benefit from and be subject to a forum selection clause contained in the contract."  131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (emphasis added).

In *Allianz*, cargo that was owned by AGM Glass Machinery, Inc. "was delivered to defendant D.S.R. America at the port of La Spezia, Italy, pursuant to a bill of lading with defendant Cho Yang Shipping Co., Ltd. for its shipment to Norfolk, Virginia."  *Id.* at 789.  "The cargo was in good order and condition when it was received and accepted by [the] defendants.  However, on or about March 2, 1999, the cargo was delivered to the port of destination in a damaged condition."  *Id.*  The plaintiff, Allianz Insurance Company of Canada, as subrogee for AGM, sued the defendants for breach of contract, among other claims.  *Id.*  The breach of contract claim was based upon a bill of lading entered into between Cho Yang Shipping, D.S.R. America, the shipper of the cargo, and the consignee of the cargo.  *Id.* at 792.  Defendant Cho Yang Shipping moved to dismiss, arguing this Court lacked subject matter jurisdiction due to a forum selection clause found in the bill of lading.  *Id.* at 789.  Allianz countered it should not be bound by the forum selection clause because it was not a party to the bill of lading.  *Id.*  This Court disagreed, noting Allianz should be bound by the bill of lading's forum selection clause Allianz was "closely related" to because (1)

---

[2] *Allianz* also applied the "closely related" doctrine in the subject matter jurisdiction context, not the personal jurisdiction context.  Thus, this Court may conclude *Allianz* is not binding on its resolution of LMI and Sanchez's Motion to Dismiss.  Nonetheless, for purposes of this Reply, LMI and Sanchez will assume, without conceding, that *Allianz* is controlling authority.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 102 of 185
PageID# 366
Case 2:24-cv-00182-RAJ-LRL    Document 22    Filed 05/20/24    Page 4 of 8 PageID# 124

the bill of lading "explicitly concern[ed] AGM's cargo," (2) Allianz "inherited its contractual connection to the dispute from AGM as its subrogee," and (3) Allianz "accepted" the terms of the bill of lading, "including the forum selection clause contained therein," when it "filed suit" on the bill. *Id.* at 791-92.

Here, unlike in *Allianz*, LMI and Sanchez are not "closely related" to the contractual relationship at issue and thus cannot be bound by the NCAs' forum selection clauses. LMI did not even exist at the time the NCAs were negotiated and executed. Indeed, as alleged in SLI's Complaint, LMI was founded nearly *five years* after the NCAs were executed. *See* ECF No. 1, ¶¶ 10, 22.

Although this Court has, in previous unpublished (and non-binding) cases,[3] stated that officers, directors, and entities that share corporate officers may be "closely related" to a given contractual dispute depending on their level of involvement in the contract at issue, *see, e.g.*, *Kraze Burger Inc. v. Kraze Int'l, Inc.*, 2023 U.S. Dist. LEXIS 116521, at *15 (E.D. Va. May 19, 2023); *Directpacket Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225, at *9 (E.D. Va. July 3, 2019), it was always the case that the related officers, directors, and entities *existed* when the contracts at issue were executed and, importantly, were intimately involved in the creation of those contracts. *See generally Kraze Burger*, 2023 U.S. Dist. LEXIS 116521; *Directpacket Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225. In those circumstances, then, it made sense to conclude it was "foreseeable" for the non-signatories to be bound by forum selection clauses in the contracts at issue. *See Kraze Burger*, 2023 U.S. Dist. LEXIS 116521, at *14-17; *Directpacket*

---

[3] *United States v. King*, 673 F.3d 274, 280 n.5 (4th Cir. 2012) ("[U]npublished opinions are not binding in this Circuit[.]"); *McPike v. Zero-Gravity Holdings, Inc.*, 2019 U.S. Dist. LEXIS 227485, at *4 (E.D. Va. Mar. 26, 2019) (noting an "unpublished" decision was "not binding precedent").

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 103 of 185
PageID# 367
Case 2:24-cv-00182-RAJ-LRL    Document 22    Filed 05/20/24    Page 5 of 8 PageID# 125

*Research, Inc. v. Polycom, Inc.*, 2019 U.S. Dist. LEXIS 228225, at *9-11.  But the same cannot be said, when, as here, a non-signatory was not in existence at the time a bargained-for contractual term was formed.[4]

The matter is no different for Sanchez.  Sanchez was not involved in the negotiation or execution of the NCAs.  Nor was he a beneficiary to the contract—whether viewed as a formal intended "third-party" beneficiary or an incidental beneficiary.  To circumvent these realities, SLI alleges Sanchez was in a "romantic relationship" with Fontalvo at some unspecified time.  *See* ECF No. 1, ¶ 24.  But even if that's true, a romantic relationship is not, standing alone, sufficient to find Sanchez was "closely related" to Fontalvo's NCA such that he should be bound by the NCA's forum selection clause.  *See Wescott v. Reisner*, 2018 U.S. Dist. LEXIS 92320, at *7-11 (N.D. Cal. June 1, 2018) (declining to assert personal jurisdiction over non-signatory spouse).

Consistent with LMI and Sanchez's interpretation of the scope of the "closely related" doctrine, other courts have stated the criteria for determining whether a non-signatory is closely related to a contract are "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement."  *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018) (citation and internal quotation marks omitted).  As has been shown, none of those criteria apply to LMI or Sanchez.  Accordingly, the "closely related" doctrine is inapposite here and should be squarely rejected by this Court.

---

[4] It's also worth noting that SLI only cites to instances where a corporate signatory's forum selection clause was imputed to the corporation's officers, directors, or parent/sister companies.  It has not cited any authority for the proposition that a later-formed corporation may be bound by a forum selection clause agreed to by its officers in their personal capacity.

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 104 of 185
PageID# 368
Case 2:24-cv-00182-RAJ-LRL   Document 22   Filed 05/20/24   Page 6 of 8 PageID# 126

**B. This Court Should Decline to Expand Application of the "Closely Related" Doctrine Because it is Unconstitutional and Conflicts with Precedents from the United States Supreme Court.**

There's an additional reason this Court should not expand the "closely related" doctrine's application to these facts. Specifically, the doctrine was constitutionally suspect from its inception, and it is not compatible with precedents from the Supreme Court on personal jurisdiction.

As mentioned above, courts have said that "foreseeability" plays a crucial role in determining whether a non-signatory should be bound by a forum selection clause. But contrary to that understanding of personal jurisdiction, the Supreme Court has been clear that "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."[5] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality) (noting that a "rule based on general notions of fairness and foreseeability" is, by all measures, "inconsistent with the premises of lawful judicial power"). Instead, foreseeability is relevant only when "the defendant's conduct *and connection with the forum State* are such that he should reasonably anticipate being haled into court there." *Id.* at 297.

It is for this reason that other courts have observed that "if foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver or implied consent" in the "closely related" context either. *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017). Similarly, when discussing the "serious questions about the constitutionality of

---

[5] Likewise, the Supreme Court has made clear that in the intentional torts context, "the proper focus of the 'minimum contacts' inquiry . . . is the relationship among the defendant, the forum, and the litigation" and that "it is the defendant, *not the plaintiff or third parties*, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (citation and internal quotation marks omitted) (emphasis added).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 105 of 185
PageID# 369
Case 2:24-cv-00182-RAJ-LRL    Document 22    Filed 05/20/24    Page 7 of 8 PageID# 127

using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause," another federal court made the following observation:

> [T]he exercise of jurisdiction over a party bound by a forum selection clause is based on consent. If the party has consented to a particular forum in a 'freely negotiated' agreement, the party is deemed to have waived their right to challenge personal jurisdiction and no further due process 'minimum contacts' analysis is required. But the rationale underlying the rule is absent in cases in which the defendant is not even a party to the agreement. Under those circumstances, a court should not exercise jurisdiction unless the record otherwise demonstrates 'minimum contacts' between the defendant and the forum.

*Truinject Corp. v. Nestlé Skin Health, S.A.*, 2019 U.S. Dist. LEXIS 215313, at *28-29 (D. Del. Dec. 13, 2019); *see also id.* ("I have serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause.").

"[C]onstitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants." *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395 (S.D.N.Y. 2019). In accordance with that caution, this Court should not expand the "closely related" doctrine to the facts of this case (or arguably any case going forward).

## CONCLUSION

For the foregoing reasons, Sanchez and LMI respectfully request that this Court grant their Rule 12(b)(2) motion to dismiss and dismiss Plaintiff's Complaint as to them *with* prejudice.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS
MULTISERVICES, INC.**


By: */s/ Nathan M. Hernandez*
        Of Counsel

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 106 of 185
PageID# 370
Case 2:24-cv-00182-RAJ-LRL   Document 22   Filed 05/20/24   Page 8 of 8 PageID# 128

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendant*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 107 of 185
PageID# 371
Case 2:24-cv-00182-RAJ-LRL    Document 29    Filed 06/18/24    Page 1 of 2 PageID# 153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

      Plaintiff/Counterclaim Defendant,

v.                                        Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ,

      Defendant/Counterclaim Plaintiff,

ENITY PERTUZ FONTALVO,

CARLOS SANCHEZ,

LATINOS MULTISERVICES, INC.,

      Defendants.

### MOTION FOR LEAVE TO FILE A SURREPLY

      NOW COMES Plaintiff/Counterclaim Defendant Servicios Latinos, Inc. ("Servicios"), by counsel, and move this Court for leave to file a surreply in Opposition to The Motion to Dismiss Defendants Carlos Sanchez and Latinos Multiservices, Inc (collectively "Defendants"). In support of this motion, Servicios adopts the Memorandum in Support of Defendants' Motion for Leave to File a Surreply filed contemporaneously with this motion.

      WHEREFORE, because Defendants raised new arguments for the first time in their Reply, Servicios hereby requests leave to file the attached Surreply. Servicios also request that the Court deem the attached Surreply as filed as the date of this filing and any such further relief as this Court deems appropriate.

      Dated: June 18, 2024

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 108 of 185
PageID# 372
Case 2:24-cv-00182-RAJ-LRL    Document 29    Filed 06/18/24    Page 2 of 2 PageID# 154

Respectfully Submitted,

SERVICIOS LATINOS, INC.

By:_ */s/*_____
   Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Plaintiff*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 109 of 185
PageID# 373
Case 2:24-cv-00182-RAJ-LRL    Document 29-1    Filed 06/18/24    Page 1 of 6 PageID# 155

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

      Plaintiff/Counterclaim Defendant,

v.                                                  Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ,

      Defendant/Counterclaim Plaintiff,

ENITY PERTUZ FONTALVO,

CARLOS SANCHEZ,

LATINOS MULTISERVICES, INC.,

      Defendants.

**SURREPLY IN OPPOSITION TO
THE MOTION TO DISMISS SANCHEZ AND LATINOS MULTISERVICES, INC.**

      NOW COMES Plaintiff Servicios Latinos, Inc. ("Servicios" or the "plaintiff"), by

counsel, and for its opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos

Multiservices, Inc.'s ("Latinos Multiservices") Motion to Dismiss, states as follows:

**I.**      **The fact that Latinos Multiservices did not exist at the time that the Non-
Compete and Non-Solicitation Agreements (the "Agreement(s)") were entered
into does not negate the fact that Latinos Multiservices is closely related to the
contract and should be bound by the forum selection clause contained therein.**

      Defendants argue that Latinos Multiservices cannot be bound by the forum selection

clause because Latinos Multiservices did not exist at the time that the Agreements were

executed.  Although Defendants cite cases in which a corporation held to be closely related was

in existence at the time the agreement containing the forum selection clause was executed, those

cases ***do not rely*** on the fact that corporation already existed in their analysis.  In contrast, rather

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 110 of 185
PageID# 374
Case 2:24-cv-00182-RAJ-LRL    Document 29-1    Filed 06/18/24    Page 2 of 6 PageID# 156

than focusing on whether the entity existed at the time, the court in *directPacket Research, Inc. v. Polycom, Inc.* focused on the foreseeability of directPacket Research being bound. No. 2:18cv331, 2019 WL 8065832, at *2–3 (E.D. Va. July 3, 2019); *see also Kraze Burger, Inc. v. Kraze International, Inc.*, No. 1:19cv0717 (E.D. Va. May 19, 2023) (holding that "the claims brought against defendant are closely related to the dispute between plaintiff and Kraze International, the signatories of the [agreement], and it was foreseeable that defendant would be bound by the forum selection clause in the [agreement]."). In doing so, the court relied on the fact that "enforcement of terms is foreseeable when entities share corporate officers." *Id.* at *3. On this point, the court emphasized that the non-signatory company "cannot claim surprise when its own leadership ostensibly reviewed and ratified the terms of [the agreement]." *Id.* [1]

In this case, Fontalvo and Gomez were direct signatories to the Agreements containing the forum selection provisions. Those same signatories now own and operate Latinos Multiservices. Latinos Multiservices "cannot claim surprise when its own leadership ostensibly reviewed and ratified the terms of" the Agreements. *See id.* Regardless of when it was formed, it was reasonably foreseeable that Latinos Multiservices would be bound by the forum selection provision in the Agreements. To hold otherwise would not only contradict existing law but would also incentivize individuals to create new corporations for the purpose of breaching agreements, and such an outcome would be unjust. Accordingly, Servicios respectfully requests that this Court deny the Motion to Dismiss.

---

[1] Of note, courts also consider common interests and the fact that parties are represented by the same counsel to support application of the closely related doctrine, which both favor such a finding in this case. *See Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056–57 (2008).

