UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| SERVICIOS LATINOS, INC.,                                )<br>                                                                      )<br>             Plaintiff/Counterclaim Defendant, )<br>                                                                      )<br>v.                                                                 )<br>                                                                      )<br>LUIS G. AMADO GOMEZ,                             )<br>                                                                      )<br>             Defendant/Counterclaim Plaintiff, )<br>                                                                      )<br>LATINOS MULTISERVICES, INC.,              )<br>                                                                      )<br>             Defendant/Counterclaim Plaintiff, )<br>                                                                      )<br>CARLOS SANCHEZ,                                     )<br>                                                                      )<br>and                                                              )<br>                                                                      )<br>ENITH PERTUZ FONTALVO,                     )<br>                                                                      )<br>             Defendants.                                      )<br>_____)  | Case No.: 2:24-cv-182 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO DEFER JUDGMENT ON PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF UNTIL AFTER TRIAL OR SUMMARY JUDGMENT**

Just a few days ago, Plaintiff and Counterclaim Defendant Servicios Latinos, Inc. ("SLI") filed a motion for a preliminary injunction, which seeks to shut down Defendant and Counterclaim Plaintiff Latinos Multiservices, Inc. ("LMI") and destroy the livelihoods of Defendant and Counterclaim Plaintiff Luis G. Amado Gomez and Defendant Enith Pertuz Fontalvo. The reason SLI claims to need this "urgent" relief is because Gomez and Fontalvo signed Non-Compete and Non-Solicitation Agreements (the "NCAs"), and their formation and operation of LMI supposedly constitute "breaches" of the NCAs that will "irreparably harm" SLI if not enjoined immediately.

1

SLI's motion is both too early and too late. It is too early because the parties are still in discovery, and Defendants have raised (and are preparing) the affirmative defense of unclean hands that, if successful, will preclude SLI from obtaining any injunctive relief in this case. The primary bases for Defendants' unclean hands defense are the Counterclaims filed by Gomez and LMI, which include:

- Gomez's Counterclaim for violation of the Fair Labor Standards Act due to SLI's willful refusal to pay him overtime pay while he was employed with SLI (ECF No. 56-1);

- Gomez's Counterclaim for violation of Title VII due to SLI subjecting Gomez to a hostile work environment because of his sexual orientation and, consequently, his sex (ECF No. 56-1); and

- LMI's various claims for cybersquatting, trademark infringement, unfair competition, and deceptive trade practices stemming from SLI's unlawful registration and use of the web domain name "latinosmultiservicesdelaware.com" (ECF No. 70-1).

Beyond this, there are other crucial facts that Defendants are still in the process of probing into in discovery related to other conduct SLI engaged in that, if proven, will also support their unclean hands defense. These include, but are not limited to:

- SLI having knowledge of and willfully choosing to do nothing about one of its agents, Christian Ortiz, physically and verbally abusing other SLI employees, which posed an unjustifiable risk to the safety of all SLI employees (including Gomez and Fontalvo);

- SLI inducing three former SLI customers to come to one of its Delaware offices under false pretenses and then performing a bait-and-switch where SLI's owner, Marie Hanley, locked the doors of the office and refused to let the former customers leave

unless and until they stated that LMI "solicited" them to do business with LMI—the customers refused to do so, because it wasn't true—which eventually led to the police getting involved;

- SLI sending an individual named Suraj K. Gyani to LMI's office to intimidate and harass Gomez and Fontalvo, which led to criminal prosecution against Gyani;

- SLI pressuring its employees, including Gomez and Fontalvo, to engage in covert, under-the-table transactions with an employee of the Virginia Department of Motor Vehicles named Arica Roberts; and

- SLI pressuring its employees, including Gomez and Fontalvo, to sell insurance policies without being licensed insurance agents.