2
**-65-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 111 of 185
PageID# 375
Case 2:24-cv-00182-RAJ-LRL    Document 29-1    Filed 06/18/24    Page 3 of 6 PageID# 157

II.     **Sanchez is closely related to the Agreements and Fontalvo such that Sanchez should have foreseen being bound by the forum selection clause, regardless of whether he played a role in negotiating the Agreements.**

Defendants rely upon a case from the Northern District of California for the assertion that a romantic relationship is not sufficient to find that an individual was closely related to the agreement such that the individual should expect to be bound by the forum selection clause. (Dkt. No. 22, at 5.)  That decision in *Wescott v. Reisner* is not persuasive, however, given the actual analysis undertaken by that court.  Specifically, as it related to the closely related doctrine, the court's analysis appears to rely upon distinguishing a single case based upon the fact that the case only addressed venue. *Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018).  The court did not, however, conduct additional analysis regarding whether an individual in a close romantic relationship with a signatory to an agreement could ever be deemed closely related. *See id.*  In fact, to the contrary, there are cases that support a finding that a romantic relationship can be the basis for application of the closely related doctrine if the alleged facts support such an application.

For example, in *AAMCO Transmissions, Inc. v. Romano*, the District Court for the Eastern District of Pennsylvania addressed circumstances similar to those in this matter.  42 F. Supp. 3d 700 (E.D. Pa. 2014).  In that case, the plaintiff sued a husband and wife for violation of a non-compete provision contained in a franchise agreement. *Id.* at 703–705.  The defendants argued that the forum selection clause in the franchise agreement did not apply to the wife because she was not a signatory to the franchise agreement. *Id.* at 708.  The court disagreed with the defendants and held that both of the defendants were bound by the forum selection clause. *Id.* at 709.

3

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 112 of 185
PageID# 376
Case 2:24-cv-00182-RAJ-LRL     Document 29-1     Filed 06/18/24     Page 4 of 6 PageID# 158

In holding that the court had jurisdiction over the wife, the court in *AAMCO* acknowledged that "[i]t is widely accepted that nonsignatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *Id.* at 708.  The Court relied upon the closely related doctrine to determine that, given the wife's relationship with the husband, the wife was so closely related to the dispute with the plaintiff that the wife should have foreseen being bound by the forum selection clause in the franchise agreement. *Id.* at 709; *see also Beck v. CIT Group*, No. 94-5513, 1995 WL 394067, at *6 (E.D. Pa. June 29, 1995). The court further noted that because the signatory continued to be involved with the new business, which was owned by the wife, she was a third-party beneficiary of the knowledge and experience that the husband gained while in the course of the franchise relationship at issue. *Id.*

The analysis of *AAMCO* is persuasive in this case.  Carlos Sanchez has been in a close romantic relationship with Fontalvo during all times relevant to this lawsuit, including at the time that Fontalvo signed the Agreement containing the non-compete and forum selection clauses. Further, although not dispositive, upon information and belief, Fontalvo and Gomez currently hold themselves out as husband and wife.  Given this close relationship, Sanchez should have foreseen that if he worked with Fontalvo to create a competing business, in violation of the non-compete agreement, and benefitted from the knowledge and experience that Fontalvo gained from working for Servicios, which he is alleged to have done here, he would be bound by the forum selection clause in the Agreement. Sanchez cannot avoid the jurisdiction of this court by simply stating that he did not sign the agreement containing the forum selection clause when he is closely related to the signatory and is directly benefiting from the knowledge and experience gained from that contractual relationship.  Accordingly, the Motion to Dismiss should be denied.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 113 of 185
PageID# 377
Case 2:24-cv-00182-RAJ-LRL    Document 29-1    Filed 06/18/24    Page 5 of 6 PageID# 159

### III.    Jurisdiction over closely related parties has been applied by many jurisdictions and is constitutional.

Contrary to the defendants' assertion, application of the closely related doctrine in this case would not ***expand*** the closely related doctrine.  As outlined above and in Plaintiff's Opposition to the Motion to Dismiss, the closely related doctrine has been applied in scenarios in which defendants are closely related to the signatory, the contract, and the dispute in such a way that it renders it foreseeable that the individual would be subject to the forum selection provision of the contract.

Further, in contrast to Defendants' assertions otherwise, the policy considerations support application of the closely related doctrine in this case.  Were this court to hold that neither Sanchez nor Latinos Multiservices are bound by the forum selection provision, parties to contracts would be incentivized to create corporations or use their significant others or family members to breach the agreements to avoid enforcement of the provisions.  This sort of injustice is of the exact sort that the closely related doctrine is intended to prevent. Accordingly, this Court should apply the closely related doctrine, as it has been applied in similar cases, to Sanchez and Latinos Multiservices, and deny the Motion to Dismiss.

### CONCLUSION

For the foregoing reasons, and for those reasons stated in the Opposition to the Motion to Dismiss and to be stated in a hearing on this matter, Servicios Latinos, Inc. respectfully requests that the Court deny Defendants' Motion to Dismiss, exercise its jurisdiction over Sanchez and Latinos Multiservices, and award Servicios Latinos such other relief as is just and appropriate.

Dated: June 18, 2024

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 114 of 185
PageID# 378
Case 2:24-cv-00182-RAJ-LRL    Document 29-1    Filed 06/18/24    Page 6 of 6 PageID# 160

Respectfully Submitted,

SERVICIOS LATINOS, INC.

By: _/s/_____
    Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Plaintiff*

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 115 of 185
PageID# 379
Case 2:24-cv-00182-RAJ-LRL   Document 30   Filed 06/18/24   Page 1 of 3 PageID# 161

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

      Plaintiff/Counterclaim Defendant,

v.                                        Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ,

      Defendant/Counterclaim Plaintiff,

ENITH PERTUZ FONTALVO,

CARLOS SANCHEZ,

LATINOS MULTISERVICES, INC.,

      Defendants.

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE A SURREPLY**

      NOW COMES Plaintiff/Counterclaim Defendant Servicios Latinos, Inc. ("Servicios"), by counsel, in support of Servicios' Motion to file a Surreply in Opposition to The Motion to Dismiss Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc ("Latinos Multiservices") (collectively "Defendants"), and states as follows.

      1.      Servicios filed the Complaint on March 20, 2024.  (Dkt. No. 1.)

      2.      Defendants Luis G. Amado Gomez and Enith Pertuz Fontalvo filed an Answer to the Complaint on April 30, 2024.  (Dkt. No. 19.)  Mr. Gomez also filed a Counterclaim.  (Dkt. No. 20.)

      3.      Defendants Sanchez and Latinos Multiservices filed a Motion to Dismiss and Memorandum in Support of the Motion to Dismiss on April 30, 2024.  (Dkt. Nos. 17 and 18.) Notably, Defendants did not address the closely related doctrine.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 116 of 185
PageID# 380
Case 2:24-cv-00182-RAJ-LRL    Document 30    Filed 06/18/24    Page 2 of 3 PageID# 162

4.      Servicios filed an Opposition to the Motion to Dismiss on May 14, 2024,

discussing issues related to the applicable forum selection clause and the closely related doctrine.

(Dkt. No. 21.)

5.      Defendants filed a Reply to the Opposition on May 20, 2024, addressing issues

and case law regarding the closely related doctrine.  (Dkt. No. 22.)

6.      Because Defendants only addressed the closely related doctrine in their Reply,

Servicios has not had the opportunity to respond to Defendants' arguments related to the

doctrine.

7.      "Surreplies may be permitted when the moving party would be unable to contest

matters presented to the court for the first time in the opposing party's reply."  *Khoury v.*

*Meserve*, 268 F. Supp. 2d 600, 605-606 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d

56, 61 (D.D.C. 2001)).

8.      Permitting Servicios leave to file the Surreply will enable the issues to be properly

addressed.  *See*, *e.g.*, *Young v. Swirsky*, 2015 WL 6501164, 2015 U.S. Dist. Lexis 144671, at *7-8

(D. Md. Oct. 26, 2015) (granting motion for leave to file surreply to enable a response to issues

presented for the first time in a reply).

9.      Servicios seeks to file a Surreply in order for the Court to properly address all of

the issues, especially if the Court were to determine that it does not need a hearing in this matter.

10.     Counsel for Defendants has indicated that he does not object to this motion.

Counsel for Defendants does not agree that Servicios is entitled to file a Surreply but elects not

to file an opposition for the sake of judicial efficiency and to preserve their clients' resources.

WHEREFORE, because Defendants raised new arguments for the first time in their

Reply, Servicios hereby request leave to file the attached Surreply.  Servicios also request that the

2

Case 2:24-cv-00182-RAJ-RJK     Document 46-1     Filed 12/20/24     Page 117 of 185
PageID# 381
Case 2:24-cv-00182-RAJ-LRL   Document 30   Filed 06/18/24   Page 3 of 3 PageID# 163

Court deem the attached Surreply as filed as the date of this filing and any such further relief as

this Court deems appropriate.

      Dated: June 18, 2024

                            Respectfully Submitted,

                            SERVICIOS LATINOS, INC.

                            By: _/s/_____
                               Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Plaintiff*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 118 of 185
PageID# 382
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 1 of 6 PageID# 164

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

      Plaintiff/Counterclaim Defendant,

v.                                           Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ,

      Defendant/Counterclaim Plaintiff,

ENITY PERTUZ FONTALVO,

CARLOS SANCHEZ,

LATINOS MULTISERVICES, INC.,

      Defendants.

**SURREPLY IN OPPOSITION TO
THE MOTION TO DISMISS SANCHEZ AND LATINOS MULTISERVICES, INC.**

      NOW COMES Plaintiff Servicios Latinos, Inc. ("Servicios" or the "plaintiff"), by

counsel, and for its opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos

Multiservices, Inc.'s ("Latinos Multiservices") Motion to Dismiss, states as follows:

I.      **The fact that Latinos Multiservices did not exist at the time that the Non-
Compete and Non-Solicitation Agreements (the "Agreement(s)") were entered
into does not negate the fact that Latinos Multiservices is closely related to the
contract and should be bound by the forum selection clause contained therein.**

      Defendants argue that Latinos Multiservices cannot be bound by the forum selection

clause because Latinos Multiservices did not exist at the time that the Agreements were

executed.  Although Defendants cite cases in which a corporation held to be closely related was

in existence at the time the agreement containing the forum selection clause was executed, those

cases ***do not rely*** on the fact that corporation already existed in their analysis.  In contrast, rather

1

**-73-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 119 of 185
PageID# 383
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 2 of 6 PageID# 165

than focusing on whether the entity existed at the time, the court in *directPacket Research, Inc. v. Polycom, Inc.* focused on the foreseeability of directPacket Research being bound. No. 2:18cv331, 2019 WL 8065832, at *2–3 (E.D. Va. July 3, 2019); *see also Kraze Burger, Inc. v. Kraze International, Inc.*, No. 1:19cv0717 (E.D. Va. May 19, 2023) (holding that "the claims brought against defendant are closely related to the dispute between plaintiff and Kraze International, the signatories of the [agreement], and it was foreseeable that defendant would be bound by the forum selection clause in the [agreement]."). In doing so, the court relied on the fact that "enforcement of terms is foreseeable when entities share corporate officers." *Id.* at *3. On this point, the court emphasized that the non-signatory company "cannot claim surprise when its own leadership ostensibly reviewed and ratified the terms of [the agreement]." *Id.* [1]

In this case, Fontalvo and Gomez were direct signatories to the Agreements containing the forum selection provisions. Those same signatories now own and operate Latinos Multiservices. Latinos Multiservices "cannot claim surprise when its own leadership ostensibly reviewed and ratified the terms of" the Agreements. *See id.* Regardless of when it was formed, it was reasonably foreseeable that Latinos Multiservices would be bound by the forum selection provision in the Agreements. To hold otherwise would not only contradict existing law but would also incentivize individuals to create new corporations for the purpose of breaching agreements, and such an outcome would be unjust. Accordingly, Servicios respectfully requests that this Court deny the Motion to Dismiss.

---

[1] Of note, courts also consider common interests and the fact that parties are represented by the same counsel to support application of the closely related doctrine, which both favor such a finding in this case. *See Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056–57 (2008).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 120 of 185
PageID# 384
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 3 of 6 PageID# 166

**II.**    **Sanchez is closely related to the Agreements and Fontalvo such that Sanchez should have foreseen being bound by the forum selection clause, regardless of whether he played a role in negotiating the Agreements.**

Defendants rely upon a case from the Northern District of California for the assertion that a romantic relationship is not sufficient to find that an individual was closely related to the agreement such that the individual should expect to be bound by the forum selection clause. (Dkt. No. 22, at 5.)  That decision in *Wescott v. Reisner* is not persuasive, however, given the actual analysis undertaken by that court.  Specifically, as it related to the closely related doctrine, the court's analysis appears to rely upon distinguishing a single case based upon the fact that the case only addressed venue.  *Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018).  The court did not, however, conduct additional analysis regarding whether an individual in a close romantic relationship with a signatory to an agreement could ever be deemed closely related.  *See id.*  In fact, to the contrary, there are cases that support a finding that a romantic relationship can be the basis for application of the closely related doctrine if the alleged facts support such an application.