LMI and Gomez bear the burden to prove their Counterclaims. Likewise, Defendants bear the burden to prove their affirmative defense of unclean hands. Under the Local Civil Rules, however, Defendants have less than two weeks to file their opposition to SLI's preliminary injunction motion. To fully and fairly do so, Defendants would essentially be required to prepare individual summary judgment motions proving all of LMI and Gomez's Counterclaims and proving all of the facts underlying Defendants' unclean hands defense before the close of discovery. There is simply no way Defendants will be able to accomplish those ends in less than two weeks. Nor should they be required to do so, given the fundamental protections due process affords to all litigants before this Court. That is why Defendants require that this Court intervene on an emergency basis and ensure that no request for injunctive relief by SLI be considered until after trial or, at the very least, summary judgment.

SLI might respond to this by claiming it needs injunctive relief "as soon as possible" to avoid the supposed "irreparable harm" that will result if Gomez and Fontalvo are allowed to

3

continue earning a living doing what they love. That turns us to why SLI's request for injunctive relief is way too late. Even assuming SLI's need for injunctive relief is "urgent" (it is not)—much less meritorious in the first place (it is not)—SLI has had almost ***two years*** to file a motion for a preliminary injunction but chose not to do so. SLI filed its Complaint in March of 2024, and indeed, signaled it intended to immediately move for a temporary restraining order and a preliminary injunction thereafter. ECF No. 1, ¶¶ 49-56, 63. By doing so, in addition to the fact that SLI alleged Gomez and Fontalvo were in violation of their NCAs by opening and operating LMI, SLI represented to the Court that it had all the information it required to seek a temporary restraining order and a preliminary injunction.

Yet, SLI sat on its hands for nearly two years, and it only now seeks a preliminary injunction when the parties are about a month away from completing discovery, about a month away from the Settlement Conference, and just over two months away from trial. There is simply no plausible basis for SLI to claim it needs emergency relief now after sitting by idly since the start of this litigation. And cramming SLI's belated preliminary injunction motion into the Court's docket this late in the game would do nothing but interfere with the ordinary procedure of the case under the current Scheduling Order and stymie Defendants' due process rights. As this Court succinctly put it a few years ago, a "deliberate delay precludes the possibility of equitable relief," as "equity ministers the vigilant, not to those who sleep on their rights" *Curtin v. Va. Board of Elec.*, 463 F. Supp. 3d 653, 659-60 (E.D. Va. 2020) (citations and internal quotation marks omitted)

At bottom, "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959). There is nothing "imperative" about SLI's preliminary

4

injunction motion that would justify deviation from that principle here. By contrast, failure to adhere to that principle would inflict incalculable harm to Defendants, as it would risk prematurely destroying Gomez and Fontalvo's livelihoods without giving Defendants a full and fair opportunity to prepare and present their counterclaims and affirmative defenses. Accordingly, Defendants respectfully—but urgently—request that this Court defer ruling on SLI's request for injunctive relief until after trial or, alternatively, until summary judgment.

## RELEVANT FACTUAL BACKGROUND

1. SLI filed its Complaint on March 20, 2024. ECF No. 1.

2. The crux of SLI's claims against Defendants are that Gomez and Fontalvo opened and are operating an allegedly competing business, LMI, in alleged breach of the NCAs and their common law duties of loyalty. *See generally* ECF No. 1.

3. According to its own interrogatory responses, SLI "first became aware of LMI's operations in Delaware shortly after Luis Gomez and Enith Fontalvo left their employment with [SLI]." **Exhibit 1**, Plaintiff's Objections and Answers to Latinos Multiservices, Inc.'s First Interrogatories to Plaintiff, pp. 7-8, No. 11. Gomez left SLI on or about October 20, 2023, and Fontalvo left SLI on or about November 17, 2023. *Compare* ECF No. 1, ¶ 2, *with* ECF No. 42, ¶ 2.

4. In its Complaint, SLI styled "Count [IV]"[1] as "Temporary Restraining Order, Permanent Injunction and Specific Performance against Gomez and Fontalvo." ECF No. 1, p. 10.

---

[1] This "Count" is incorrectly styled as "Count III," as Count I is a breach of contract action against Gomez and Fontalvo, Count II is a breach of duty of loyalty claim against Gomez and Fontalvo, and Count III is tortious interference with contract claim against Sanchez and LMI. ECF No. 1, pp. 8-10. Moreover, it is well established that "[i]njunctive relief is a remedy, not a cause of action." *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017).