For example, in *AAMCO Transmissions, Inc. v. Romano*, the District Court for the Eastern District of Pennsylvania addressed circumstances similar to those in this matter.  42 F. Supp. 3d 700 (E.D. Pa. 2014).  In that case, the plaintiff sued a husband and wife for violation of a non-compete provision contained in a franchise agreement.  *Id.* at 703–705.  The defendants argued that the forum selection clause in the franchise agreement did not apply to the wife because she was not a signatory to the franchise agreement.  *Id.* at 708.  The court disagreed with the defendants and held that both of the defendants were bound by the forum selection clause. *Id.* at 709.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 121 of 185
PageID# 385
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 4 of 6 PageID# 167

In holding that the court had jurisdiction over the wife, the court in *AAMCO* acknowledged that "[i]t is widely accepted that nonsignatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *Id.* at 708.  The Court relied upon the closely related doctrine to determine that, given the wife's relationship with the husband, the wife was so closely related to the dispute with the plaintiff that the wife should have foreseen being bound by the forum selection clause in the franchise agreement. *Id.* at 709; *see also Beck v. CIT Group*, No. 94-5513, 1995 WL 394067, at *6 (E.D. Pa. June 29, 1995). The court further noted that because the signatory continued to be involved with the new business, which was owned by the wife, she was a third-party beneficiary of the knowledge and experience that the husband gained while in the course of the franchise relationship at issue. *Id.*

The analysis of *AAMCO* is persuasive in this case.  Carlos Sanchez has been in a close romantic relationship with Fontalvo during all times relevant to this lawsuit, including at the time that Fontalvo signed the Agreement containing the non-compete and forum selection clauses. Further, although not dispositive, upon information and belief, Fontalvo and Gomez currently hold themselves out as husband and wife.  Given this close relationship, Sanchez should have foreseen that if he worked with Fontalvo to create a competing business, in violation of the non-compete agreement, and benefitted from the knowledge and experience that Fontalvo gained from working for Servicios, which he is alleged to have done here, he would be bound by the forum selection clause in the Agreement. Sanchez cannot avoid the jurisdiction of this court by simply stating that he did not sign the agreement containing the forum selection clause when he is closely related to the signatory and is directly benefiting from the knowledge and experience gained from that contractual relationship.  Accordingly, the Motion to Dismiss should be denied.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 122 of 185
PageID# 386
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 5 of 6 PageID# 168

**III.    Jurisdiction over closely related parties has been applied by many jurisdictions and is constitutional.**

Contrary to the defendants' assertion, application of the closely related doctrine in this case would not ***expand*** the closely related doctrine.  As outlined above and in Plaintiff's Opposition to the Motion to Dismiss, the closely related doctrine has been applied in scenarios in which defendants are closely related to the signatory, the contract, and the dispute in such a way that it renders it foreseeable that the individual would be subject to the forum selection provision of the contract.

Further, in contrast to Defendants' assertions otherwise, the policy considerations support application of the closely related doctrine in this case.  Were this court to hold that neither Sanchez nor Latinos Multiservices are bound by the forum selection provision, parties to contracts would be incentivized to create corporations or use their significant others or family members to breach the agreements to avoid enforcement of the provisions.  This sort of injustice is of the exact sort that the closely related doctrine is intended to prevent. Accordingly, this Court should apply the closely related doctrine, as it has been applied in similar cases, to Sanchez and Latinos Multiservices, and deny the Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, and for those reasons stated in the Opposition to the Motion to Dismiss and to be stated in a hearing on this matter, Servicios Latinos, Inc. respectfully requests that the Court deny Defendants' Motion to Dismiss, exercise its jurisdiction over Sanchez and Latinos Multiservices, and award Servicios Latinos such other relief as is just and appropriate.

Dated: June 18, 2024

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 123 of 185
PageID# 387
Case 2:24-cv-00182-RAJ-LRL    Document 30-1    Filed 06/18/24    Page 6 of 6 PageID# 169

Respectfully Submitted,

SERVICIOS LATINOS, INC.

By: _/s/_____
     Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

       Plaintiff,

       v.                              **CIVIL ACTION NO. 2:24-cv-182**

LUIS G. AMADO GOMEZ, *et al.,*

       Defendants.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") (collectively, "Defendants") Motion to Dismiss. ECF No. 17 ("Mot."). Defendants move to dismiss Servicios Latinos, Inc.'s ("Servicios") Complaint against Defendants Sanchez and LMI pursuant to Federal Rule of Civil Procedure 12(b)(2). *Id.* The Court has considered the memoranda of the parties, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on this Motion is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

On March 20, 2024, Servicios filed a Complaint against Defendants Luis G. Amado Gomez, Enith Pertuz Fontalvo, Carlos Sanchez, and LMI. ECF No. 1 ("Compl."). Servicios seeks to enjoin Defendants Gomez and Fontalvo for breach of contract and breach of the duty of loyalty. Compl. at ¶¶ 31–43, 49–56. Servicios alleges tortious interference with contract against Defendants Sanchez and LMI. *Id.* at ¶¶ 44–48. Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Complaint and the attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Servicios is a Virginia corporation with its principal place of business in Norfolk, Virginia.

1

Compl. at ¶ 3. The business operates in Virginia and Delaware and provides services to Spanish-speaking individuals. *Id.* at ¶ 1. Defendants Gomez and Fontalvo were employees of Servicios from December 27, 2018, to October 20, 2023, and December 27, 2018, to November 17, 2023, respectively. *Id.* at ¶ 2. Gomez and Fontalvo signed non-compete and non-solicitation agreements. *Id.* These contracts contained jurisdiction and venue provisions that provided that Gomez and Fontalvo "agree to submit to the jurisdiction and venue of any court of competent jurisdiction in the City of Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this agreement." *Id.* at ¶ 7; Exs. A and B at ¶ 13.

While employed at Servicios, Gomez and Fontalvo planned to open a business that would compete with Servicios. *Id.* at ¶ 19. Around September 14, 2023, Fontalvo and Gomez registered LMI with the State of Delaware. *Id.* at ¶ 22. Around October 16, 2023, Fontalvo and Gomez submitted a New Business Application for LMI to the Town of Georgetown Delaware and listed Sanchez as the contact for the application. *Id.* at ¶ 23.

Defendant Sanchez is a resident of Georgetown, Delaware. *Id.* at ¶ 6. According to Servicios, Defendant Sanchez has been, and continues to be, aware of the non-compete and non-solicitation agreements that Gomez and Fontalvo signed. *Id.* at ¶¶ 2, 46. Upon information and belief, Sanchez and Fontalvo are in a romantic relationship. *Id.* at ¶ 24. In November 2023, Gomez, Fontalvo, and Sanchez opened an LMI office 0.1 miles away from Servicios's Delaware office. *Id.* at ¶ 27. LMI advertises the same services Servicios provides. *Id.* at ¶ 28. Defendants Gomez, Fontalvo, Sanchez, and LMI used confidential information to compete with Servicios. *Id.* ¶ 29. Servicios has suffered and continues to suffer damages from Defendants' actions including loss of profits, loss of customers, loss of reputation, and other monetary loss. *Id.* at ¶¶ 37, 43, 48.

Servicios prays for compensatory damages, specific performance of the obligations in the

2

non-compete agreements, a temporary restraining order enjoining all Defendants from competing with Servicios, and permanent injunctive relief ordering all Defendants cease competition with Servicios. *Id.* at ¶¶ 58, 62– 64.

## II.    LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action against a party where the court lacks personal jurisdiction. Fed. R. Civ. Proc. 12(b)(2). Personal jurisdiction must be authorized both by the forum state's long-arm statute and by the Due Process Clause of the Fourteenth Amendment, which requires that a defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Since Virginia's long-arm statute extends to the full scope of the Due Process Clause, the inquiries in this case are one and the same. *CFA Inst.*, 551 F.3d at 292; *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

To determine whether "minimum contacts" exist, a plaintiff must show that the defendant "purposefully directed his activities at the residents of the forum" and that plaintiff's cause of action "arises out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). In other words, this inquiry protects a defendant from being forced to defend himself in a forum where he did not anticipate facing suit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, the analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 671 U.S. 277, 283 (2014); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California*,

3

**-81-**

*San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits to assure itself. *Grayson*, 816 F.3d at 269. Yet, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make prima facie showing." *Id.* at 268. Further, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

A defendant may be subject to general or specific jurisdiction. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the place of incorporation and principal place of business are bases for personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal citations omitted).

With regard to the due process requirements for asserting specific personal jurisdiction, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") requires consideration of

4

three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of

conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities

directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally

reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)

(internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003).

### III.    DISCUSSION

As a preliminary matter, only specific personal jurisdiction is relevant here. Plaintiff does

not contend, nor do the pleadings show, that Defendants have continuous and systematic contacts

with Virginia to trigger general jurisdiction. Defendant Sanchez resides in Georgetown, Delaware.

Compl. at ¶ 6. General personal jurisdiction is only proper over Defendant Sanchez in Delaware.

Additionally, Defendants Fontalvo and Gomez allegedly registered LMI in Delaware. *Id. at* ¶ 22.

Defendants Gomez, Fontalvo, and Sanchez opened LMI 0.1 miles down the street from Plaintiff's

Delaware location. *Id.* at ¶ 27. Because LMI's place of incorporation and principal place of

business are both in Delaware, general personal jurisdiction over LMI is proper in Delaware. Thus,

the Court need only determine whether specific jurisdiction exists over Defendants Sanchez and

LMI.

Defendants argue two reasons that they are not subject to the Court's personal jurisdiction.

First, Defendants argue that because Sanchez and LMI are non-signatories to Defendants Gomez

and Fontalvo's non-compete and non-solicitation agreements, the forum selection clauses

contained therein are irrelevant. Second, Defendants argue that there is no basis for specific

personal jurisdiction. Because Defendant's first argument is without merit, the Court need not

address the second argument.

Defendants argue that the forum selection clauses in Defendants Gomez and Fontalvo's

non-compete and non-solicitation agreements are irrelevant in determining personal jurisdiction over Defendants Sanchez and LMI. Mot. at 4. Plaintiff then argues in their Motion in Opposition that the forum selection clause can be enforced against Defendants, even though they are non-signatories, because Sanchez and LMI are "closely related" to the dispute such that it is "foreseeable that [they] will be bound." Mot. Opp'n at 4.

Valid forum selection clauses permit "personal jurisdiction in the chosen forum under the principles of 'contractual consent or waiver.'" *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011) (quoting *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002)). Generally, when "parties contract to litigate any dispute arising under their contract in a specified forum, [the presumption is] they are speaking only of disputes with each other in the absence of language about disputes with third parties." *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (quoting *Union Steel America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 693 (D.N.J.1998)).

But non-signatories may be bound by a forum selection clause if they are so "closely related" to the dispute such that it is "foreseeable" that they will be bound. *Id.* (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) ("Under traditional principles of contract law, non-signatories may be bound by a forum selection clause . . . if they are closely related parties."); *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"). This Court has found that a non-signatory may be bound if enforcement of the forum selection clause is "foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *directPacket Research, Inc. v. Polycom,*

6

-84-

*Inc.*, 2019 WL 8065832 at *2 (E.D. Va. July 3, 2019) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011).

It is reasonably foreseeable that LMI would be bound by the forum selection clause. The plain language of the non-compete agreement explicitly contemplates the instant scenario. The non-compete agreement states that Gomez and Fontalvo shall not "own[,] manage, operate, control or be employed by, participate in, or be associated in any manner with… any business substantially similar to or competitive with [Servicios]" at a location within 60 miles of Norfolk, Virginia or Georgetown, Delaware. Compl., Exs. A and B at 1. Gomez and Fontalvo own, manage, operate, control, or otherwise participate in LMI. It also appears that LMI offers similar services as Servicios. Gomez and Fontalvo were signatories to the non-compete and non-solicitation agreements, and but-for their decision to open LMI, the company would not exist. In other words, it is foreseeable that claims brought under a non-compete agreement would be governed by its forum selection clause. *See Allianz Ins. Co. of Canada*, 131 F. Supp. 2d at 792 (citing *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997)).

Defendants argue that LMI did not exist when the agreements were negotiated and executed, and that it does not make sense for non-signatories to be bound where the non-signatory did not exist when the contract was formed. Compl. at 2, 5. But this argument is flawed. Under Defendants' argument, if a signatory leaves entity A to join entity B, an entity that existed when the agreement was executed, the closely related doctrine would apply. By contrast, if that same signatory left entity A to create entity C, an entity that did not exist when the agreement was executed, the closely related doctrine would not apply. But entities B and C are competing with entity A in the same manner, whether they existed when the agreement was executed or not. This logic is at odds with a non-compete agreement that prohibits owning a competing business. Thus,

7

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 131 of 185
PageID# 395
Case 2:24-cv-00182-RAJ-LRL    Document 32    Filed 11/05/24    Page 8 of 9 PageID# 177

LMI is so closely related to the dispute that it is foreseeable that LMI will be bound by the forum selection clause.

It is likewise reasonably foreseeable that Defendant Sanchez would be bound by the forum selection clause. Servicios alleges that Sanchez and Fontalvo are in a romantic relationship. Compl. at ¶ 24. Neither Fontalvo nor Sanchez denies this. *See* Fontalvo and Sanchez Declarations, ECF No. 18. Defendants Gomez, Fontalvo, and Sanchez came up with the idea to start a competing business, received the requisite permits and approvals, registered the business, submitted a New Business Application and, in November 2023, opened LMI. Compl. at ¶¶ 20–23, 27. Servicios alleges that Sanchez has been and continues to be fully aware of the non-compete and non-solicitation agreements. Compl. at ¶¶ 2, 46. Sanchez does not dispute this. *See* Sanchez Declaration. The Court "must take all disputed facts and reasonable inferences in favor of the plaintiff." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Sanchez was involved in the formation of LMI every step of the way. It is reasonable to infer that Sanchez was aware of the forum selection clause contained in the non-compete and non-solicitation agreements because he does not dispute being aware of the agreements themselves. Thus, Sanchez is so closely related to the dispute such that it is foreseeable that he will be bound by the forum selection clause.

8

-86-

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 132 of 185
PageID# 396
Case 2:24-cv-00182-RAJ-LRL    Document 32    Filed 11/05/24    Page 9 of 9 PageID# 178

## IV.    CONCLUSION

For the reasons set forth above, Servicios's Motion to Dismiss is **DENIED**. ECF No. 17.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order

to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
November 5 , 2024

Raymond A. Jackson
United States District Judge

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
FILED

NOV - 6 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

**SERVICIOS LATINOS, INC.,**

       Plaintiff,

       v.                        **CIVIL ACTION NO. 2:24-cv-182**

**LUIS G. AMADO GOMEZ,** *et al.,*

       Defendants.