5

5. In paragraph 51 of the Complaint, SLI alleged that "the Defendants actions [sic] in this case have caused and continue to cause irreparable harm to [SLI]." ECF No. 1, p. 10.

6. Likewise, in paragraph 53 of the Complaint, SLI reiterated that it "has suffered and continues to suffer irreparable and specific harm through loss of business information, loss of clients, and loss of reputation." ECF No. 1, p. 10.

7. Among the relief requested in the "Prayer for Relief" section of its Complaint is a "temporary restraining order against Defendants . . . enjoining Defendants from competing with [SLI], using [SLI's] business information, and soliciting [SLI's] clients," as well as "permanent injunctive relief against Defendants ordering that Defendants . . . cease competition with [SLI], use of [SLI's] business information, and solicitation of [SLI's] clients." ECF No. 1, p. 11.

8. SLI never filed a motion seeking a temporary restraining order in this case.

9. On April 30, 2024, Gomez and Fontalvo—*i.e.*, the parties to the NCAs—filed an Answer to the Complaint. *See* ECF No. 19; *see also* ECF No. 42 (Amended Answer).

10. Sanchez and LMI filed a Motion to Dismiss for Lack of Personal Jurisdiction, which this Court denied in an Amended Memorandum Opinion and Order entered on November 11, 2024. ECF Nos. 17, 33.

11. On November 19, 2024, Sanchez and LMI filed their Answer. ECF No. 36.

12. All Defendants asserted the affirmative defense of unclean hands in their respective Answers. ECF No. 36, p. 7; ECF No. 42, p. 7.

13. On November 15, 2024, Sanchez and LMI filed a Motion to Amend and Certify Order Denying Fed. R. Civ. Proc. 12(b)(2) Motion to Dismiss for Interlocutory Appeal. ECF Nos. 34-35.

14. In that Motion, Sanchez and LMI asked this Court to certify the personal jurisdiction issue for interlocutory appeal *and* to "stay[] all proceedings in this Court until the United States Court of Appeals for the Fourth Circuit resolves [the] interlocutory appeal." ECF No. 34, pp. 1-3.

15. On December 13, 2024, this Court entered an Order denying Sanchez and LMI's Motion in its entirety. ECF No. 45.

16. On December 20, 2024, Sanchez and LMI filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Fourth Circuit that asked the Fourth Circuit to issue a writ of mandamus directing this Court to certify the personal jurisdiction issue for interlocutory appeal. *See* ECF No. 46.

17. Critically, Sanchez and LMI also asked the Fourth Circuit to stay all proceedings in this Court pending the Fourth Circuit's consideration of the mandamus petition. ECF No. 46-1, pp. 28-30.

18. The Fourth Circuit never stayed the proceedings in this Court. To the contrary, the Fourth Circuit denied the mandamus petition and the "motion for stay pending appeal" on April 11, 2025. **Exhibit 2**, Order Denying Petition.

19. On August 6, 2025—*i.e.*, roughly four months after the Fourth Circuit entered its order denying the mandamus petition and the request for a stay—SLI filed an unopposed motion to commence discovery. ECF No. 50.

20. On August 8, 2025, this Court entered the Rule 26(f) Pretrial Order that permitted the parties to commence discovery. ECF No. 53.

21. On September 3, 2025, this Court entered the Rule 16(b) Scheduling Order, which sets this case for a jury trial commencing February 24, 2026. ECF No. 62.

7

22. As a result of an Order entered by this Court on November 24, 2025, that, among other things, modified the Scheduling Order, discovery is set to close for all parties on January 13, 2026. ECF No. 77.

23. On December 3, 2025, this Court entered a Settlement Conference Order that schedules the Settlement Conference for January 20, 2026. ECF No. 78.

24. SLI filed its preliminary injunction motion and an accompanying motion to seal on December 5, 2025. ECF No. 79-81.

25. SLI did not request preliminary injunctive relief at any point prior to December 5, 2025. It did not file a motion to expedite discovery for purposes of any request for injunctive relief. And it did not file a motion pursuant to Fed. R. Civ. Proc. 65(a)(2) to consolidate a hearing on a motion for a preliminary injunction with the trial on the merits.