## *AMENDED MEMORANDUM OPINION AND ORDER*

Before the Court is Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") (collectively, "Defendants") Motion to Dismiss. ECF No. 17 ("Mot."). Defendants move to dismiss Servicios Latinos, Inc.'s ("Servicios") Complaint against Defendants Sanchez and LMI pursuant to Federal Rule of Civil Procedure 12(b)(2). *Id.* The Court has considered the memoranda of the parties, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on this Motion is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

On March 20, 2024, Servicios filed a Complaint against Defendants Luis G. Amado Gomez, Enith Pertuz Fontalvo, Carlos Sanchez, and LMI. ECF No. 1 ("Compl."). Servicios seeks to enjoin Defendants Gomez and Fontalvo for breach of contract and breach of the duty of loyalty. Compl. at ¶¶ 31–43, 49–56. Servicios alleges tortious interference with contract against Defendants Sanchez and LMI. *Id.* at ¶¶ 44–48. Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Complaint and the attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Servicios is a Virginia corporation with its principal place of business in Norfolk, Virginia.

1

Compl. at ¶ 3. The business operates in Virginia and Delaware and provides services to Spanish-speaking individuals. *Id.* at ¶ 1. Defendants Gomez and Fontalvo were employees of Servicios from December 27, 2018, to October 20, 2023, and December 27, 2018, to November 17, 2023, respectively. *Id.* at ¶ 2. Gomez and Fontalvo signed non-compete and non-solicitation agreements. *Id.* These contracts contained jurisdiction and venue provisions that provided that Gomez and Fontalvo "agree to submit to the jurisdiction and venue of any court of competent jurisdiction in the City of Norfolk, VA without regard to conflict of laws provisions, for any claim arising out of this agreement." *Id.* at ¶ 7; Exs. A and B at ¶ 13.

While employed at Servicios, Gomez and Fontalvo planned to open a business that would compete with Servicios. *Id.* at ¶ 19. Around September 14, 2023, Fontalvo and Gomez registered LMI with the State of Delaware. *Id.* at ¶ 22. Around October 16, 2023, Fontalvo and Gomez submitted a New Business Application for LMI to the Town of Georgetown Delaware and listed Sanchez as the contact for the application. *Id.* at ¶ 23.

Defendant Sanchez is a resident of Georgetown, Delaware. *Id.* at ¶ 6. According to Servicios, Defendant Sanchez has been, and continues to be, aware of the non-compete and non-solicitation agreements that Gomez and Fontalvo signed. *Id.* at ¶¶ 2, 46. Upon information and belief, Sanchez and Fontalvo are in a romantic relationship. *Id.* at ¶ 24. In November 2023, Gomez, Fontalvo, and Sanchez opened an LMI office 0.1 miles away from Servicios's Delaware office. *Id.* at ¶ 27. LMI advertises the same services Servicios provides. *Id.* at ¶ 28. Defendants Gomez, Fontalvo, Sanchez, and LMI used confidential information to compete with Servicios. *Id.* ¶ 29. Servicios has suffered and continues to suffer damages from Defendants' actions including loss of profits, loss of customers, loss of reputation, and other monetary loss. *Id.* at ¶¶ 37, 43, 48.

Servicios prays for compensatory damages, specific performance of the obligations in the

2

non-compete agreements, a temporary restraining order enjoining all Defendants from competing with Servicios, and permanent injunctive relief ordering all Defendants cease competition with Servicios. *Id.* at ¶¶ 58, 62– 64.

## II.   LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action against a party where the court lacks personal jurisdiction. Fed. R. Civ. Proc. 12(b)(2). Personal jurisdiction must be authorized both by the forum state's long-arm statute and by the Due Process Clause of the Fourteenth Amendment, which requires that a defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Since Virginia's long-arm statute extends to the full scope of the Due Process Clause, the inquiries in this case are one and the same. *CFA Inst.*, 551 F.3d at 292; *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

To determine whether "minimum contacts" exist, a plaintiff must show that the defendant "purposefully directed his activities at the residents of the forum" and that plaintiff's cause of action "arises out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). In other words, this inquiry protects a defendant from being forced to defend himself in a forum where he did not anticipate facing suit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, the analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 671 U.S. 277, 283 (2014); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California*,

3

*San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits to assure itself. *Grayson*, 816 F.3d at 269. Yet, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make prima facie showing." *Id.* at 268. Further, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

A defendant may be subject to general or specific jurisdiction. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the place of incorporation and principal place of business are bases for personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal citations omitted).

With regard to the due process requirements for asserting specific personal jurisdiction, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") requires consideration of

4

three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003).

### III.    DISCUSSION

As a preliminary matter, only specific personal jurisdiction is relevant here. Plaintiff does not contend, nor do the pleadings show, that Defendants have continuous and systematic contacts with Virginia to trigger general jurisdiction. Defendant Sanchez resides in Georgetown, Delaware. Compl. at ¶ 6. General personal jurisdiction is only proper over Defendant Sanchez in Delaware. Additionally, Defendants Fontalvo and Gomez allegedly registered LMI in Delaware. *Id. at* ¶ 22. Defendants Gomez, Fontalvo, and Sanchez opened LMI 0.1 miles down the street from Plaintiff's Delaware location. *Id.* at ¶ 27. Because LMI's place of incorporation and principal place of business are both in Delaware, general personal jurisdiction over LMI is proper in Delaware. Thus, the Court need only determine whether specific jurisdiction exists over Defendants Sanchez and LMI.

Defendants argue two reasons that they are not subject to the Court's personal jurisdiction. First, Defendants argue that because Sanchez and LMI are non-signatories to Defendants Gomez and Fontalvo's non-compete and non-solicitation agreements, the forum selection clauses contained therein are irrelevant. Second, Defendants argue that there is no basis for specific personal jurisdiction. Because Defendant's first argument is without merit, the Court need not address the second argument.

Defendants argue that the forum selection clauses in Defendants Gomez and Fontalvo's

5

non-compete and non-solicitation agreements are irrelevant in determining personal jurisdiction over Defendants Sanchez and LMI. Mot. at 4. Plaintiff then argues in their Motion in Opposition that the forum selection clause can be enforced against Defendants, even though they are non-signatories, because Sanchez and LMI are "closely related" to the dispute such that it is "foreseeable that [they] will be bound." Mot. Opp'n at 4.

Valid forum selection clauses permit "personal jurisdiction in the chosen forum under the principles of 'contractual consent or waiver.'" *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011) (quoting *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002)). Generally, when "parties contract to litigate any dispute arising under their contract in a specified forum, [the presumption is] they are speaking only of disputes with each other in the absence of language about disputes with third parties." *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (quoting *Union Steel America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 693 (D.N.J.1998)).

But non-signatories may be bound by a forum selection clause if they are so "closely related" to the dispute such that it is "foreseeable" that they will be bound. *Id.* (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) ("Under traditional principles of contract law, non-signatories may be bound by a forum selection clause . . . if they are closely related parties."); *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"). This Court has found that a non-signatory may be bound if enforcement of the forum selection clause is "foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *directPacket Research, Inc. v. Polycom,*

6

**-93-**

*Inc.*, 2019 WL 8065832 at *2 (E.D. Va. July 3, 2019) (quoting *In re Optimal U.S. Litig.*, 813 F.

Supp. 2d 351, 369 (S.D.N.Y. 2011).

It is reasonably foreseeable that LMI would be bound by the forum selection clause. The

plain language of the non-compete agreement explicitly contemplates the instant scenario. The

non-compete agreement states that Gomez and Fontalvo shall not "own[,] manage, operate, control

or be employed by, participate in, or be associated in any manner with... any business substantially

similar to or competitive with [Servicios]" at a location within 60 miles of Norfolk, Virginia or

Georgetown, Delaware. Compl., Exs. A and B at 1. Gomez and Fontalvo own, manage, operate,

control, or otherwise participate in LMI. It also appears that LMI offers similar services as

Servicios. Gomez and Fontalvo were signatories to the non-compete and non-solicitation

agreements, and but-for their decision to open LMI, the company would not exist. In other words,

it is foreseeable that claims brought under a non-compete agreement would be governed by its

forum selection clause. *See Allianz Ins. Co. of Canada*, 131 F. Supp. 2d at 792 (citing *Mitsui &

Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997)).

Defendants argue that LMI did not exist when the agreements were negotiated and

executed, and that it does not make sense for non-signatories to be bound where the non-signatory

did not exist when the contract was formed. Compl. at 2, 5. But this argument is flawed. Under

Defendants' argument, if a signatory leaves entity A to join entity B, an entity that existed when

the agreement was executed, the closely related doctrine would apply. By contrast, if that same

signatory left entity A to create entity C, an entity that did not exist when the agreement was

executed, the closely related doctrine would not apply. But entities B and C are competing with

entity A in the same manner, whether they existed when the agreement was executed or not. This

logic is at odds with a non-compete agreement that prohibits owning a competing business. Thus,

7

LMI is so closely related to the dispute that it is foreseeable that LMI will be bound by the forum selection clause.

It is likewise reasonably foreseeable that Defendant Sanchez would be bound by the forum selection clause. Servicios alleges that Sanchez and Fontalvo are in a romantic relationship. Compl. at ¶ 24. Neither Fontalvo nor Sanchez denies this. *See* Fontalvo and Sanchez Declarations, ECF No. 18. Defendants Gomez, Fontalvo, and Sanchez came up with the idea to start a competing business, received the requisite permits and approvals, registered the business, submitted a New Business Application and, in November 2023, opened LMI. Compl. at ¶¶ 20–23, 27. Servicios alleges that Sanchez has been and continues to be fully aware of the non-compete and non-solicitation agreements. Compl. at ¶¶ 2, 46. Sanchez does not dispute this. *See* Sanchez Declaration. The Court "must take all disputed facts and reasonable inferences in favor of the plaintiff." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Sanchez was involved in the formation of LMI every step of the way. It is reasonable to infer that Sanchez was aware of the forum selection clause contained in the non-compete and non-solicitation agreements because he does not dispute being aware of the agreements themselves. Thus, Sanchez is so closely related to the dispute such that it is foreseeable that he will be bound by the forum selection clause.

8

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 141 of 185
PageID# 405
Case 2:24-cv-00182-RAJ-LRL    Document 33    Filed 11/06/24    Page 9 of 9 PageID# 187

IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. ECF No. 17.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order

to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
November  6  , 2024

Raymond A. Jackson
United States District Judge

9

-96-

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 142 of 185
PageID# 406
Case 2:24-cv-00182-RAJ-LRL    Document 34    Filed 11/15/24    Page 1 of 3 PageID# 188

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S
MOTION TO AMEND AND CERTIFY ORDER DENYING FED. R. CIV. PROC.
12(b)(2) MOTION TO DISMISS FOR INTERLOCUTORY APPEAL**

Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc. ("LMI"), by counsel, move this Court to certify its Amended Memorandum Opinion and Order entered November 6, 2024 (the "Memorandum Opinion and Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Sanchez and LMI rely on the arguments more fully set forth in their Memorandum in support of this Motion, filed contemporaneously with this Motion.

WHEREFORE, Defendants Sanchez and LMI respectfully request that this Court enter an order that:

(a) Grants this Motion;

(b) Certifies the Memorandum Opinion and Order for interlocutory appeal;

1
**-97-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 143 of 185
PageID# 407
Case 2:24-cv-00182-RAJ-LRL    Document 34    Filed 11/15/24    Page 2 of 3 PageID# 189

(c) Amends the Memorandum Opinion and Order to include the following language (or

substantially similar language) at the end of the Memorandum Opinion and Order:

> For the reasons stated in the Court's order on Defendants Carlos
> Sanchez and Latinos Multiservices, Inc.'s Motion to Amend and
> Certify Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to
> Dismiss for Interlocutory Appeal, the Court finds that this
> Memorandum Opinion and Order involves a controlling question of
> law as to which there is substantial ground for difference of opinion
> and that an immediate appeal from this Memorandum Opinion and
> Order may materially advance the ultimate termination of the
> litigation. Accordingly, Defendants Carlos Sanchez and Latinos
> Multiservices, Inc. may seek appeal of this Memorandum Opinion
> and Order pursuant to 28 U.S.C. § 1292(b).

(d) Stays all proceedings in this Court until the United States Court of Appeals for the

Fourth Circuit resolves Defendants' interlocutory appeal; and

(e) Grants any additional relief the Court deems just and equitable.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS
MULTISERVICES, INC.**

By: _/s/ Nathan M. Hernandez_
       Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

2

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 144 of 185
PageID# 408
Case 2:24-cv-00182-RAJ-LRL   Document 34   Filed 11/15/24   Page 3 of 3 PageID# 190

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this 15th day of November 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@wrvblaw.com
kate.lennon@wrvblaw.com
*Counsel for Plaintiff*

             */s/ Nathan M. Hernandez*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 145 of 185
PageID# 409
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 1 of 14 PageID# 191

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S MOTION TO AMEND AND CERTIFY ORDER DENYING FED. R. CIV. PROC. 12(b)(2) MOTION TO DISMISS FOR INTERLOCUTORY APPEAL

Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc. ("LMI") moved to dismiss Plaintiff Servicios Latinos, Inc.'s ("SLI") claim against them for lack of personal jurisdiction. In denying Sanchez and LMI's motion to dismiss, this Court did not find Sanchez or LMI independently established minimum contacts with Virginia sufficient to establish personal jurisdiction in this district. Instead, this Court relied on the "closely related" doctrine, holding that Sanchez and LMI should be bound by forum selection clauses agreed to by other Defendants Enith Pertuz Fontalvo and Luis G. Amado Gomez based on its finding that Sanchez and LMI are so closely related to those Defendants and the subject matter of this dispute that it would have been foreseeable for them to be sued here.