## LEGAL STANDARD

This Court has the "inherent power to control its own docket." *United States ex rel. Harbor Constr. Co., Inc. v. T.H.R. Enters., Inc.*, 311 F. Supp. 3d 797, 805 (E.D. Va. 2018) (citing *Landis v. North American*, 299 U.S. 248, 254 (1936). "In exercising such judgment, a court must 'weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

## ARGUMENT

**A. In light of Defendants' Counterclaims and Affirmative Defense of Unclean Hands, Defendants Do Not Have a Full and Fair Opportunity to Respond SLI's Preliminary Injunction Motion Within the Next Eleven Days.**

SLI's preliminary injunction asks this Court to shut down LMI and, consequently, Gomez and Fontalvo's livelihoods. Even assuming, at this juncture, that SLI would be able to satisfy all four of the *Winter* factors required to obtain preliminary injunctive relief (it would not), one fact

that is extrinsic to the merits of SLI's motion precludes SLI from obtaining that relief: SLI's unclean hands.

Under Virginia law, the "doctrine of 'unclean hands' is an ancient maxim of equity courts." *Cline v. Berg*, 273 Va. 142, 147 (2007) (quoting *Richards v. Musselman*, 221 Va. 181, 185 (1980)). The contours of the doctrine are straightforward: "[p]ursuant to the equitable maxim that 'he who comes into equity must come with clean hands,' . . . the complainant seeking equitable relief must not himself have been guilty of inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *Id.* (quoting *Musselman*, 221 Va. at 185 n.1).[2] Furthermore, "[n]ot only must the complainant come into equity with clean hands but he must keep them clean throughout the course of the litigation." *Musselman*, 221 Va. at 185 n.1 (quoting W. DeFuniak, *Handbook of Modern Equity* § 24 (2d ed. 1956)).

---

[2] Given the Virginia Supreme Court's disjunctive use of the phrase "inequitable *or* wrongful conduct," the conduct that a defendant relies on to prove a plaintiff's unclean hands need not be strictly illegal or capable of supplying a private cause of action. *See Cline*, 273 Va. at 147 (emphasis added). That is why the Virginia Supreme Court has applied the doctrine of unclean hands in situations where the plaintiff's conduct was extremely obnoxious but not alleged by the defendant or held by the Court to be illegal. *See generally Cline*, 273 Va. 142 (applying doctrine where plaintiff seeking injunction for removal of defendants' spite fence had installed surveillance cameras and bright lights on his house, which caused a disturbance to defendants that motivated their decision to install the spite fence).

Persuasive authority from other non-Virginia jurisdictions—including the United States Supreme Court—supports applying the doctrine of unclean hands to conduct that is inequitable but not strictly illegal. *See, e.g.*, *Precision Instr. Mfg. Co. v. Auto. Maintenance Mach. Co.*, 324 U.S. 806, 815 (1945) (stating that for the doctrine of unclean hands to apply, "one's misconduct need not necessarily have been of such a nature as to be punishable as a crime *or as to justify legal proceedings of any character*," and, consequently, that "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor") (emphasis added); *Osborne v. Nottley*, 206 Or. App. 201, 205 (2006) (stating that the "inequitable conduct" complained of in an unclean hands defense "***need not rise to illegality***" and that the conduct "may have as its target either the defendant or some third party") (emphasis added) (citation and internal quotation marks omitted).

Here, Defendants have a plethora of conduct they intend to rely on to demonstrate that SLI is guilty of unclean hands and, thus, wholly undeserving of any injunctive relief. To reiterate, the primary grounds for Defendants' unclean hands defense are the Counterclaims filed by Gomez and LMI, which are:

- Gomez's Counterclaim for violation of the Fair Labor Standards Act due to SLI's willful refusal to pay him overtime pay while he was employed with SLI (ECF No. 56-1);
- Gomez's Counterclaim for violation of Title VII due to SLI subjecting Gomez to a hostile work environment because of his sexual orientation and, consequently, his sex (ECF No. 56-1); and
- LMI's various claims for cybersquatting, trademark infringement, unfair competition, and deceptive trade practices stemming from SLI's unlawful registration and use of the web domain name "latinosmultiservicesdelaware.com" (ECF No. 70-1).