1

**-100-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 146 of 185
PageID# 410
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 2 of 14 PageID# 192

This Court's denial of Sanchez and LMI's motion to dismiss warrants an interlocutory appeal under 28 U.S.C. § 1292(b), especially in light of the Court's reliance on the closely related doctrine; in fact, other district courts have recently certified orders for interlocutory appeal based on the **exact same** legal issues involved in the motion to dismiss here.  *See*, *e.g.*, *Facebook Inc. v. Namecheap Inc.*, 2021 U.S. Dist. LEXIS 48333, at *2-8 (D. Ariz. Mar. 15, 2021) (granting motion to certify order denying FRCP 12(b)(2) motion to dismiss for interlocutory appeal where order was based on the "closely related" doctrine).  The Court's order involves a controlling question of law, as it was on a motion to dismiss that would be dispositive as to Sanchez and LMI and significantly impact the conduct surrounding the remaining parties and claims in this lawsuit. There is substantial disagreement between federal appellate and district courts on whether the closely related doctrine can be squared with the Supreme Court's personal jurisdiction precedents, a dispute the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has yet to weigh in on.  And allowing an interlocutory appeal may materially advance the ultimate termination of this litigation.

For the reasons that follow, this Court should amend its order denying Sanchez and LMI's motion to dismiss and certify the order for interlocutory appeal.

## PROCEDURAL HISTORY

SLI filed its Complaint on Complaint on March 20, 2024.  ECF No. 1.  Following an extension of Defendants' deadline to file responsive pleadings, ECF No. 16, Sanchez and LMI filed a motion to dismiss for lack of personal jurisdiction.  ECF No. 17.  Generally speaking, Sanchez and LMI argued that the Complaint did not specifically allege any facts demonstrating they were subject to this Court's personal jurisdiction and that the sole basis for SLI's claim personal jurisdiction existed—i.e., a forum selection clause found in non-compete agreements

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 147 of 185
PageID# 411
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 3 of 14 PageID# 193

agreed to by other Defendants Fontalvo and Gomez (the "NCAs")—did not apply to them because they were not parties to the NCAs. *See* ECF No. 18, pp. 4-6.

In its opposition brief, SLI's principal argument that personal jurisdiction exists over Sanchez and LMI was that they were "so closely related" to Gomez and Fontalvo and the subject matter of the dispute surrounding the NCAs that it was "foreseeable" Sanchez and LMI would be sued in Virginia. ECF No. 21, pp. 4-6. Alternatively, SLI argued it made a *prima facie* showing of personal jurisdiction because LMI and Sanchez allegedly engaged in unlawful conduct against a corporation that is incorporated in Virginia. ECF No. 21, pp. 6-8.

Sanchez and LMI made two arguments in their reply brief. First, they argued neither Sanchez nor LMI were closely related to the contractual relationship at issue in this action, as LMI was not in existence when the NCAs were signed, and Sanchez was not involved in the negotiation or execution of the NCAs and was not a beneficiary of those contracts. ECF No. 22, pp. 3-5. Second, and of particular relevance to this motion, they argued the "closely related" doctrine is unconstitutional, conflicts with personal jurisdiction precedents from the United States Supreme Court, and, consequently, should not be applied here. ECF No. 22, pp. 5-7.

In its sur-reply,[1] SLI made three main points. First, it averred that the fact LMI was not in existence at the time the NCAs were executed was irrelevant because Fontalvo and Gomez own and operate LMI, LMI is the entity SLI believes is facilitating alleged violations of the NCAs, and it was reasonably foreseeable that LMI would be hailed into this Court given the NCAs' forum selection clauses. *See* ECF No. 30-1, pp. 1-2. Second, citing *AAMCO Transmissions, Inc. v.*

---

[1] As acknowledged in SLI's memorandum in support of its motion for leave to file a sur-reply, Sanchez and LMI's counsel did not agree SLI was entitled to file a sur-reply but nonetheless elected not to file an opposition to SLI's motion for the sake of judicial efficiency and to reduce Sanchez and LMI's expenses. ECF No. 30, p. 2 ¶ 10.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 148 of 185
PageID# 412
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 4 of 14 PageID# 194

*Romano*, 42 F. Supp. 3d (E.D. Pa. 2014), SLI argued Sanchez could reasonably have foreseen being sued in this Court because he is in a romantic relationship with Fontalvo and worked with Fontalvo to create and operate LMI.  *See* ECF No. 30-1, pp. 3-4.  Finally, SLI generally stated the closely related doctrine was "constitutional" and grounded in public policy considerations, but it provided no authorities to support the doctrine's constitutionality or to otherwise argue the doctrine is compatible with the Supreme Court's due process jurisprudence.  *See* ECF No. 30-1, p. 5.

This Court issued its Memorandum Opinion and Order on November 5, 2024, which denied Sanchez and LMI's motion to dismiss.  ECF No. 32.  This Court entered an Amended Memorandum Opinion and Order on November 6, 2024, which appears to be identical in all material aspects to the original Memorandum Opinion and Order.  ECF No. 33.  In its ruling, this Court did not determine Sanchez or LMI established minimum contacts with Virginia such that litigation in this Court would accord with fair play and substantial justice.  Instead, the Court relied on the closely related doctrine and agreed with SLI that both Sanchez and LMI were so closely related to Fontalvo, Gomez, and this dispute that they could reasonably foresee being sued in this Court.  *See* ECF No. 33, pp. 5-9.

## LEGAL STANDARD

Under 28 U.S.C. § 1292(b), granting a party leave to seek an interlocutory appeal is appropriate when (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) immediate appeal would materially advance the termination of the litigation.  As such, 28 U.S.C. § 1292(b) provides this Court "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 46 (1995).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 149 of 185
PageID# 413
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 5 of 14 PageID# 195

Generally speaking, this Court has broad discretion in reviewing motions to certify orders for interlocutory appeal. *See Philips N. Am. LLC v. Probo Med. LLC*, 2024 U.S. Dist. LEXIS 46234, at \*5 (S.D.W. Va. Mar. 15, 2024). However, if this Court "determines that the statutory criteria are present," it has a "'***duty*** . . . to allow an immediate appeal to be taken.'" *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)).

## ARGUMENT

An interlocutory appeal under 28 U.S.C. § 1292(b) is warranted here, as all the criteria under that statute are met.

### A. The Memorandum Opinion and Order Involves a Controlling Question of Law.

This Court's ruling on Sanchez and LMI's motion to dismiss involves a controlling question of law. "While controlling questions may include those whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes, a question need not prove completely dispositive of litigation to present a controlling question of law." *Hutchens v. Capital One Servs., LLC*, 2020 U.S. Dist. LEXIS 192480, at \*8-9 (E.D. Va. Oct. 16, 2020) (citing *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (4th Cir. 1989)) (internal quotation marks omitted). "When the resolution of a question would not completely end the litigation altogether, district courts look to whether the immediate appeal would be 'serious to the conduct of the litigation, either practically or legally.'" *Va. ex rel. Integra Rec LLC v. Countrywide Secs. Corp.*, 2015 U.S. Dist. LEXIS 71944, at \*17 (E.D. Va. June 3, 2015) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). Put another way, "[a] legal issue is controlling if it could materially affect the outcome of the case." *Hutchens*, 2020 U.S. Dist. LEXIS 192480, at \*9 (citation and internal quotation marks omitted).

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 150 of 185
PageID# 414
Case 2:24-cv-00182-RAJ-LRL   Document 35   Filed 11/15/24   Page 6 of 14 PageID# 196

Sanchez and LMI moved to dismiss for lack of personal jurisdiction, which presented a question of law. *Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) ("Whether the district court correctly determined that it lacked personal jurisdiction is a question of law subject to de novo review."). And for two reasons, that question of law was controlling. First, and most obviously, if Sanchez and LMI's motion to dismiss is granted following a successful appeal, this litigation would terminate as to them. *See ASI, Inc. v. Aquawood, LLC*, 2021 U.S. Dist. LEXIS 21420, at *4 (D. Minn. Feb. 4, 2021) ("[P]ersonal jurisdiction issues are non-discretionary and thus present controlling questions of law."). Second, if Sanchez and LMI are dismissed from this action, that would seriously impact the conduct of this litigation from both a practical and legal perspective. *See Falco v. Nissan N. Am., Inc.*, 108 F. Supp. 3d 889, 892 (C.D. Cal. 2015) ("An order determining who the parties to the action are can materially affect the outcome of the litigation."). On the legal front, it would eliminate SLI's tortious interference claim, as that claim is maintainable against LMI and Sanchez only. On the practical front, it would impact SLI's decision whether to maintain any lawsuit in this Court at all, as SLI would be forced to either drop this action and sue all Defendants in Delaware or forego suing LMI and Sanchez altogether.

**B. There is Substantial Ground for Difference of Opinion on the Basis for this Court's Denial of Sanchez and LMI's Motion to Dismiss.**

"A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution." *In re Trump*, 928 F.3d at 371 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). That standard is met here.

Sanchez and LMI's position is that the closely related doctrine is unconstitutional and incompatible with the Supreme Court's personal jurisdiction precedents. Under the closely related doctrine, "non-parties may be bound to a forum selection clause, if the non-party is so closely related to the dispute such that it becomes ***foreseeable*** that it will be bound." *Allianz Ins. Co. v.*

*Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (emphasis added) (citations and internal quotation marks omitted).  But the Supreme Court has repeatedly made clear that foreseeability is ***not*** an appropriate measure for whether a defendant is subject to personal jurisdiction.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("'Foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."); *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality op.) (emphasizing that a "rule based on general notions of fairness and foreseeability" is, by all measures, "inconsistent with the premises of lawful judicial power").  That is because "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre*, 564 U.S. at 883.

In a similar vein, the Supreme Court has, in the intentional torts context, said that "the proper focus of the 'minimum contacts' inquiry . . . is the relationship among the defendant, the forum, and the litigation" and that "it is the defendant, ***not the plaintiff or third parties***, who must create contacts with the forum state." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (emphasis added) (citation and internal quotation marks omitted).  For that reason, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284 (collecting cases).  In a word, another party's "unilateral activity"—like agreeing to a forum selection clause as SLI, Gomez, and Fontalvo did here—"cannot satisfy the requirement of contact with the forum" by nonresident defendants like Sanchez and LMI. *See Hansen v. Denckla*, 357 U.S. 235, 253 (1958).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 152 of 185
PageID# 416
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 8 of 14 PageID# 198

Several courts agree with Sanchez and LMI's position.[2]  *See*, *e.g.*, *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 318 (6th Cir. 2024) (lead op. by Batchelder, J.) ("When a signatory plaintiff invokes the [forum selection] clause against a non-signatory defendant and uses it to establish personal jurisdiction in the contractually chosen forum, enforcement of the clause creates a constitutional due-process problem by circumventing the basic minimum-contacts requirement."); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017) (noting that "if foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver or implied consent" in the "closely related" context either); *FTC – Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, 2020 U.S. Dist. LEXIS 170694, at *18-20 (N.D. Cal. Sept. 16, 2020) (holding that forum selection clause cannot confer personal jurisdiction over a non-signatory defendant); *Truinject Corp. v. Nestlé Skin Health, S.A.*, 2019 U.S. Dist. LEXIS 215313, at *28-29 (D. Del. Dec. 13, 2019) (highlighting "serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause" and noting that courts "should not exercise jurisdiction" over a non-signatory "unless the record otherwise demonstrates 'minimum contacts' between" the non-signatory and the forum).

On the flip side, other courts—including this Court—have adopted the closely related doctrine and presumably believe the doctrine to be consistent with the Supreme Court's personal jurisdiction precedents.  *See*, *e.g.*, ECF No. 33 (basing denial of Fed. R. Civ. Proc. 12(b)(2) motion

---

[2] So too do legal scholars.  John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 201 (2021) ("To conclude that a court has personal jurisdiction over a defendant based solely on that defendant's connection to a contract, [] is to fundamentally misunderstand the Supreme Court's recent caselaw in this area.").  Notably, one such scholar contacted the undersigned counsel and stated he would file an amicus brief in support of Sanchez and LMI's appellate efforts should this case make it to the Fourth Circuit.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 153 of 185
PageID# 417
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 9 of 14 PageID# 199

to dismiss on closely related doctrine); *Allianz*, 131 F. Supp. 2d at 791 (adopting closely related doctrine); *Xena Invs., Ltd. v. Magnum Fund Mgmt.*, 726 F.3d 1278, 1285 (11th Cir. 2013) (holding district court "correctly enforced" forum selection clause against "closely-related" non-signatories); *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 440-42 (5th Cir. 2022) (reaffirming circuit's commitment to closely related doctrine and finding the doctrine binding to some, but not all, non-signatories before it in the appeal); *but see id.* at 441 (criticizing the closely related doctrine's "vagueness" and for being in "tension with the Supreme Court's approach in the related minimum-contacts context") (citation and internal quotation marks omitted).

Crucially, the Fourth Circuit has not yet weighed in on whether the closely related doctrine can be reconciled with the Supreme Court's personal jurisdiction precedents. Coyle & Effron, *Forum Selection Clauses*, 97 Notre Dame L. Rev. at 201 (noting the Fourt Circuit has "yet to adopt" the closely related doctrine).  That provides additional reason for this Court to find substantial ground for difference of opinion exists on its Memorandum Opinion and Order.[3] *Ekstrom v. Cong. Bank*, 2021 U.S. Dist. LEXIS 6628, at *6 (D. Md. Jan. 13, 2021) (noting a substantial ground for difference of opinion may also be found "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point") (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

---

[3] As mentioned before, Sanchez and LMI argued there is no basis to find they established minimum contacts with Virginia, a point this Court did not address given its reliance on the closely related doctrine.  But the mere fact that this Court declined to address Sanchez and LMI's argument on that front is not a basis to deny leave to seek an interlocutory appeal.  As the Supreme Court has pointed out, an appellate court is permitted to "address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (citation and internal quotation marks omitted).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 154 of 185
PageID# 418
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 10 of 14 PageID# 200

**C. An Interlocutory Appeal May Materially Advance the Ultimate Termination of this Litigation.**

An interlocutory appeal may materially advance the ultimate termination of litigation if "resolution of a controlling question of law would serve to avoid a trial or otherwise substantially shorten the litigation." *First Owners' Ass'n of Forty Six Hundred Condo. v. Gordon Props., LLC*, 2011 U.S. Dist. LEXIS 156332, at *10-11 (E.D. Va. Apr. 15, 2011) (quoting *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004)).  Likewise, an interlocutory appeal may materially advance the termination of the litigation if it results in a decision "on a controlling issue sooner, rather than later in order to save the courts and the litigants unnecessary trouble and expense." *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004) (citation and internal quotation marks omitted).