And there are other pertinent facts that, while not supplying Defendants with private causes of action, nonetheless provide additional grounds to find SLI comes to equity with unclean hands:

- SLI having knowledge of and willfully choosing to do nothing about one of its agents, Christian Ortiz, physically and verbally abusing other SLI employees, which posed an unjustifiable risk to the safety of all SLI employees (including Gomez and Fontalvo);
- SLI inducing three former SLI customers to come to one of its Delaware offices under false pretenses and then performing a bait-and-switch where SLI's owner, Marie Hanley, locked the doors of the office and refused to let the former customers leave unless and until they stated that LMI "solicited" them to do business with LMI—the

- customers refused to do so, because it wasn't true—which eventually led to the police getting involved;

- SLI sending an individual named Suraj K. Gyani to LMI's office to intimidate and harass Gomez and Fontalvo, which led to criminal prosecution against Gyani;

- SLI pressuring its employees, including Gomez and Fontalvo, to engage in covert, under-the-table transactions with an employee of the Virginia Department of Motor Vehicles named Arica Roberts; and

- SLI pressuring its employees, including Gomez and Fontalvo, to sell insurance policies without being licensed insurance agents.

The burden of persuasion with respect to Defendants' counterclaims and unclean hands defense lies with Defendants. But Defendants cannot possibly meet that burden before the parties have concluded discovery—much less within the next eleven days. That is why Defendants respectfully request, on an emergency basis, that this Court defer ruling on SLI's request for injunctive relief until after trial or, at the very least, until summary judgment. If this Court does not defer judgment on SLI's request for injunctive relief, that will force Defendants to essentially file at least three summary judgment motions within a single opposition brief before they have had a full and fair opportunity to adduce the evidence they need to support their counterclaims and unclean hands defense. And the prejudice that would result to Defendants, as a consequence, would be incalculable.

There is ample precedent from other jurisdictions within and outside this Circuit to support deferring judgment on SLI's request for injunctive relief until at least the summary judgment stage. *See*, *e.g.*, *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 859 F. Supp. 945, 947 (D. Md. 1994) (noting that plaintiffs' preliminary injunction hearing initially scheduled in July was

11

continued out to "a four day evidentiary hearing" for September of the same year given that the defendants "needed additional time to conduct discovery of Plaintiffs and of third parties"); *Jenkins v. Nooth*, No. 3:15-cv-0558, 2017 WL 1479421, at *1 (D. Or. Apr. 24, 2017) (noting that the Court "stayed a decision" on a plaintiff's preliminary injunction motion because "many of the issues raised in Plaintiff's motion for injunctive relief overlap with the issues raised in the . . . Defendants' motion for summary judgment"); *Oil, Chemical & Atomic Workers Int'l Union, AFL-CIO v. Pena*, 62 F. Supp. 2d 1, 2 n.1 (D.D.C. 1999) (noting the plaintiff's preliminary injunction motion "was stayed pending resolution of the Cross-Motions for Summary Judgment"); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, No. 89 Civ. 2941, 1992 WL 156560, at *1 n.2 (S.D.N.Y. June 28, 1992) (noting that the Court had "determined that it would defer ruling on any motion for a preliminary injunction . . . until after it decided [the plaintiff's] motion for summary judgment.").

That being said, Defendants' request that this Court defer judgment until the summary judgment stage is an alternative request, and Defendants principally request that this Court defer judgment until after trial. There are three interrelated reasons why this Court should do so. First, "[t]he preliminary injunction and summary judgment standards are 'highly distinct.'" *N.C. State Conf. of NAACP v. Hirsch*, 720 F. Supp. 3d 406, 416 (M.D.N.C. 2024) (quoting *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, 895 F. Supp. 2d 752, 755 n.1 (E.D. Va. 2012)). "In the context of preliminary injunction, the court necessarily must weigh the evidence in order to determine the likelihood of success on the merits. In the context of summary judgment, such weighing of evidence is, of course, impermissible." *Id.* (citation and internal quotation marks omitted).