If Sanchez and LMI are granted an interlocutory appeal and the Fourth Circuit agrees they are not subject to this Court's personal jurisdiction, they will be dismissed from this action.  That, in turn, will avoid the expenditure of significant resources of the parties and this Court, as SLI's tortious interference claim will be eliminated, and Gomez and Fontalvo will be the only parties for SLI to litigate against.  *See Facebook*, 2021 U.S. Dist. LEXIS 48333, at *6-7 (holding interlocutory appeal may have materially advanced termination of litigation where appeal would potentially result in dismissal one of several defendants and "avoid great additional expense, costs, and time litigating").  And as discussed above, the dismissal of Sanchez and LMI may very well result in SLI voluntarily dismissing this action altogether.  *See supra*, p. 6.

**D. This Court Should Amend its Memorandum Opinion and Order Pursuant to 28 U.S.C. § 1292(b).**

If this Court agrees that its Memorandum Opinion and Order meets 28 U.S.C. § 1292(b)'s criteria for an interlocutory appeal and that an interlocutory appeal is warranted, the Court must

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 155 of 185
PageID# 419
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 11 of 14 PageID# 201

amend the Memorandum Opinion and Order to say as much.  28 U.S.C. § 1292(b) provides that if a district court is "of the opinion" that its "order" meets the statute's criteria for an interlocutory appeal, the court "shall so state in writing **in such order**."  (Emphasis added).  Accordingly, in addition to entering an order that grants this motion, this Court should amend its Memorandum Opinion and Order to include the following language (or substantially similar language) at the end of the Memorandum Opinion and Order:

> For the reasons stated in the Court's order on Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s Motion to Amend and Certify Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to Dismiss for Interlocutory Appeal, the Court finds that this Memorandum Opinion and Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Memorandum Opinion and Order may materially advance the ultimate termination of the litigation.  Accordingly, Defendants Carlos Sanchez and Latinos Multiservices, Inc. may seek appeal of this Memorandum Opinion and Order pursuant to 28 U.S.C. § 1292(b).

**E.  This Motion Will Not be Made Moot by Sanchez and LMI filing an Answer.**

Because this Court denied the motion to dismiss, Sanchez and LMI's deadline to file their answer is either November 19, 2024, or November 20, 2024, depending on whether one views the entry of the initial Memorandum Opinion and Order or the Amended Memorandum Opinion and Order as starting the clock on the deadline.  *See* Fed. R. Civ. Proc. 12(a)(4)(A) (providing that, in the event a court "denies" a motion to dismiss brought under FRCP 12, a responsive pleading "must be served within 14 days after notice of the court's action").  Out of abundance of caution, Sanchez and LMI are proceeding as though November 19, 2024, is their current deadline to file an answer.

Regardless, the filing of an answer will not render Sanchez and LMI's request for an interlocutory appeal moot or serve as a waiver of their right to assert lack of personal jurisdiction.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 156 of 185
PageID# 420
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 12 of 14 PageID# 202

*Guthrie v. Flanagan*, 2007 U.S. Dist. LEXIS 86987, at *7 (E.D. Va. Nov. 27, 2007) (finding defendant "made timely objection to personal jurisdiction" where he "asserted lack of personal jurisdiction in his answer" and "filed a separate Motion to Dismiss for Lack of Personal Jurisdiction"); *Hunt v. Calhoun County Bank, Inc.*, 8 F. Supp. 3d 720, 726 (E.D. Va. 2014) ("Under Federal Rule of Civil Procedure 12(b) . . . 'the distinction between general and special appearances in federal practice has been abolished.'" (quoting *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (4th Cir. 1967))); *JTH Tax, Inc. v. Houle*, 2011 U.S. Dist. LEXIS 84228, at *3 (E.D. Va. June 27, 2011) ("Personal jurisdiction can be waived if (i) Defendant fails to make a motion under Fed. R. Civ. P. 12(h)(1) or (ii) Defendant does not include the defense in a responsive pleading."). Sanchez and LMI have asserted this Court lacks personal jurisdiction over them since the outset of this litigation, they will plead lack of personal jurisdiction as an affirmative defense in their answer, and they do not intend to engage in any conduct that explicitly or implicitly submits to this Court's jurisdiction at any point before the interlocutory appeal issue is resolved.

## CONCLUSION

This Court denied a motion that would be dispositive as to Sanchez and LMI, involved a legal issue that has caused significant disagreement among federal appellate and district courts, and implicates important constitutional issues that the Fourth Circuit has yet to weigh in on. An interlocutory appeal of the Court's ruling is warranted, and Sanchez and LMI respectfully request that this Court grant them leave to pursue that appeal.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS
MULTISERVICES, INC.**

By: */s/ Nathan M. Hernandez*
            Of Counsel

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 157 of 185
PageID# 421
Case 2:24-cv-00182-RAJ-LRL   Document 35   Filed 11/15/24   Page 13 of 14 PageID# 203

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 158 of 185
PageID# 422
Case 2:24-cv-00182-RAJ-LRL    Document 35    Filed 11/15/24    Page 14 of 14 PageID# 204

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@wrvblaw.com
kate.lennon@wrvblaw.com
*Counsel for Plaintiff*

/s/ Nathan M. Hernandez

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 159 of 185
PageID# 423
Case 2:24-cv-00182-RAJ-LRL    Document 36    Filed 11/19/24    Page 1 of 9 PageID# 205

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **SERVICIOS LATINOS, INC.,** ) | |
| ) | |
| **Plaintiff/Counterclaim Defendant,** ) | **Case No.: 2:24-cv-182** |
| ) | |
| **v.** ) | |
| ) | |
| **LUIS G. AMADO GOMEZ,** ) | |
| ) | |
| **Defendant/Counterclaim Plaintiff,** ) | |
| ) | |
| **ENITH PERTUZ FONTALVO,** ) | |
| ) | |
| **CARLOS SANCHEZ,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **LATINOS MULTISERVICES, INC.** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

<u>**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S**
**ANSWER**</u>

Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc. ("LMI")
(collectively, "Defendants"), by counsel, pursuant to Federal Rule of Civil Procedure 12(a), for
their Answer to Plaintiff Servicios Latinos, Inc's ("SLI") Complaint, state as follows:

**Nature of the Action**

1.      Admitted.

2.      Denied that Defendants Luis G. Amado Gomez and Enith Pertuz Fontalvo began
their respective employments on the dates alleged in this paragraph.  Admitted that Gomez and
Fontalvo ended their respective employments on the dates alleged in this paragraph.  Admitted
that Gomez and Fontalvo signed their respective Non-Compete and Non-Solicitation Agreements

1

**-114-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 160 of 185
PageID# 424
Case 2:24-cv-00182-RAJ-LRL    Document 36    Filed 11/19/24    Page 2 of 9 PageID# 206

(the "NCAs") but denied that they signed the NCAs "in exchange for their employment," as they began their employments before signing the NCAs. Denied that Defendants stole client information or confidential business information at any point during or after their employments with SLI. Admitted that Gomez and Fontalvo planned to open a competitive business while still employed with SLI. Denied that Gomez and Fontalvo directly competed with and stole profits from SLI while still employed with SLI. Admitted that Gomez and Fontalvo opened LMI after their employments ended with SLI and that LMI is "mere blocks" from SLI but denied that Gomez and Fontalvo stole or used SLI's confidential information and business secrets to compete directly with SLI. Admitted that Sanchez has been and continues to be fully aware of the NCAs but denied that he "intentionally interfered with the [NCAs] by contributing to [LMI's] competition with Servicios."

**Parties**

3.     Upon information and belief, admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

**Jurisdiction and Venue**

7.     Admitted that SLI brings this action based on contracts executed by SLI and Gomez and Fontalvo but denied to the extent this paragraph suggests SLI has a valid "cause of action." To the extent this paragraph quotes provisions from the NCAs, those provisions speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs. The remaining portions of this paragraph contain citations to law to which no response is required, but to the extent a response is required, denied.

8.      Defendants are without sufficient knowledge to form a belief as to the truth or falsity of the allegations in this paragraph.  They presently have no basis to determine whether SLI pleads the jurisdictional amount in controversy in good faith.  Nor do they have a basis to determine whether it can be said, to a legal certainty, that SLI cannot recover in excess of the jurisdictional amount in controversy.  Accordingly, Defendants deny the allegations in this paragraph.

**Factual Allegations**

9.      Denied that Gomez and Fontalvo began their respective employments on the dates alleged in this paragraph.  Admitted that Gomez and Fontalvo ended their respective employments on the dates alleged in this paragraph.  Admitted that Gomez worked for SLI in its Norfolk, Virginia and Georgetown, Delaware offices.  Denied that Fontalvo worked "primarily" through SLI's office in Georgetown, Delaware.

10.     Admitted.

11.     The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

12.      The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

13.     The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

14.     The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

15.     The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

16.    The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

17.    The terms of the NCAs speak for themselves, and Defendants deny the allegations in this paragraph to the extent they differ from the terms of the NCAs.

### *Actions While Employed with Servicios*

18.    Denied.

19.    Admitted that Gomez and Fontalvo planned to open LMI while still employed with SLI.  Denied to the extent this paragraph's use of the phrase "competing business" implies Gomez and Fontalvo planned any unlawful activity.

20.    Denied to the extent that "part of their plan" implies any wrongdoing on the part of Gomez and Fontalvo.  Otherwise, admitted.

21.    Admitted.

22.    Admitted only that Defendants registered LMI with the State of Delaware on or about September 14, 2023, but denied to the extent this paragraph use of the phrase "competing business" suggests Defendants planned to engage in any unlawful activity.

23.    Admitted.

24.    Admitted.

25.    Denied.

26.    Denied.

### *Actions After Termination of Employment with Servicios*

27.    Admitted.

28.    Denied that the services LMI advertises are "the same" as those that Servicios provides.  Admitted that LMI advertises services relating to taxes, insurance, notarization, and translation.

29.    Denied.

30.    Denied.

**Claims for Relief**

**COUNT I: BREACH OF CONTRACT AGAINST GOMEZ AND FONTALVO**

31.    Defendants incorporate their answers from all the preceding paragraphs as if fully stated in this section of the Answer.

32.    This paragraph contains a conclusion of law to which no response is required.  To the extent a response is required, denied.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

**COUNT II:  BREACH OF DUTY OF LOYALTY AGAINST GOMEZ AND FONTALVO**

38.    Defendants incorporate their answers from all the preceding paragraphs as if fully stated in this section of the Answer.

39.    This paragraph contains a conclusion of law to which no response is required.  To the extent a response is required, denied.

40.    Denied.

41.    Denied.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 164 of 185
PageID# 428
Case 2:24-cv-00182-RAJ-LRL    Document 36    Filed 11/19/24    Page 6 of 9 PageID# 210

42.    Denied.

43.    Denied.

## COUNT III:  TORTIOUS INTERFERENCE WITH CONTRACT AGAINST SANCHEZ AND LATINOS MULTISERVICES

44.    Defendants incorporate their answers from all the preceding paragraphs as if fully stated in this section of the Answer.

45.     This paragraph contains a conclusion of law to which no response is required.  To the extent a response is required, denied.

46.    The phrase "during the events described herein" is incomprehensibly vague and potentially encompasses a timeframe spanning approximately six years.  Therefore, Sanchez and LMI deny the allegations in this paragraph.

47.    Denied.

48.    Denied.

## COUNT [IV]:  TEMPORARY RESTRAINING ORDER, PERMANENT INJUNCTION AND SPECIFIC PERFORMANCE AGAINST GOMEZ AND FONTALVO

49.    Defendants incorporate their answers from all the preceding paragraphs as if fully stated in this section of the Answer.

50.    This paragraph contains a conclusion of law to which no response is required.  To the extent a response is required, denied.

51.    Denied.

52.    This paragraph contains allegations that Defendants cannot form a response to, as SLI had no obligations to perform under the NCAs.  To the extent this Court disagrees, denied that SLI "performed its obligations under the Non-Compete Agreements."

53.    Denied.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 165 of 185
PageID# 429
Case 2:24-cv-00182-RAJ-LRL    Document 36    Filed 11/19/24    Page 7 of 9 PageID# 211

54.    Denied.

55.    Denied.

56.    Denied.

**PRAYER FOR RELIEF**

57.    Denied that SLI is entitled to any of the relief requested in this paragraph.

58.    Denied that SLI is entitled to any of the relief requested in this paragraph.

59.    Denied that SLI is entitled to any of the relief requested in this paragraph.

60.    Denied that SLI is entitled to any of the relief requested in this paragraph.

61.    Denied that SLI is entitled to any of the relief requested in this paragraph.

62.    Denied that SLI is entitled to any of the relief requested in this paragraph.

63.    Denied that SLI is entitled to any of the relief requested in this paragraph.

64.    Denied that SLI is entitled to any of the relief requested in this paragraph.

65.    Denied that SLI is entitled to any of the relief requested in this paragraph.

**AFFIRMATIVE AND OTHER DEFENSES**

1.    This Court does not have personal jurisdiction over Defendants.

2.    SLI fails to state any cause of action upon which relief can be granted.

3.    Each of the restrictive covenants in the NCAs at issue are unenforceable and void.

4.    Defendants did not engage in any unlawful conduct, and consequently, SLI is not entitled to any judgment or relief.

5.    SLI is barred from obtaining any equitable relief by the doctrine of unclean hands.

6.    Defendants reserve any additional affirmative and other defenses as may be available to it or revealed during the course of investigation and/or discovery in this case.