Second, the case is already scheduled for a five-day jury trial, which will be the best forum to adduce all the evidence the Court needs to determine whether injunctive relief is warranted. As noted above, full consideration of SLI's request for injunctive relief must include consideration of

all of Defendants' respective counterclaims and evidence supporting their unclean hands defense. It will take all five of the trial days to accomplish that. However, the undersigned does not currently have five consecutive days available for a preliminary injunction hearing before the current trial date. And presumably, this Court does not either. All things considered, then, the best course of action is to proceed with the case schedule as this Court has currently set it and not to shoehorn a multi-day hearing into the Court's already busy docket before trial.

Third, deferring ruling on SLI's request for injunctive relief will sufficiently "preserve" Defendants' "right to a jury trial." *Cf.* Fed. R. Civ. Proc. 65(a)(2) (noting that courts "must preserve any party's right to a jury trial" when considering whether to "advance the trial on the merits and consolidate it" with a hearing on a preliminary injunction motion). Ruling on SLI's request for injunctive relief at summary judgment, by contrast, risks infringing that right.

### B. SLI Will Not Be Unduly Prejudiced if this Court Grants Defendants the Emergency Relief They Seek, as SLI was Unreasonably Dilatory in Seeking a Preliminary Injunction.

SLI will likely respond to all this by saying that delaying consideration of its request for injunctive relief will unfairly expose it to further "irreparable harm" that must be addressed "immediately." But that contention should fall on deaf ears. SLI has delayed for ***nearly two years*** in seeking a preliminary injunction, and in doing so, has forfeited the right to claim that it has an urgent need for injunctive relief.

As the Fourth Circuit has noted, "[s]ince an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (second alteration in original) (citation and internal quotation marks

13

omitted); *see also Benisek v. Lamone*, 585 U.S. 155, 159 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence.").

Other courts throughout this Circuit—including this Court—have made similar observations. *See*, *e.g.*, *Curtin*, 463 F. Supp. 3d at 659-60 (emphasizing that a "deliberate delay precludes the possibility of equitable relief" given that "equity ministers the vigilant, not to those who sleep on their rights") (citations and internal quotation marks omitted); *Moon Dot, Inc. v. Q Shack Corp.*, No. 3:25-cv-00396, 2025 WL 2420990, at *6 (W.D.N.C. Aug. 21, 2025) ("[An] unreasonable delay in bringing [a preliminary injunction] motion precludes the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."); *Roswell v. Baltimore*, 671 F. Supp. 3d 607, 618 (D. Md. 2023) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief . . . ." (quoting *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985))).

SLI will likely offer two arguments as to why it could not respond sooner than it did: (1) that the motion to dismiss for lack of personal jurisdiction and related mandamus proceedings initiated by Sanchez and LMI caused a delay in these proceedings, and (2) that this Court did not enter its order permitting discovery until August 8, 2025. Neither of those arguments would have merit.

1. <u>The Motion to Dismiss and Mandamus Proceedings Did Not Prevent SLI from Seeking a Preliminary Injunction Sooner.</u>

There are two reasons why the motion to dismiss and mandamus proceedings did not prevent SLI from seeking a preliminary injunction sooner. *First*, Gomez and Fontalvo, not Sanchez or LMI, are the parties to the NCAs, and it is the alleged "breach" of the NCAs that SLI principally relies on in its request for injunctive relief. Gomez and Fontalvo have agreed that this

14

Court has jurisdiction over them since the outset of this litigation; thus, nothing prevented SLI from pursuing a temporary restraining order or preliminary injunction against Gomez and Fontalvo since this litigation was filed.