7

**-120-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 166 of 185
PageID# 430
Case 2:24-cv-00182-RAJ-LRL   Document 36   Filed 11/19/24   Page 8 of 9 PageID# 212

WHEREFORE, Defendants Sanchez and LMI respectfully request that this Court dismiss the Complaint with prejudice and grant any additional relief that the Court deems just and proper.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.**

By: */s/ Nathan M. Hernandez*
          Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 167 of 185
PageID# 431
Case 2:24-cv-00182-RAJ-LRL   Document 36   Filed 11/19/24   Page 9 of 9 PageID# 213

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@wrvblaw.com
kate.lennon@wrvblaw.com
*Counsel for Plaintiff*

*/s/ Nathan M. Hernandez*

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERVICIOS LATINOS, INC.,

     Plaintiff,

v.                                      Civil Action No.: 2:24cv182

LUIS G. AMADO GOMEZ, *et al*.,

     Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CARLOS SANCHEZ
AND LATINOS MULTISERVICES, INC.'S MOTION TO AMEND & CERTIFY**

NOW COMES Plaintiff Servicios Latinos, Inc. ("Servicios" or "Plaintiff"), by counsel, and for its opposition to Defendants Carlos Sanchez ("Sanchez") and Latinos Multiservices, Inc.'s ("LMI") Motion to Amend and Certify, states as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiff filed its Complaint on March 20, 2024, against Luis Gomez ("Gomez"), Enith Fontalvo ("Fontalvo"), Sanchez, and LMI. Gomez and Fontalvo are former employees of the plaintiff who, in exchange for their employment, signed Non-Compete and Non-Solicitation Agreements ("Agreements"). Despite their fiduciary duties to Servicios and the provisions of the Agreements, and while still employed by Plaintiff, Gomez and Fontalvo stole client information and confidential business information from Servicios and planned to open a competing business. After their employment was terminated, Gomez and Fontalvo opened that competing business, LMI, mere blocks from Servicios's Delaware location, and used stolen confidential information and business secrets to compete directly with Servicios. Notably, Sanchez has been and continues to be aware of the Agreements and has intentionally interfered with the Agreements by contributing to LMI's competition with Servicios.

On April 30, 2024, Sanchez and LMI filed a motion to dismiss for lack of personal jurisdiction, claiming that despite being the rival corporation founded by Gomez and Fontalvo, and despite Sanchez's close personal relationship to Fontalvo and knowledge of the Agreements, this Court lacked jurisdiction over them. Dkt. No. 17. Plaintiffs filed an Opposition on May 14, 2024. Dkt. No. 21. Defendants filed their Reply on May 20, 2024. Dkt. No. 22. Plaintiffs then filed a Motion to file a Surreply on June 18, 2024, which was granted on July 8, 2024. Dkt. No. 31.

The Court issued a letter opinion and order on November 5, 2024, denying the Motion to Dismiss and holding that Sanchez and LMI were so closely related to Gomez and Fontalvo and the subject matter of the case for it to be foreseeable that they would be bound by the forum selection clause agreed to by Gomez and Fontalvo. Dkt. No. 32. As such, the Court found personal jurisdiction over Sanchez and LMI and denied the Motion to Dismiss. *Id.*

On November 15, 2024 Sanchez and LMI filed a Motion to Amend and Certify Order Denying Motion to Dismiss, arguing that the closely related doctrine is unconstitutional, and requesting an interlocutory appeal. Dkt. No. 35, at 1-2. For the reasons set forth herein and set forth in response to the Motion to Dismiss, Sanchez and LMI have not stated sufficient grounds for the granting of an interlocutory appeal, and this matter should be permitted to proceed on its merits to prevent the ongoing irreparable harm being suffered by Plaintiff.

**<u>LEGAL STANDARD</u>**

The requirements for an interlocutory appeal are set forth in 28 U.S.C. § 1292(b). Specifically, § 1292 "grants the district court discretion to certify an order for interlocutory appeal if the order, (1) 'involves a controlling question of law,' (2) 'there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance

the ultimate termination of the litigation.'" *S.E.C. v. Gruss*, No. 11 Civ. 2420, 2012 WL 3306166, at *1 (S.D.N.Y. Aug. 13, 2012) (quoting 28 U.S.C. § 1292(b)).

"Certification of a matter for interlocutory appeal under 28 U.S.C. § 1292(b) is an 'extraordinary remedy' that should be used sparingly." *Martin v. Garrett*, No. 1:17-cv-350-MOC-WCM, 2020 WL 4700717, at *1 (W.D. NC. August 13, 2020) (citing to *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). "Section 1292(b) is not intended to allow interlocutory appeals in ordinary suits . . . but instead should be utilized for orders deemed pivotal and debatable." *Sealed Plaintiff 1 v. Front*, 2024 WL 3642414, at *2 (E.D. Va. Aug. 2, 2024) (quoting *Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14-cv-706 (MHL), 2015 WL 3540473, at *3 (E.D. Va. June 3, 2015)).

"The United States Court of Appeals for the Fourth Circuit has repeatedly 'cautioned that § 1292(b) should be used sparingly and thus that its requirements must be strictly construed.'" *Id.* (quoting *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017)). "Even if all the requirements of Section 1292(b) are met, the district court has 'unfettered discretion' to deny a motion to certify issues for interlocutory appeal absent exceptional circumstances." *Id.* (citing *Hinton v. Va. Union Univ.*, No. 3:15-cv-569 (REP), 2016 WL 3922053, at *7 (E.D. Va. July 20, 2016); *United States ex rel. Howard v. Harmer Constr. Co.*, No. 7:12-cv-215, 2015 WL 9463103, at *1 (E.D.N.C. Dec. 28, 2015)).

## ARGUMENTS AND AUTHORITIES

I. **The Motion to Certify should be denied because Sanchez and LMI fail to satisfy the required elements for certification.**

A. **Sanchez and LMI fail to identify a controlling question of law on which there is a difference of opinion.**

"An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Randolph v. ADT Sec. Services, Inc*, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012) (Citing to *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989). "[A] substantial ground for disagreement may arise if there is a novel and difficult issue of first impression." *Front*, 2024 WL 3642414, at *3 (citing *Gibbs v. Elevate Credit, Inc.*, No. 3:20-cv-632 (MHL), 2021 WL 4851066, at *13 (E.D. Va. Oct. 17, 2021)). Of significance, the fact "[t]hat non-binding precedent in other jurisdictions may counsel a different result does not constitute substantial grounds for a difference of opinion." *Id.* (internal quotation marks omitted) (citing *Hinton*, 2016 WL 3922053, at *8).

Sanchez and LMI's claim that the Court's opinion and order involves an issue which presents a substantial ground for difference of opinion is misplaced. There is no difference of opinion in the various district courts of the Fourth Circuit regarding this issue as district courts in the Fourth Circuit have consistently applied the closely related doctrine to cases involving a forum selection clause. *NC Contracting, Inc. v. Munlake Contractors, Inc.*, No. 5:11-CV-766-FL, 2012 WL 5303295, at *7 (E.D.N.C. Oct. 25, 2012); *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000); *CMA CGM (America), LLC v. RLI Ins. Co.*, No. 12-cv-03306-AW, 2013 WL 588978, at *4 (D. Md. Feb. 13, 2013).

Although Sanchez and LMI are correct that the District of Arizona allowed an interlocutory appeal on the closely related doctrine in 2021, that finding was due to a split inside the districts of the Ninth Circuit. *Facebook Inc. v. Namecheap Inc.*, CV-20-00470-PHX-GMS, 2021 WL 961771 at *2 (D. Az. March 15, 2021).[1] As is clear, there is no such internal district split inside the Fourth Circuit, with uniform application of the closely related doctrine across the

---

[1] Of note, the matter was never ruled on by the Court of Appeals for the Nineth Circuit.  It appears that the matter settled before such a ruling.

districts. Despite what Sanchez and LMI allege, there is also very little disagreement with the doctrine nationally, with it being "recognized by all other circuits to have considered it." *Franlink Incorporated v. BACE Services, Incorporated*, 50 F.4th 432, 441 (5ᵗʰ Cir. 2022).

Defendants cite Supreme Court cases and precedent which are not dispositive of the closely related doctrine. Defendants suggest that district courts that have applied the closely related doctrine have either failed to identify or have chosen to rule contrary to Supreme Court precedent. To the contrary, however, the Supreme Court considers foreseeability in its jurisdictional analysis: "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Further, forum selection clauses are looked at favorably by the Supreme Court. *See Great Lakes Insurance SE v. Raiders Retreat Realty Co, LLC.*, 601 U.S. 65, 71-72 (2024). Accordingly, application of the closely related doctrine in situations involving a forum selection clause and foreseeable application of that clause to Sanchez and LMI is not in contradiction of Supreme Court precedent, and in fact, is supported by those underlying principles.

As there is no difference in opinion within district courts in the Fourth Circuit, and very little difference between the circuits, there is no requisite substantial ground for difference of opinion to warrant the extraordinary relief that Sanchez and LMI request. As such, their Motion to Amend and Certify Order Denying Motion to Dismiss should be denied.

### B. **Sanchez and LMI fail to establish that an immediate appeal from the order may materially advance the ultimate termination of the litigation.**

An interlocutory appeal materially advances litigation if it "would: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Price v. Atlantic Ro-Ro Carriers, Inc.*, No. CCB–11–

1735, 2014 WL 7358729, at *1 (D. Md. Dec. 22, 2014) (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 935 F. Supp. 2d 612, 626 (D. Md. 2013). "The mere fact that the resolution of the question sought to be certified 'may save pretrial and trial effort and expense is not determinative.'" *Front*, 2024 WL 3642414, at *3 (quoting *Hutchens v. Cap. One Servs., LLC*, No. 3:19-cv-546 (MHL), 2020 WL 6121950, at *6 (E.D. Va. Oct. 16, 2020); *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1438 (4th Cir. 1989)). Because this pretrial and trial effort and expense can be said of any interlocutory appeal, courts employ "a case-specific analysis to determine whether the time and expense saved on interlocutory appeal would materially advance the ultimate termination of the litigation." *Id.* (quoting *Hutchens*, 2020 WL 6121950, at *6). "The standard is 'materially advance termination' of the litigation, not simply 'termination' of the litigation." *Gilmore v. Jones*, No. 3:18-cv-00017, 2019 WL 4417490 at *6 (W.D. Va. Sept. 16, 2019).

Despite LMI and Sanchez's arguments, the granting of an interlocutory appeal and their dismissal as parties to this action would not materially advance the termination of litigation because their dismissal would not serve to meet any of the three possibilities explained by *Price*. 2014 WL 7358729 at *1. As discussed in *Gilmore*, the termination of litigation refers to litigation generally, not litigation as to one party. 2019 WL 4417490 at *6. Sanchez and LMI are so intertwined in the underlying facts that, even if dismissed, this case would still continue against Fontalvo and Gomez and involve the same subject matter, with Sanchez and LMI participating in discovery, including depositions, and being witnesses and/or at issue in the trial on this matter. Thus, the granting of an interlocutory appeal of this issue could not be said to eliminate the need for trial, eliminate complex issues to simplify trial, or eliminate issues to

make discovery easier or less costly. With none of these requirements met, Sanchez and LMI's

motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Servicios Latinos, Inc. respectfully requests that the Court

deny Defendant's Motion to Amend and Certify, and award Servicios Latinos such other relief as

is just and appropriate.

Dated: December 2, 2024

Respectfully Submitted,
SERVICIOS LATINOS, INC.

By: _/s/_____
        Of Counsel

Richard H. Ottinger (VSB No.: 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Plaintiff*

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 175 of 185
PageID# 439
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 1 of 10 PageID# 248

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **SERVICIOS LATINOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:24-cv-182** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUIS G. AMADO GOMEZ,** | ) | |
| | ) | |
| **ENITH PERTUZ FONTALVO,** | ) | |
| | ) | |
| **CARLOS SANCHEZ,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LATINOS MULTISERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.'S**
**REPLY IN SUPPORT OF THEIR MOTION TO AMEND AND CERTIFY ORDER**
**DENYING FED. R. CIV. PROC. 12(b)(2) MOTION TO DISMISS FOR**
**INTERLOCUTORY APPEAL**

There are three primary arguments in Plaintiff Servicios Latinos, Inc.'s ("SLI") opposition to Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s ("LMI") request for an interlocutory appeal. First, SLI avers that even if this Court is satisfied that all of 28 U.S.C. § 1292(b)'s ("section 1292") statutory criteria for an interlocutory appeal are met, the Court nonetheless has "unfettered discretion" to deny an appeal anyways. Second, SLI believes there is no substantial ground for difference of opinion as to whether the closely related doctrine was a constitutional basis to deny Sanchez and LMI's motion to dismiss for lack of personal jurisdiction. Third, SLI asserts that an interlocutory appeal may materially advance the termination of this litigation only if, among other things, it would eliminate complex issues so as to simplify the trial

1
**-130-**

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 176 of 185
PageID# 440
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 2 of 10 PageID# 249

or eliminate issues to make discovery easier and less costly.  An interlocutory appeal would not accomplish either of those ends, SLI argues, because in its view, the dismissal of Sanchez and LMI would have no impact on this case's subject matter, and Sanchez and LMI would still be subject to discovery and could potentially be witnesses at trial.

All of SLI's arguments should be rejected.  The first argument is without merit because the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has said the exact opposite of what SLI asserts here.  If this Court determines section 1292(b)'s statutory criteria are met, Fourth Circuit precedent requires that this Court certify its order denying Sanchez and LMI's motion to dismiss for interlocutory appeal.