*Second*, even assuming SLI needed Sanchez and LMI to officially be parties to this litigation to proceed with its request for injunctive relief, that still would not have justified SLI's choice to wait as long as it did to move for a preliminary injunction. This Court entered its Amended Memorandum Opinion and Order denying Sanchez and LMI's motion to dismiss for lack of personal jurisdiction on **November 6, 2024**, which was over a year ago. Sanchez and LMI twice asked for a stay of proceedings in this Court pending appellate consideration of their jurisdictional arguments; the first time was when Sanchez and LMI asked this Court to certify its jurisdictional ruling for interlocutory appeal, and the second time was when Sanchez and LMI filed their mandamus petition. **Both** of those requests for a stay were denied. Accordingly, the motion to dismiss proceedings **at most** delayed SLI's ability to seek injunctive relief until November 6, 2024, and there is nothing that stopped SLI from seeking injunctive relief after that point.

2. <u>SLI Could Have Sought Injunctive Relief Long Before this Court Entered the Rule 26(f) Pretrial Order.</u>

Likewise, SLI did not need to wait until this Court issued its Rule 26(f) Pretrial Order before filing a preliminary injunction motion. For starters, it is well-established that a plaintiff can seek a temporary restraining order or a preliminary injunction before discovery has opened. *See ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 437-38 (D. Md. 2024) (granting temporary restraining order even though the case was "in its earliest stage and . . . the Defendants ha[d] not yet responded" because "the evidence of wrongdoing at th[at] early stage [was] compelling"); *Sogefi USA Inc. v. Interplex Sunbelt, Inc.*, 538 F. Supp. 3d 620, 625 (S.D.W. Va.

15

2021) ("Rule 65 does not by its terms require service of process prior to the court's issuance of a preliminary injunction.").

Moreover, even assuming SLI needed discovery before it could file a preliminary injunction motion, SLI could have filed a motion to expedite discovery (or, at the very least, it could have filed its motion to commence discovery much sooner than August 8th of this year). *See*, *e.g.*, *Kia Motors America, Inc. v. Greenbrier GMC, Inc.*, No. 2:20-cv-428, 2020 WL 8970813, at *1 (E.D. Va. Dec. 11, 2020) (noting that a plaintiff had simultaneously filed a preliminary injunction motion with a "Motion for Expedited Discovery").

Finally, it's worth noting that there is nothing that SLI has obtained from discovery and filed as exhibits to its motion that added anything material to what SLI already knew when it filed this lawsuit nearly two years ago. SLI knew Gomez and Fontalvo formed and operated LMI even before filing this lawsuit. Ex. 1, pp. 7-8, No. 11. In its Complaint, SLI alleged that its former clients had gone to do business with LMI. And since the beginning of this lawsuit, SLI has believed all of that was in violation of the NCAs and, consequently, warranting of injunctive relief. *See* ECF No. 1, pp. 10-11. Therefore, SLI had everything it conceivably needed to move for a temporary restraining order or a preliminary injunction when it filed this lawsuit. Yet, it sat by idly and did not seek injunctive relief until roughly two years later.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Emergency Motion to Defer Judgment on SLI's Request for Injunctive Relief Until After Trial or Summary Judgment and award the relief requested in that Emergency Motion.

Respectfully Submitted,

**LUIS G. AMADO GOMEZ, ENITH PERTUZ FONTALVO, LATINOS MULTISERVICES, INC., AND CARLOS SANCHEZ**


By: */s/ Nathan M. Hernandez*
 Of Counsel

Nathan M. Hernandez (VSB No. 95817)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
nathan.hernandez@davisba.com
*Counsel for Defendants*

17

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 8th day of December 2025, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to:

Richard H. Ottinger (VSB No. 38842)
Katherine M. Lennon Ellis (VSB No. 92358)
Sophia L. Arnold (VSB No. 99239)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Tel: (757) 446-8600
richard.ottinger@woodsrogers.com
kate.lennon@woodsrogers.com
sophie.arnold@woodsrogers.com

Leah M. Stiegler (VSB No. 89602)
Woods Rogers Vandeventer Black PLC
901 East Byrd Street, Suite 1550
Richmond, VA 23219
Tel: (804) 956-2050
leah.stiegler@woodsrogers.com
*Counsel for Servicios Latinos, Inc.*

                    */s/ Nathan M. Hernandez*