The second argument is likewise foreclosed by Fourth Circuit precedent.  The Fourth Circuit's standard for determining whether a substantial ground for difference of opinion exists is whether reasonable jurists might disagree on an issue's resolution.  That standard is plainly met here.  Several appellate courts, district courts, and legal scholars acknowledge that the closely related doctrine is facially at odds with the Supreme Court's minimum contacts jurisprudence.  On the other end, reasonable jurists have applied the closely related doctrine in the personal jurisdiction context, including this Court and other appellate and district courts.  That divergence shows reasonable jurists might disagree on whether Sanchez and LMI's motion to dismiss should have been denied and, consequently, that there's substantial ground for difference of opinion on the question.

Finally, the third argument fails because, contrary to what SLI contends, the subject matter of this litigation would be substantially diminished if Sanchez and LMI prevail on appeal.  Put simply, half of the defendants and an entire cause of action would be gone, which would

Case 2:24-cv-00182-RAJ-RJK   Document 46-1   Filed 12/20/24   Page 177 of 185
PageID# 441
Case 2:24-cv-00182-RAJ-LRL   Document 43   Filed 12/09/24   Page 3 of 10 PageID# 250

significantly narrow the scope of discoverable and triable issues in this case. Thus, even under SLI's own rubric, an interlocutory appeal may materially advance the termination of this litigation.

In short, none of SLI's arguments change the conclusion that an interlocutory appeal is warranted here. Sanchez and LMI respectfully request that this Court reject SLI's arguments and certify the Court's order denying their motion to dismiss for interlocutory appeal.

## ARGUMENT

### A. SLI Misstates the Legal Standard Governing this Court's Review Under 28 U.S.C. § 1292(b).

SLI argues that even if this Court determines all the statutory criteria of section 1292(b) are present, the Court nonetheless has "unfettered discretion" to ignore that determination and deny a motion for interlocutory appeal anyways. ECF No. 39, p. 3. But precedent from the Fourth Circuit says the exact opposite.[1] In *In re Trump*, the Fourth Circuit emphasized that even though a district court generally has "broad discretion" in reviewing motions for interlocutory appeal under section 1292(b), that observation "*does not mean* that the district court's discretion in refusing to certify is *unfettered* and unreviewable, *and the statute does not so provide*." 928 F.3d 360, 372 (4th Cir. 2019) (emphasis added). Rather, if "a district court determines that the statutory criteria are present," the court has a "'*duty* . . . to allow an immediate appeal to be taken.'" *Id.* at 369 (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)); *see also id.* at

---

[1] To be fair, SLI does find support for its position in unpublished cases from this Court. *See* ECF No. 39, p. 3 (citing *Sealed Plaintiff 1 v. Front*, 2024 U.S. Dist. LEXIS 137672, at *5 (E.D. Va. Aug. 2, 2024); *Hinton v. Va. Union Univ.*, 2016 U.S. Dist. LEXIS 95049, at *20 (E.D. Va. July 19, 2016)). There are two things to say about those cases. First, they are no more than persuasive authority to begin with. Second, and more fundamentally, when there's a conflict between the precedent of this Court and the Fourth Circuit—as there is here—this Court is bound to follow the Fourth Circuit's precedent. *United States v. Arbaugh*, 2023 U.S. Dist. LEXIS 199448, at *24 n.10 (W.D. Va. Nov. 6, 2023) ("[A district] court is bound by published decisions issued by the Fourth Circuit.") (citing *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 642 (4th Cir. 1975)).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 178 of 185
PageID# 442
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 4 of 10 PageID# 251

372 (repeating that section 1292(b) "*mandat[es]* certification when the statutory criteria are met")
(emphasis added).

Accordingly, although this Court has broad discretion in reviewing Sanchez and LMI's Motion, it does not have unfettered discretion to deny the motion regardless of whether Sanchez and LMI demonstrate an interlocutory appeal is warranted. If this Court determines section 1292(b)'s criteria are met here, it is duty-bound to certify its order denying Sanchez and LMI's motion to dismiss for interlocutory appeal.

**B. There is Substantial Ground for Difference of Opinion Regarding the Basis of this Court's Denial of Sanchez and LMI's Motion to Dismiss.**

SLI does not dispute that this Court's ruling on Sanchez and LMI's motion to dismiss involves a controlling question of law. SLI does, however, dispute that there is substantial ground for difference of opinion on that question of law—*i.e.*, whether this Court properly denied Sanchez and LMI's motion to dismiss based on the closely related doctrine. At bottom, SLI argues there is no substantial ground for difference of opinion here because (1) district courts in this Circuit "have consistently applied the closely related doctrine to cases involving a forum selection clause," (2) the authorities Sanchez and LMI relied on are non-binding authorities from other jurisdictions, and (3) the closely related doctrine is compatible with the Supreme Court's minimum contacts jurisprudence because, in SLI's view, the Supreme Court "considers foreseeability in its jurisdictional analysis." *See* ECF No. 39, pp. 4-5. All of these arguments are without merit.

SLI's first and second arguments are interrelated. In short, SLI seems to suggest that demonstrating a substantial ground for difference of opinion is a near impossible task, with the presence of other jurisdictions and scholars agreeing with a movant's position being of little to no

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 179 of 185
PageID# 443
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 5 of 10 PageID# 252

consequence in the analysis.  While SLI does find support for its view in unpublished case law from this Court,[2] here again, precedent from the Fourth Circuit mandates a contrary conclusion.

Under Fourth Circuit precedent, the standard is straightforward:  a substantial ground for difference of opinion exists so long as the movant can demonstrate that "*reasonable jurists might disagree* on an issue's resolution." *In re Trump*, 928 F.3d at 371 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).  Here, Sanchez and LMI have pointed to appellate authority, district court authority, and legal scholarship that agree with their position that the closely related doctrine is incompatible with the Supreme Court's minimum contact jurisprudence.  *See* ECF No. 35, p. 8.  Likewise, they have acknowledged that other jurisdictions agree with SLI and this Court's perspective on the closely related doctrine.  *See* ECF No. 35, pp. 8-9.  Given this backdrop, there is simply no dispute that Sanchez and LMI have shown that "*reasonable jurists might disagree*" on the constitutionality of the closely related doctrine.  *See In re Trump*, 928 F.3d at 371 (quoting *Reese*, 643 F.3d at 688).

SLI's third argument fares no better.  Despite the fact that the Supreme Court has said that rules "based on general notions of fairness and foreseeability" are "inconsistent with the premises of lawful judicial power," *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality op.), and that "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980), SLI nonetheless avers that the foreseeability-centric closely related doctrine is compatible with the Supreme Court's minimum contacts jurisprudence.  To support its view, SLI

---

[2] *See Front*, 2024 U.S. Dist. LEXIS 137672, at *6 ("That non-binding precedent in other jurisdictions may counsel a different result does not constitute substantial grounds for a difference of opinion.") (internal quotation marks omitted) (citing *Hinton*, 2016 U.S. Dist. LEXIS 95049, at *22-23).

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 180 of 185
PageID# 444
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 6 of 10 PageID# 253

relies on a quote from *Burger King Corp. v. Rudzewicz*, where the Supreme Court said that "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[3] 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

That quote from *Burger King*, however, does not lend support to the constitutionality of the closely related doctrine. The point of the quote is that "foreseeability" is "critical" to a personal jurisdiction analysis only in the sense that foreseeability is a ***by-product*** of a defendant's contacts with the forum State, not that it is the sole ***driving force*** behind whether a defendant is subject to the forum State's personal jurisdiction in the first place. *Id.* (stating that whether a defendant should "reasonably anticipate being haled into" the forum State's courts depends on the defendant's "***conduct and connection with the forum State***") (emphasis added). By contrast, the closely related doctrine sidesteps the minimum contacts inquiry altogether and simply asks whether a defendant's relationship with a signatory to a forum selection clause is such that he could "foresee" being sued in the forum State. *See Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) ("[N]on-parties may be bound to a forum selection clause, if the non-party is so closely related to the dispute such that it becomes foreseeable that it will be bound." (citations and internal quotation marks omitted). That feature of the closely related doctrine is not only in conflict with the very quote from *Burger King* that SLI relies on here but

---

[3] SLI also relies on the fact that forum selection clauses are generally "looked at favorably by the Supreme Court." ECF No. 39, p. 5. But that observation is ultimately beside the point. Sanchez and LMI do not argue that the forum selection clauses at issue here are unenforceable or against public policy with respect to those who agreed to be bound by them. Instead, they simply argue that those clauses cannot be used to sidestep a constitutional minimum contacts analysis in determining whether this Court has personal jurisdiction over them.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 181 of 185
PageID# 445
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 7 of 10 PageID# 254

also is squarely condemned by an observation the Supreme Court made just a few lines down in the same opinion:

> The unilateral activity of those who claim some relationship with a nonresident defendant ***cannot satisfy the requirement of contact with the forum State***. The application of that rule will vary with the quality and nature of the defendant's activity, but it is ***essential*** in each case that there be ***some act*** by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King*, 471 U.S. at 474-75 (emphasis added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In short, rather than support the closely related doctrine's constitutionality, *Burger King* forecloses application of the doctrine in a minimum contacts analysis altogether.

### C. Even Under SLI's Rubric, an Interlocutory Appeal Would Materially Advance the Termination of this Litigation.

SLI contends that, to show an interlocutory appeal may materially advance the termination of this litigation, Sanchez and LMI would need to demonstrate an appeal would either "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." ECF No. 39, p. 5 (internal quotation marks omitted) (citing *Price v. Atlantic Ro-Ro Carriers, Inc.*, 2014 U.S. Dist. LEXIS 175943, at *4 (D. Md. Dec. 22, 2014); *Lynn v. Monarch Recovery Mgmt., Inc.*, 935 F. Supp. 2d 612, 626 (D. Md. 2013)). Under that standard, SLI argues an interlocutory appeal would not materially advance the termination of this litigation because even if Sanchez and LMI are ultimately dismissed, the litigation would "still continue against [Defendants] Fontalvo and Gomez and involve the same subject matter, with Sanchez and LMI participating in discovery, including depositions, and being witnesses and/or at issue in the trial on this matter." ECF No. 39, p. 6.

There are three problems with SLI's argument. First, it's simply not true that dismissal of Sanchez and LMI would have no effect on this litigation's subject matter. To the contrary, Sanchez and LMI's would not only result in elimination of half of the defendants in this case but also elimination of an entire cause of action—SLI's tortious interference with contract claim.

Second, and relatedly, dismissal of Sanchez, LMI, and the tortious interference claim would self-evidently narrow the scope of discoverable and triable issues in this case. That, in turn, would "eliminate complex issues so as to simplify the trial" **_and_** "eliminate issues to make discovery easier and less costly." *See* ECF No. 39, p. 5. Accordingly, even under SLI's proposed standard, the fact remains that an interlocutory appeal may materially advance the termination of this litigation.

Third, not only does SLI ignore the potential cost reduction and issue simplification benefits an interlocutory appeal would have, it also is attempting to improperly impose disproportionate monetary burdens on Sanchez and LMI. Unlike SLI, who has a presence in both Virginia and Delaware, Sanchez and LMI have a presence in Delaware only. Thus, if Sanchez and LMI are required to litigate in this Court, they can be compelled to appear at offices in Virginia for depositions and be compelled to appear at trial or other hearings in this case, which would require them to incur substantial travel and lodging expenses. By contrast, if Sanchez and LMI are dismissed from this action, that will substantially reduce their costs. Any depositions of Sanchez or LMI would take place in Delaware and could be defended by a local Delaware attorney. Sanchez and LMI could not be compelled to appear at trial or other hearings, thus potentially requiring *de bene esse* depositions for each. Sanchez would not have to take several days off from work to stay at a hotel during trial. And so on and so forth.

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 183 of 185
PageID# 447
Case 2:24-cv-00182-RAJ-LRL    Document 43    Filed 12/09/24    Page 9 of 10 PageID# 256

In sum, dismissal of Sanchez, LMI, and the tortious interference claim would narrow the scope of discoverable and triable issues and, consequently, will save significant resources of the parties and this Court. SLI's arguments to the contrary are little more than an attempt to disproportionately (and needlessly) impose logistical and financial burdens on Sanchez and LMI and should be squarely rejected.

## CONCLUSION

For the foregoing reasons, this Court should reject the arguments in SLI's opposition and grant Sanchez and LMI's Motion to Amend and Certify Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to Dismiss for Interlocutory Appeal.

Respectfully Submitted,

**CARLOS SANCHEZ AND LATINOS MULTISERVICES, INC.**

By: _/s/ Nathan M. Hernandez_____
     Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
_Counsel for Defendant_

Case 2:24-cv-00182-RAJ-RJK    Document 46-1    Filed 12/20/24    Page 184 of 185
PageID# 448
Case 2:24-cv-00182-RAJ-LRL    Document 43   Filed 12/09/24   Page 10 of 10 PageID# 257

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December 2024, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of the filing to the following:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon (VSB No. 92358)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel:  (757) 446-8600
richard.ottinger@woodsrogers.com
kate.lennon@woodsrogers.com
*Counsel for Plaintiff*

*/s/ Nathan M. Hernandez*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**SERVICIOS LATINOS, INC.,**

      **Plaintiff,**

      v.                        **CIVIL ACTION NO. 2:24-cv-182**

**LUIS G. AMADO GOMEZ,** *et al.,*

      **Defendants.**

### *ORDER*

Before the Court is Defendants Carlos Sanchez and Latinos Multiservices, Inc.'s (collectively, "Defendants") Motion to Amend and Certify the Court's Order Denying Defendants' Motion to Dismiss for Interlocutory Appeal.

The Court has reviewed the memoranda of the parties. District courts have "first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 45 (1992). The Court is not "of the opinion" that the Court's denial of Defendants' Motion to Dismiss "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Therefore, Defendants' Motion to Amend and Certify the Court's Order for Interlocutory appeal is **DENIED**. ECF No. 34.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

      **IT IS SO ORDERED**.

Norfolk, Virginia
December 13, 2024

                                    Raymond A. Jackson
                                    United States District Judge